Case No. 09-60182

JOE H. BRYANT, JR.

Plaintiff - Appellant Cross- Appellee

vs.

MILITARY DEPARTMENT OF THE STATE OF MISSISSIPPI; FRANKLIN E. CHALK; FREDERICK D. FEINSTEIN; ROY A. GRAHAM; BILLY JOE GRIESSETT; DONALD E. JONES; LANGFORD L. KNIGHT; F. GREGORY MALTA; WILLIAM F. PARTEN; ROBERT E. PIERCE; ROGER E. SHIRLEY; CHARLES F. SPEED; AARON K. WILSON; THOMAS TEMPLE; JOHN DOES 1-20; and LESLIE WILKES

Defendants - Appellees Cross- Appellants

_____

Appellant's Brief

_____

On Appeal from the United States District Court
for the Southern District of Mississippi.

Paul A. Koerber, Esq.
Wayne E. Ferrell, Jr., Esq.
Attorneys for the Appellant
405 Tombigbee Street
Jackson, Mississippi  39205
(601) 956-0072

<u>CERTIFICATE OF INTERESTED PERSONS</u>

In accordance with Rule 28.2.1 of the *Fifth Circuit Court of Appeals Rules*, Appellant, Joe H. Bryant, Jr., would respectfully submit that the following persons or entities have or may have a material and substantial interest in the outcome of this action before this Court:

1. Joe H. Bryant, Jr., Appellant
2. Military Department of the State of Mississippi, Appellee
3. Franklin E. Chalk, Appellee
4. Frederick D. Feinstein, Appellee
5. Roy A. Graham, Appellee
6. Billy Joe Gressett, Appellee
7. Donald E. Jones, Appellee
8. Langford L. Knight, Appellee
9. F. Gregory Malta, Appellee
10. William F. Parten, Appellee
11. Robert E. Pierce, Appellee
12. Roger E. Shirley, Appellee
13. Charles F. Speed, Appellee
14. Aaron K. Wilson, Appellee
15. Thomas Temple, Appellee
16. Leslie Wilkes, Appellee

Respectfully submitted, this the ___ day of May, 2009.

Joe H. Bryant, Jr., Appellant

By: _____
Paul A. Koerber , and Wayne E. Ferrell, Jr.
His Attorneys

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a)(1) of the *Federal Rules of Appellate Procedure* and Rule 28.2.4 of the *Fifth Circuit Court Rules*, Appellant, Joe H. Bryant (hereinafter sometimes referred to as "Bryant"), would simply state that this appeal presents a novel question of law never before addressed by this Court, although other intricate issues of law and its application to the facts likewise exist. Specifically, the legal issue is whether the District Court improperly applied rulings in *Bill Johnson's Restaurants v. NLRB*, 461 U. S. 731, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) and *BE & K Construction Co. V. NLRB*, 536 U. S. 516, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002). Indeed, this Court has never published any decision concerning the application of *BE & K*, *supra*. Here, the Appellees' multiple filings of patently frivolous lawsuits were for the admitted, objective purpose of violating Bryant's *First Amendment* rights of free speech, regarding his reporting of corruption at the Mississippi Air National Guard base at Key Field, in Meridian, Mississippi.

Moreover, the Appellees utilized their positions in this military unit in an extra-military manner, including the raising of monies to combat Bryant with such lawsuits, as well as other seditious conduct against this war hero and honor-bound officer, such that liability exists.

Inasmuch as the District Court found no such liability, the Appellant, Bryant, would respectfully submit that the answer to these questions of first impression for this Circuit is that liability does so exist.  Without such a finding, then, military personnel may truly use extra-military means to wage a "counter-offensive" against private persons for reporting actual and perceived corruption in the military forces.

Oral argument on these issues may be of benefit to this Court.

## TABLE OF CONTENTS

Page

Certificate of Interested Persons. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  i

Statement Regarding Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . .  ii

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

Jurisdictional Statement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Statement of Issues for Review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Statement of the Case. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Statement of Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Summary of Argument and Standard of Review. . . . . . . . . . . . . . . . . .31

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .32

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 58

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .59

TABLE OF AUTHORITIES

Cases                                                                                  Page

*Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002)                53

*Bill Johnson's Restaurants v. NLRB*, 461 U. S. 731, 103 S. Ct. 2161,
76 L. Ed. 2d 277 (1983) _____ii, 40, 46

*BE & K Construction Co. vs. NLRB*, 536 U. S. 516, 122 S. Ct. 2390,
153 L. Ed. 2d 499 (2002)                                                ii, 40, 44

*Can-Am Plumbing v. NLRB*, 321 F. 3d 145, 151 (D. C. Cir. 2003)    44, 47

*Carpenter v. Wichita Falls Independent School District*, 44 F. 3d 362,
365 (5th Cir. 1995)                                                         31

*Cenac v. Murry*, 609 So. 2d 1257, 1268-69 (Miss. 1992)                 55

*Chappel v. Wallace*, 462 U.S. 296, 103 S. Ct. 2362,
76 L. Ed. 2d 586 (1983)                                                    34

*Connick v. Myers*, 461 U.S. 138, 140, 103 S. Ct. 1684 (1983)          33

*Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 75 (Miss. App. 2005)    52

*Estelle v. Gamble*, 429 U.S. 97 (1976)                                 35

*Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998)               49

*Harrison v. Garrison*, 525 U.S. 121, 125, 119 S. Ct. 489, 492 (1998)  37

*Hassenfratz v. Garner*, 911 F. Supp. 235 (S.D. Miss. 1995)            35

*Hooks v. Morrison Milling Co.*, 38 F. 3d 776, 780 (5th Cir. 1994)      31

*Kearney v. Foley & Lardner*, – F. 3d – (9th Cir. 2009)                44, 47
(decided May 12, 2009; Case No. 07-55566)

*McWhorter v. Barre*, 132 S. W. 2d 354 (Tenn. App. 2003)                          53

*Meister v. Texas Adjutant General's Department*, 233 F. 3d 332, 340
(5th Cir. 2000)                                                                  34

*Mindes v. Seaman*, 453 F. 3d 197 (5th Cir. 1971)                               34

*NLRB v. Gissel Packing Co.*, 395 U. S. 575, 618, 89 S. Ct. 1918,
1942 (1969)                                                                        48

*NLRB v. Nash-Finch Co.*, 404 U. S. 138, 144, 92 S. Ct. 373, 377,
L. Ed. 2d 328 (1971)                                                              46

*NLRB v. USPS*, – F. 3d – (11th Cir. 2008)(Case No. 07-14951;
decided May 5, 2008)                                                           44, 47

*O'Connor v. Donaldson*, 422 U.S. 563 (1975)                                      35

*Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1988)  55

*Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968)  5, 32

*Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1294 (3rd Cir. 1997)         34

*Schiller v. Physicians Res. Group, Inc.*, 342 F. 3d 563, 567 (5th Cir. 2003)   43

*Schneck v. Pro-Choice Network*, 519 U.S. 357, 377, 117 S. Ct. 855 (1997)   5, 32

*Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001)                                49

*Stephens v. Kemco Foods, Inc.*, 928 So. 2d 226, 233 (Miss. App. 2006)            53

*United States v. Stanley*, 483 U.S. 669, 682-83, 107 S. Ct. 3054, 3063-64,
97 L. Ed. 2d 550 (1987)                                                           34

Statutes and Rules

5th Cir. R. App. P. 28.2.1

Fed. R. App. P. 34(a)

5th Cir. R. App. P. 28.2.4

Fed. R. App. P. 28(a)(4)(A) - (D)

Fed. R. App. P. 28(a)(5)

*Military Whistleblower Protection Act*, 10 U.S.C. Section 1034

First Amendment to the *United States Constitution*

42 U.S.C. Sections 1983

42 U. S. C. Section 1985

42 U. S. C. Section 1986

*Mississippi Code Annotated*, Sections 25-9-171, *et seq.*

*Mississippi Code of Military Justice*, Sections 33-13-1, *et seq.* and Section 33-9-19 of the *Mississippi Code of 1972, Annotated*

Fed. R. Civ. P. 11

28 U.S.C. § 1927

Miss. Code Ann. § 11-55-1, et. seq.

<u>JURISDICTIONAL STATEMENT</u>

Pursuant to Rules 28(a)(4)(A) through (D) of the *Federal Rules of Appellate Procedure*, jurisdiction is confirmed upon this Court based upon 28 U.S.C. Section 1291, inasmuch as this appeal is taken as a matter of right from an adverse decision in an action arisen under the laws of the United States, as set forth in 28 U.S.C. Section 1331. Specifically, the controversy in this action concerns relief sought pursuant to the *Military Whistleblower Protection Act*, 10 U.S.C. Section 1034, the First Amendment to the *United States Constitution*, and 42 U.S.C. Sections 1983, 1985 and 1986. Further, Bryant has set forth additional pendent, state law based claims, pursuant to *Mississippi Code Annotated*, Sections 25-9-171, *et seq.*, and under Mississippi common law.

Based upon the following arguments and legal precedent of this Court, Appellant Bryant would respectfully move this Court to reverse the appealed decisions of the United States District Court for the Southern District of Mississippi, as set forth in the following rulings:

On August 26, 2005, the District Court entered its [Docket No. 47; R. 518][1] Corrected Memorandum Opinion and Order, which dismissed all claims against

---

[1] Appellant Bryant will reference the certified Record in this fashion, throughout this Brief, by using "R." followed by the record page number.

Appellee "Military Department of the State of Mississippi, by and through the Mississippi Air National Guard," (the "Guard"), dismissed certain claims against some of the other Appellees, and denied the Guard's [19] Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Miss. Code Ann. § 11-55-1, et. seq. motion.

On July 17, 2007, the District Court entered its [Docket No. 235; R. 2253] Memorandum Opinion and Order, and its [Docket No. 236; R. 2278] (corrected) Memorandum Opinion and Order, which granted Partial Summary Judgment as to certain claims against the then-remaining Appellees in this action.

On June 17, 2008, the District Court then entered its [Docket No. 322; R. 2874] Memorandum Opinion and Order, which granted Summary Judgment as to the last remaining claims against the vast majority of the Appellees in this action. That Order, when read in combination with the District Court's prior [Docket No. 235; R. 2253] Order, left only certain claims pending against Appellees Malta and Pierce, but none against any other Appellees.

This appeal is therefore made pursuant to the Amended Order of January 15, 2009 [Docket No. 335; R. 2944], in which the District Court granted the Bryant's Motion to Certify this Appeal and deeming as final all orders and judgments, pursuant to Rule 54 of the *Federal Rules of Civil Procedure*.

2

STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

In accordance with Rule 28(a)(5) of the *Federal Rules of Appellate Procedure*, Appellant, Joe H. Bryant, Jr., would respectfully submit that the following issues are determinative of this appeal:

1.  Whether the United States District Court erred in dismissing claims against the Military Department of the State of Mississippi, through its arm of the Mississippi Air National Guard (hereinafter referred to as "MANG"), due to a misapplication of the *Feres* doctrine;

2.  Whether the District Court erred in granting summary judgment to the remaining individuals for repeated and concerted acts of violence, reprisal, intimidation, and retaliation against Appellant Bryant;

3.  Whether the District Court erred in dismissing certain pendent state law claims, when genuine issues of material facts existed, upon which a trial was warranted; and

4.  Whether the District Court, as noted above, misapplied the decisions in *Bill Johnson's* and *BE & K*, which this Court has not interpreted, but which other Circuits have made countervailing findings.

All such issues must be weighed in light of Bryant's protections of Free Speech in the *First Amendment* to the *United States Constitution*.

## STATEMENT OF THE CASE

Joe H. Bryant, Jr., has faithfully served the United States Air Force and is a combat hero, having put his life on the line for this nation in its conflict in Bosnia. He is, in fact, the only party in this civil action who has done so. Yet, where he saw malfeasance and corruption, he reported it, as is his duty, and for having performed his duty, he and his family have now suffered the reprisals of violence, threats, intimidation, vandalism, and character assassination, as even admitted by some of the Appellees.

Imperatively, this Court must note that while the history of this case has its genesis in the military, the facts developed below establish that the wrongful conduct of the Appellees/Defendants carried over into extra-military wrongs. Thus, the indulgence of the Court is requested in reviewing this vital recitation of established facts.

At the heart of this case is Mr. Bryant's affirmative duty, as an officer in the United States Air Force and in his concurrent status with the Mississippi Air National Guard (MANG), to report misconduct of other members of the military to his superiors. Further, to not report even a reasonable suspicion of misconduct is itself misconduct. Bryant did his duty.

Likewise at the heart of this case lies the observation of the United States Supreme Court that a public employee, such as Bryant, does not relinquish his First Amendment rights, as he would enjoy as any citizen to speak on matters of public interest in connection with the operation of the Mississippi Air National Guard's Key Field, at Meridian. *Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968). As a private citizen, Bryant's rights of free speech on matters of public concern "are classic forms of speech that lie at the heart of the First Amendment." *Schneck v. Pro-Choice Network*, 519 U.S. 357, 377, 117 S. Ct. 855 (1997)(Chief Justice Rehnquist writing for the Court).

Hence, it is Bryant's performance of his duty as an officer and his exercise of his First Amendment rights to speak against the misconduct he and others witnessed in Meridian that has wrought the furry of the Defendants/Appellees to retaliate. What they did and how they did it are discussed below. Yet, the undeniable answer to the question of why they have attacked Bryant so is borne by the substantiated facts that, not one, but *two* investigations substantiated allegations of such misconduct against the Defendants in the performance of their requisite duties as members of the Mississippi Air National Guard. [R. 2147, 2206] When his superiors did not

5

first act on his reports, he brought public light to the issues and the investigations that verified such wrongdoing.

Rather than receive a just commendation, Bryant has been attacked, sued, and threatened. Even the investigators for the Inspector General of the Air Force have cautioned Bryant that his life and the welfare of his family are in danger. Thus, at a time in our nation's history when preparedness and defense of our land was so vital, Bryant was left to fight for himself and his family against those he had exposed.

The Appellees/Defendants clothe themselves as members of the state militia. Bryant is considered a threat to them, their military careers, their self-righteous honor, and even to Key Field itself. Thus, though they act in an extra-military manner, they nevertheless act under the color of state authority in perpetrating their retaliation against Bryant. Admittedly, they have conspired to "shut him up" with the formation of an "association" they call the "Concerned Guardsmen of Mississippi," so that a frivolous defamation lawsuit could be filed against Bryant; a lawsuit that has since been dismissed. [R. 2087-2094, 1865-67] They boldly admit that their purpose is to stop Bryant from talking anymore. [R. 1867, 2016]

In addition to the defamation lawsuit, the Appellees, acting in concert, filed multiple objectively baseless lawsuits against Bryant, all of which have been dismissed.

Yet, more than baseless lawsuits have been visited upon Joe Bryant, he has been assaulted and threatened physically. [R. 1788, 1793-94, 1804, 1816] Gun shots have barraged his home. [R. 1786, 1822-23]   He has been harassed by multiple telephone calls to his home. [R. 1786, 1792, 1798-99]  His airplane has been sabotaged. [R. 1786, 1807-08] His wife's and son's  vehicles have been vandalized. [R. 1786, 1792, 1816] Scandalous and false letters have been written to his private employer, FedEx, to the Federal Aviation Administration (FAA) and to the Transportation Safety Administration (TSA), all in efforts to destroy his career and rob him of his family's livelihood. [R. 1792-93, 1824-26, 2141, 2142, 2144, 2158, 2205]   And, there is more.

In short, Joe Bryant did the right thing in exposing the wrongs he witnessed, and it is the right thing that he should have his day in Court.

STATEMENT OF THE FACTS

This case is about the violence, retribution, intimidation, threats and retaliation against a war hero.

It should be emphatically stated to the Court that, while much of the case addresses intra-military investigations of unethical and unlawful activities at Key Field in Meridian, the harm being perpetrated against Bryant is in his civilian capacity, as specifically alleged in the Complaint. [See Complaint at Paragraphs 29, 33, Counts I, II, III and IV. R. 51-53, 59-63] The unfortunate facts of this case blend activities that were both "incident to" military matters and those, for which this case is brought, that are insidious acts of violence and breaches of the peace perpetrated by the Appellees/Defendants, individually and collectively, against Mr. Bryant.  That said, the Court must be mindful, in reviewing all of these facts, that a different analysis is required that the Appellees/Defendants acted under "color of state law" with their military countenance and conspiring entity, known as the "Concerned Guardsmen of Mississippi." [R. 1865-67]

**THREATS, INTIMIDATION, VIOLENCE, COERCION AND HARM**

The factual allegations, taken as true, specifically point to Bryant's harm suffered outside of the confines of the military.  While the genesis of Mr.

8

Bryant's involvement in the Inspector General's investigation of the Appellees'/Defendants' conduct lies within the military, the conduct of Bryant's protected speech on matters of public concern and the retaliation he has experienced are not related to military service.  Indeed, no where in the Appellees'/Defendants' arguments below do they justify their actions against Bryant in his employment with FedEx, at his residence, at a meeting of minority awareness council meeting, or with respect to gunshots being fired at his place of residence, harassing phone calls, and the like, as more specifically set forth herein below:

1.   In or about March, 2000, Bryant, in his civilian capacity, was employed with FedEx, as a pilot for its shipment operations. [Complaint at 29. R. 51-53] This fact was well know to the Appellees/Defendants.  Appellee Malta, who is himself an attorney, accosted Bryant and threatened the continuation of his job at FedEx, his pilot's license with the Federal Aviation Administration (FAA), as well as his career in the MANG. [Complaint at 29. R. 51-53]

2.   Bryant has specifically listed actions of threats, intimidation, violence, coercion and harm perpetrated against him personally. This conduct includes:

   a.  On or about March 3, 2001, Bryant was met by armed MANG airmen, when he attempted to attend the Minority Awareness Council Meeting.

   b.  Repeated gun shots being fired in and around Bryant's home, which were made either by or at the direction of the Appellees/Defendants, and each of them.

c. Numerous harassing telephone calls, as well as anonymous hangups made throughout the investigative process being conducted by the Inspector General.

d. Filing of frivolous lawsuits and abusing the process of the courts of the State of Mississippi by each of the Appellees/Defendants against Bryant and the subsequently appointed investigator of the Inspector General's office, David Bertholf, solely in an effort to harass and intimidate Bryant, inasmuch as no legal or factual basis exists for any such litigation.

e. Physical assault and battery by Appellee/Defendant Temple on Bryant.

f. On or about November 14, 2003, Appellee/Defendant Pierce wrote to the FAA in a conspicuous effort to have Bryant's license revoked.  In doing so, Pierce provided the FAA with falsified medical information concerning Bryant, in a specific effort to likewise cause Bryant to lose his job with FedEx. Inasmuch as Bryant's physician has verified the falsity of Pierce's report and demanded that Pierce retract such assertions.

g. Additional communication has been instigated by the Appellees/Defendants, and each of them, so as to attempt interference with Bryant's employment with FedEx.  Indeed, such letters were even signed under the organization of the Appellees/Defendants, known as the "Concerned Guardsmen" of Mississippi.  Included in such attempts are false and defamatory statements all intended to obtain revocation of Bryant's pilot license with the FAA, to invoke the investigative authority of the Transportation Safety Administration (TSA) of the Department of Homeland Security of the United States, and to obtain Bryant's termination from his regular employment with FedEx.

h.  Acts of vandalism and malicious mischief, including the cutting of the gasoline line to Bryant's wife's vehicle (which occurred on or about March 8, 2004), shooting out windows to Bryant's motor-home, destruction of appliances attached to said motor-home, and slashing of tires on the Bryant's airplane.

i.  The sending of a false and malicious greeting card designed to create questions of marital infidelity between Bryant and his wife.

j.  The vandalism, destruction and theft of evidence from Bryant's vehicle.

While the impetus for the Appellees'/Defendants' actions was Bryant's reporting of unethical and unlawful conduct to the Inspector General, who upheld most of his allegations, **the actions of the Appellees/Defendants themselves carried what started out as an intra-military matter into an extra-military matter, though clothed in their uniforms as members of the state militia, as in their own self proclaimed association of the "Concerned Guardsmen of Mississippi."**

## BRYANT'S MILITARY CAREER

On or about November 24, 1974, Joe Bryant commenced his career in the military, and subsequently, on or about August 1, 1980, he was first assigned to duty with the MANG's 186th Tactical Recon Group (TRG), which later became the 186th Air Refueling Wing, located at Key Field in Meridian, Mississippi

(hereinafter sometimes simply referred to as the "186th").  Throughout his military career, Bryant received promotions and assignments indicative of his loyalty, diligence, expertise, training and knowledge in the exemplary performance of his duties, such that he eventually attained the rank of Colonel in the United States Air Force, while assigned to the Mississippi Air National Guard Headquarters, as its Director of Operations.  Indeed, his military record is replete with commendations and citations, including those for his service above and beyond the call of duty during 1999, as part of the United States' military engagement in Bosnia-Herzegovina.  Hence, throughout his military career, Bryant established himself as a leader in the armed forces of the United States, specifically the United States Air Force and particularly in Mississippi Air National Guard, and while serving the United States of America in its role and participation in the North Atlantic Treaty Organization (NATO). [R. 1775-1781]

During the period of time of 1990 through 1998, while a commissioned officer with the 186th at Key Field Air National Guard Base in Meridian, Bryant began to observe wrongful actions by superiors in the method and manner by which his fellow airmen were being treated, in violation of statutes, rules and regulations of the United States and the State of Mississippi, including but not

limited to, violations of federal laws of the United States of America and violations of the rules and regulations promulgated by the National Guard Bureau and the Department of Defense, as well as violations of the *Mississippi Code of Military Justice*, Sections 33-13-1, *et seq.* and Section 33-9-19 of the *Mississippi Code of 1972, Annotated*, as amended. [R. 2095, 2097, 2147, 2206]

REPORTING OF MISCONDUCT

During the same period of time, Bryant took certain actions in efforts to protect and defend his fellow airmen at the 186th, in their jobs, ranks and assignments, as well as to protect the integrity of the 186th, the Mississippi Air National Guard, the United States Air Force, and their respective properties and missions. Such observations of wrongs being committed at the 186th include, but are not limited to: (1) Racial discrimination; (2) Sexual harassment; (3) Failure to accomplish required training and falsification of training and certification records; (4) Use of government property for non-military purposes; (5) Misappropriation of governmental property; (6) Dereliction of officers' duties; (7) Wrongful conduct unbecoming of certain officers; (8) Impropriety in the use of or creation of an appearance of such impropriety in the use of the 186th's personnel, time, equipment, property and resources for private/personal unofficial activities; (9) Falsification of work hour and duty records; (10)

13

Wrongful operation of a retail liquor store at Key Field; (11) Misreporting of the unit's military readiness status; (12) False and misleading information provided in response to U. S. Congressional inquiries concerning activities associated with Key Field Air National Guard Base; (13) Improper conduct associated with official professional military education course work; (14) Improper and inaccurate officer performance reports; and (15) Unauthorized retention and/or selection of disqualified and/or unqualified personnel in certain positions.

These improprieties were committed by all of the Appellees/Defendants. [R. 2095, 2097, 2147, 2206]

During the same said time, Bryant would bring such violations to the attention of his superior officers. On numerous occasions, such complaints were ignored, even though he was an officer and even though he had eventually attained the position as Director of Operations for the MSANG.

In or about October 1998, Bryant brought his concerns and complaints to the attention of Harold Cross, who was then assigned as Brigadier General of the Mississippi Air National Guard. Cross dismissed Bryant's complaints.

BOSNIA

Subsequently, Colonel Bryant volunteered for service, at the urging of Cross, and in or about December 1998, he was selected for a NATO command position, as the Commander, 16th Expeditionary Air Support Operations Group. He was subsequently dispatched to Bosnia-Herzegovina, where he served with distinction, as both the Commander, 16th Expeditionary Air Support Operations Group and the NATO Air Operations Coordination Center Director, during the term of January 30, 1999 through June 15, 1999. Indeed, during this deployment, Bryant was in charge of all air operations over the skies of Kosovo. [R. 1775-1777, 1779]

Amazingly, during his deployment to Bosnia-Herzegovina, Bryant's voluntary separation from the Mississippi Air National Guard was sought, effective on or about November 1, 1999. He was also notified and requested to sign a letter of resignation, which he refused to do. Also, while deployed, Bryant received notification that he was being relieved of his duties as Director of Operations of the MANG Headquarters by Cross, which violated Bryant's interests, especially during his deployment to a theater of war.

RETURN TO KEY FIELD

In or about July, 1999, Bryant returned to Key Field Air National Guard Base, and rather than be reinstated to his former position as Director of Operations of the MANG, he was instead assigned to the position of an officer junior in grade, a lieutenant colonel, and was directed to assist an officer junior to him, a lieutenant colonel who already held the position, all in violation of National Guard Bureau regulations.  Furthermore, he was directed to occupy an "office", which was actually in a "storage room" in the 186th Air Refueling Wing headquarters building, and he was ordered to never report to anyone or perform any duties regarding the Wing's flight operations, even though Bryant was a pilot and a Colonel.   [R. 1779-1780, 1786]

Such conduct taken against Bryant in direct retaliation for his complaints regarding the improper actions of his superior officers, set forth above. Appellees/Defendants Feinstein, Chalk, Knight, Malta and Pierce, perpetrated such conduct against Bryant, in order to humiliate, intimidate and harass him. [R. 1786, 1806, 1809, 1814]

Rather than succumb to such tactics, Bryant sought, throughout the remainder of 1999 and into early 2000, to bring his concerns and complaints to the attention of officers in the United States Air Force and National Guard, who

16

would take action to remedy the problems for Bryant and his fellow airmen of the 186th. All such efforts were to no avail. During the same period, Appellees/Defendants Knight, Temple and Chalk, composed a career damaging report regarding Bryant, in a effort to adversely affect his military record. These actions were taken in retaliation of Plaintiff's previous complaints regarding the operations of the 186th, as set forth herein above.

COMPLAINTS TO HIS SUPERIOR OFFICERS

In or about February 2000, Bryant brought his written complaint to the attention of Colonel Roger Shields, the then acting executive officer for the Commander, Mississippi National Guard, Adjutant General George Walker. Approximately one week later, in or about the first week of March, 2000, Bryant was threatened with the loss of his career in the MANG, in direct retaliation for his protected communication with the Mississippi National Guard Adjutant General's office. [R. 2095, 2097]

At the same time, Bryant, in his civilian capacity, was employed with FedEx, as a pilot for its shipment operations. This fact was well known to the Appellees/Defendants. Appellee Malta accosted Bryant and threatened his job at FedEx, his career in the MANG, and his pilot's license with the Federal Aviation Administration (FAA), in direct retaliation for his protected

communication with the Mississippi National Guard Adjutant General's office. [R. 1806, 1809, 1814, 1819]

Continuing in his refusal to succumb to the threats, intimidation and scare tactics, Bryant sought a meeting with then Major General George S. Walker, as well as then Mississippi Governor Ronnie Musgrove, MANG's Commander-in-Chief, to whom he petitioned for a change in the leadership of the 186th and was supported by written correspondence to both by approximately 80 airmen.

As a result, on or about March 22, 2000, Bryant met with Walker. He sought to provide Walker with the same written complaint as had been provided to the acting executive officer, Colonel Roger Shields, in February 2000, but Walker refused to accept the written complaint. Instead, Walker indicated his displeasure with the actions of the Bryant and further indicated that such continued actions of seeking a change in the leadership of the 186th would result in his dismissal from the MANG.

Unknown at the time and without his agreement, Bryant was relieved of his duties to the MANG, on or about March 28, 2000; yet, he remained a member of the United States Air Force. Indeed, on April 6, 2000, Bryant attended his mandatory unit drill weekend, and during this period, he was

18

subjected to assignment to a "storeroom" and was ridiculed by Appellees Chalk and Malta.

## MALTA'S LAW OFFICE MEETING

In or about early April 2000, Bryant was ordered by Temple to meet with Temple and Malta at the law offices of Bordeaux and Jones in Meridian, Mississippi, where Malta was then a practicing attorney. At the meeting on or about April 18, 2000, he was ordered to sign dismissal paperwork associated with his dismissal from the MANG. He refused. Even now, Malta agrees that Bryant was being forced out, and although such a personnel matter would ordinarily be a purely military matter, it was handled outside of and not incident to the Guard unit at Malta's law office, in an effort to prevail on Bryant to give up his military career. [R. 1857-1859]

On or about April 10, 2000, Governor Musgrove corresponded with a retired member of the MSANG, Colonel Robert Soule, who had supported Bryant's efforts for the change in leadership of the 186th and who had expressed concerns with the lack of leadership and low morale at the 186th. In said correspondence, Governor Musgrove had indicated that Bryant had purportedly signed an acknowledgment, dated June 8, 1998, that he would be separated from the MSANG, and a copy of this statement was enclosed. This

acknowledgment has subsequently been determined to be a forgery by the Inspector General of the United States Air Force (USAF). [R. 2147, 2156, 2206]

In or about May, 2000, Bryant was offered a position within the Air National Guard as assistant to the Director of Operations, because of his dedication to duty and service to his country in Bosnia. He later transferred to the USAF Reserves Air Force National Security and Emergency Preparedness agency (AFNSEP), as its Emergency Preparedness Officer for Mississippi, in or about November 2002.

REPORT TO GENERAL LIPSCOMB AND INITIAL INVESTIGATION

In or about July, 2000, Walker resigned as Adjutant General of the MSANG amidst multiple charges of partisanship. Thereafter, on or about January 19, 2001, Major General James Lipscomb was confirmed as the new Adjutant General of the MANG. On or about February 13, 2001, Bryant met with Lipscomb and provided him with essentially the same written complaint that he had previously provided to Walker and others, concerning the aforesaid improprieties at the 186th by the Appellees/Defendants, all of which were considered in violation of the *Mississippi Code of Military Justice*, Sections 33-13-1, *et seq.*, of the *Mississippi Code of 1972, Annotated*, as amended, as well as federal statutes, rules and regulations of the United States, the National

Guard Bureau, and the Department of Defense.  On or about February 28, 2001, a copy of the written complaint was likewise sent directly to the Inspector General of the United States Air Force, and the subsequent investigations of the Appellees/Defendants ensued.   [R. 2095, 2097]

Bryant's communication with General Lipscomb and the Inspector General is considered protected speech, in accordance with the terms and provisions of 10 U.S.C. Section 1034, in seeking an investigation by the Inspector General of the Department of the Air Force.  Hence, all such communication by Bryant, as set forth herein, is deemed protected communication, in accordance with 10 U.S.C. Section 1034.

INSPECTOR GENERAL'S INVESTIGATIONS

An initial investigation then ensued.  As part and parcel of said investigation, the Department of the Air Force, by and through the Secretary of the Air Force's Inspector General, selected an investigator, Colonel David Bertholf.  Colonel Bertholf investigated the complaints of Mr. Bryant, during the years 2002 and 2003.  That investigation was completed and submitted to the Mississippi Adjutant General.  Thereafter, the investigation was followed by another investigation, directed by the Adjutant General, and conducted  a special investigator, Colonel Kenneth J. Emanuel, during the years 2003 and

2004. This investigation was chartered to examine additional allegations of Mr. Bryant, which had been deferred from the first investigation. [R. 2147, 2206]

The allegations in Bryant's written and oral complaints presented to the Air Force investigators of the Inspector General's office concerned the same wrongful actions of the Appellees/Defendants, and each of them. [R. 2095, 2097] The Inspector General's reports concerning said allegations, along with the resulting findings from the investigations, resulted in the Inspector General issuing complaints or charges against the Appellees/Defendants, and each of them. [R. 2147, 2206] It is important to note that it is not Bryant who brought charges against the Appellees/Defendants; it was the Air Force itself; yet, throughout, the Appellees/Defendants treat the entire matter of these charges as if Bryant had authority to charge them with anything. To the contrary, as described by Malta, it was Bryant's affirmative duty to bring such misconduct to the attention of the appropriate authority. [R. 1851-1852]

As a result of Bryant's protected communications with Lipscomb and the Inspector General's investigators, Bertholf and Emanuel and other investigative personnel, and as a result of the ensuing investigation, the Appellees/Defendants, and each of them, systematically engaged and continue to engage in threats and other intimidation tactics, as set forth herein below,

22

against Bryant, specifically for his having communicated such wrongful conduct to the Inspector General and his personnel, and ultimately for bringing such corruption to public account. Such conduct on the part of the Appellees/Defendants, therefore, was taken in reprisal for Bryant's having communicated with the Inspector General, such that the Defendants' actions violate 10 U.S.C. Section 1034(b)(1) and (2).

Nevertheless, the Secretary of the Air Force Inspector General's office continued to investigate the allegations of the Plaintiff, concerning the wrongful conduct within the 186th and the MSANG.

## "CONCERNED GUARDSMEN OF MISSISSIPPI" FORMED

In the early months of 2003, the Appellees/Defendants, and each of them, including the offices of MANG, formed an "association," which they called the "Concerned Guardsmen of Mississippi." The unmitigated purpose of their association was to retaliate against Bryant and force him to "shut up." They collected monies from each member and other Mississippi Guardsmen for a legal fund to go after Bryant, and they named Appellee/Defendant Feinstein, a retired general, to marshal those funds. According to Malta, all of the Appellees/Defendants are members of this association. [R. 1865-1867]

Their objective first and foremost was to attack Bryant. They initially hired Joe Hollomon, a former Assistant United States Attorney, who subsequently withdrew from further representation of the group. Yet, other attorneys were hired and paid to attack Bryant, according to Malta.

This group in its purest form epitomizes a conspiracy to retaliate against Joe Bryant. Their first action was to sue him for defamation, in a frivolous and meritless case that has subsequently been dismissed. [R. 2087-2094] Brazenly, they readily admit that the purpose of the lawsuit was to shut Bryant up and to punish him for his public statements about the 186th, as indicated below. [R. 2016, 1867, 2020]

## PUBLIC SPEECH

Despite the findings of malfeasance and corruption by the Inspector General of the air Force with the command at Key Field, no real change occurred in the leadership of the 186th. Indeed, some of those same officers that are Appellees/Defendants herein were left to rule the unit.

In May of 2003, Bryant brought these concerns to then Governor Musgrove, in an email to his assistant Michael Bentley. [R. 2118-2119] Bryant had already been interviewed by certain newspapers about the investigation of

24

the 186th unit.  He had been asked to appear on radio station WMOX in Meridian, and Bryant advised the Governor of this request.

On May 24, 2003, Bryant, along with the Inspector General's investigator, Colonel David Berholf, appeared on the radio show. [R. 2160-2204] None of the Appellees/Defendants were mentioned by name, and none of the allegations of malfeasance and other military law violations were attributed to any particular Appellee/Defendant.  Yet, Bryant made his speech on this issue of public concern about the operations of the 186th at Key Field.

Incensed, the "Concerned Guardsmen of Mississippi" met again, and they determined to have Malta draft a lawsuit against Bryant for the stated purpose of getting him to "shut up."   Indeed, in their depositions, none of them can point to any specific damage they have suffered, as a result of Bryant being on the radio program; yet, it is solely based on this radio show that their lawsuit was based.  [R. 2087-94, 2016, 1867, 2020]

As in previous months, Bryant was continuously interviewed by *The Meridian Star* and the *Clarion-Ledger*.  Appellees/Defendants Pierce and Malta, for instance, sued the *Clarion-Ledger* and *The Meridian Star*, respectively, and their cases have been dismissed.  Further, Pierce has likewise sued the United States Air Force, and United States District Chief Judge Henry T. Wingate, has

likewise dismissed that case. Yet, the pertinence to this action is the extent to which all of these Appellees/Defendants are willing to go, in order to punish one, such as Bryant, for having held them accountable in his public speech.

His statements in the media are disconcerting to them all, but no viable defamation or false light clam exists for them, and as such, they are left to repeatedly file lawsuits against Bryant. Chalk and Wilson likewise sued Bryant for his public statements, and those cases have also been dismissed. Since Bryant would not "shut up," they have turned to other avenues of retaliation to either obtain his silence or damage him for such speech.

## MORE BASELESS LAWSUITS

It is not just the focal spurious defamation case the Appellees/Defendants filed against Mr. Bryant, multiple lawsuits have been filed against him solely in an effort to "shut him up." Those suits include, but are not limited to, the following:

> (a) *Malta v. Riverstates Publishing, et al*; in the United States District Court for the Southern District of Mississippi; Civil Action No. 4:06CV11TSL;
>
> (b) *Malta v. Bryant, et al.*, in the Circuit Court of Lauderdale County, Mississippi, Case No. 04CV262B;
>
> (c) *Pierce v. Bryant,* in the United States District Court for the Southern District of Mississippi; Civil Action No. 4:06CV6TSL*;*

(d) *Wilson v. CNH Investments, et al.*, in the United States District Court for the Southern District of Mississippi; Civil Action No. 4:06CV12TSL;

(e) *Chalk v. Bryant*, in the United States District Court for the Southern District of Mississippi; Civil Action No. 4:06CV13TSL;

(f) *Wilkes v. Bryant*, in the Circuit Court of Lauderdale County, Mississippi, Case No. 05 CV 067;

(g) *Chalk, et al. v. Bryant*, in the Circuit Court of Lauderdale County, Mississippi, Case No. 03CV094CR; and

(h) *Temple v. Bryant*, in the Circuit Court of Lauderdale County, Mississippi, Case No. 04-CV-273B

Mr. Bryant filed Motions to Stay the State Court Proceedings and to Consolidate all of the cases for, at least, discovery purposes in the case *sub judice*. [R. 977]  After initially granting the Motions, due principally to the Appellees'/Defendants' failure to respond, the District Court reversed itself and denied the Motions. [R. 1040, 1066 Thus, although he has brought this one suit against the Appellees/Defendants for the claims and causes of action set forth herein, Mr. Bryant has endured defending against at least eight (8) different lawsuits, which are all meritless.  *All of them have been dismissed with prejudice.*

### CONTINUOUS RETALIATORY CONDUCT

The Appellees/Defendants mocked Bryant in their Memoranda of Authorities in support of the present motion, as essentially being mentally deranged. Pierce went so far as to send a letter to the FAA challenging Bryant's mental status for flight. [R. 2158-59] As a result, a six-month investigation ensued, from which Bryant was eventually cleared. [R. 1825-1827]

Yet, this letter by Pierce is most indicative of the reprisals waged on Bryant. Pierce was one of the chief targets of the Inspector General's investigations. Pierce remains bitter about the investigation by Colonel Emmanuel. His letter however to the FAA quotes the medical flight examiner for pilots at Key Field, Dr. Edward Carruth, as questioning Bryant's fitness for flight and recited his purported mental instability as allegedly reported by Dr. Carruth. [R. 2158-2159] When he finally learned of this outrageous letter, Dr. Carruth demanded a retraction from Pierce, but he never did. [R. 2145] In fact, Dr. Carruth cited many violations in Pierce having made such scandalous statements to the FAA about his patient, Bryant.

Even more outrageous is the fact that in May of 2005, Bryant's truck was broken into, while parked at a Holiday Inn in Memphis, where he was staying prior to his work flying for FedEx. Taken were his laptop computer and his

files on this case.  The entire break-in was caught on the security cameras of the hotel. [R. 1786][2]

Amazingly, during Bryant's deposition on January 11, 2005, in Pierce's ill-fated lawsuit against the United States Air Force, documents from Bryant's stolen computer were presented by Pierce's counsel, Mike Farrell. [R. 1903, 1911, 1915, 1916, 1921-22]  Those documents have now likewise been submitted by the Appellees/Defendants in this case.  Thus, Bryant brought his spoliation motion for the District Court to make an evidentiary inquiry into the stolen documents being presented and that a negative inference be presented to the jury.  Erroneously, the District Court denied the motion, although finding a reasonable basis for Bryant's argument that the Appellees perpetrated the break-in.

## BRYANT'S INJURIES AND DAMAGES

Bryant has lost the economic opportunity for advancement with his private employer, FedEx.  Pierce's letters to the FAA, coupled with the other

---

[2] This entire matter was the subject of Bryant's Motion for an Evidentiary Hearing and the Propriety of a Negative Inference Instruction, based upon spoliation of evidence.  This hearing is the subject of several submissions to the District Court and an Order entered on March 31, 2008. [R. 1757, 2720, 2791] The District Court found that Bryant had a reasonable basis for believing that the Appellees were responsible for the break-in of his truck and the theft of documents and a computer, but the Court refused to grant the relief sought.  This Court is called upon to examine this ruling with respect to the establishment of genuine issues of material fact, upon which a trial is warranted.

letters sent to FedEx Chairman Fred Smith and the TSA, lead to Bryant's loss of money in his job. The initial impact was the loss of one trip worth $1200, but the greater impact has been on Bryant's career with FedEx and the lost opportunity for advancement to wide-body jets, which would increase his income by approximately $60,000 annually. [R. 1826]

The stress and anxiety of continuous acts of vandalism and sabotage by the Appellees/Defendants have likewise resulted in his passing of blood and experiencing high blood pressure, as related by his physician, Dr. Michael Nanney. [R. 1825-26, 2052-53] Joe Bryant has endured the humiliation of being investigated by FedEx and the FAA, based on the letters from Pierce and others from the "Concerned Guardsmen of Mississippi."

Property damage to his wife's and son's vehicles, his airplane, his motor home, and the break-in of his truck in Memphis are all compensable losses directly attributable to the animus of the Appellees/Defendants.

Threats of violence, including Bryant's own life, hang over him. As noted above, the very independent Air Force investigators, who examined the misconduct at MANG's Key Field, repeatedly told Bryant that his life and his family were in danger. [R. 1812] Family friends, who know the animus and actions of the Appellees/Defendants, have warned Bryant "to be careful," due to

the his "stepping on big toes," and the resultant likelihood of violence to befall him. [R. 1793-94]

All in all, the facts of injuries and damages suffered by Joe Bryant are real and are compensable.

In all, the overwhelming evidence and the following legal authority support a finding that genuine issues of material facts exist upon which a trial is warranted in this case.

## SUMMARY OF THE ARGUMENT

### *Standard of Review*

Inasmuch as the District Court granted in four separate dispositive motions filed by the Appellees/Defendants, this Court may review such decisions under a *de novo* standard. *Hooks v. Morrison Milling Co.*, 38 F. 3d 776, 780 (5th Cir. 1994); *Carpenter v. Wichita Falls Independent School District*, 44 F. 3d 362, 365 (5th Cir. 1995). As noted above, Bryant has sought relief for violations of his rights protected by the *First Amendment* through various statutory and common law avenues. Each of those violations have been noted above, and the supporting law below establishes that he is entitled to relief.

The United States District Court for the Southern District of Mississippi denied Mr. Bryant this guaranteed relief. After four bites at the proverbial apple, the Appellees have avoided liability, thus far. Use of their "association" as the "Concerned Guardsmen" to repeatedly file multiple, patently frivolous lawsuits and engage in acts of violence against Bryant for the solely ***admitted*** purpose of "shutting him up" renders these Appellees/Defendants liable. Misapplication of law mandates reversal of the District Court's decisions.

## ARGUMENT

### *FIRST AMENDMENT*

Joe Bryant's communication with his military superiors and his speech to media outlets on matters of public concern are protected under the *First Amendment* to the *United States Constitution*, as applied through the *Fourteenth Amendment*. These expressions therefore are in the nature of a public employee communicating in a military setting about misconduct, which is protected under the *Military Whistleblower Protection Act*, 10 U.S.C. Section 34, ***and*** in the nature of a private citizen speaking on matters of public concern. *See also* 5 U.S.C. Section 2302, *et seq.* Both settings are subject to protection under the *First Amendment. Pickering v. Board of Education*, 391 U.S. 563, 568, 88 S. Ct. 1731 (1968), and *Schneck v. Pro-Choice Network*, 519 U.S. 357, 377, 117 S.

Ct. 855 (1997), respectively.  *See also, Connick v. Myers*, 461 U.S. 138, 140, 103 S. Ct. 1684 (1983).

Application of these fundamental principals is made through the *Fourteenth Amendment*, and through the Post Civil War Acts of 42 U.S.C. Sections 1983, 1985 and 1986.

*42 U.S.C. Sections 1983, 1985 and 1986*

> Every person who, under color of any statute, ordinance, regulation, *custom, or usage*, of any State ... subjects or causes to be subjected, any citizen of the United States ... to deprivation of any rights ... secured by the Constitution and laws, shall be liable to the party injured in an action at law .... [Emphasis added.]

42 U. S. C. Section 1983.

The only contrary argument offered by the Appellees/Defendants, on whether they are liable, is simply that they have not acted "under color of state law."  Yet, the facts and circumstances set forth above show that they have continuously justified their actions based on their status as military officers and members of the Mississippi Air National Guard's 186th Refueling Wing.  They clothe themselves in their uniforms to evade liability under the *Feres* doctrine, but the analysis does not stop there, when, as here, the Appellees/Defendants use their positions in the State militia and as the State militia to cause harm to Bryant in his personal and private citizen capacity.

33

In *Chappel vs. Wallace*, 462 U.S. 296, 103 S. Ct. 2362, 76 L. Ed. 2d 586 (1983), the United States Supreme Court recognized this distinction. While the decision in *Chappel* barred a national guardsman from bringing such claims under the *Feres* doctrine, the case never touched upon conduct perpetrated by the individual defendants or the use of the national guard unit by such individual defendants, as shown in this case, after the Bryant had already been removed from the MANG and after he had even retired from military service. Here, the replete and specific factual allegations of the violence, threats and intimidation perpetrated by the individual and state perpetrators establish violations of Bryant's protected rights and privileges. As further recognized by the Third Circuit, the defendants' *personal involvement* in the alleged wrongs suffices for liability purposes. *Robinson v. City of Pittsburgh*, 120 F. 3d 1286, 1294 (3rd Cir. 1997)(further recognizing that actual knowledge and acquiescence is equated with personal direction).

Appellate Judges Jolly, Smith and Barksdale also wrestled with this same distinction in *Meister v. Texas Adjutant General's Department*, 233 F. 3d 332, 340 (5th Cir. 2000), where they disagreed with the District Court's application of *United States v. Stanley*, 483 U.S. 669, 682-83, 107 S. Ct. 3054, 3063-64, 97 L. Ed. 2d 550 (1987), and *Mindes v. Seaman*, 453 F. 3d 197 (5th Cir. 1971), in

the District Court's decision in *Hassenfratz v. Garner*, 911 F. Supp. 235 (S.D. Miss. 1995). The bottom-line analysis, though, is whether the actions of the military officers and their resultant harm to the plaintiff had anything to do with "internal military decisions." Clearly, that is not the case here. The Appelles'/Defendants' reprisals against Bryant were for their own personal benefit. MANG's reprisals were for its own survival, due to the pervasive corruption then existing at Key Field. As noted above, the individual appellee/defendants used the very arm of MANG to wage war against Bryant for reporting and then making public the widespread corruption in Meridian.

Clothed in their actions of acting "under color of any ... custom or usage of any State," the Appelles/Defendants fall within the purview of the very conduct outlawed by 42 U.S.C. Section 1983. The United States Supreme Court has recognized such liability where the actions of physicians, tangentially in government service, cause harm to their patients based on their own personal conduct and non-governmental physician-patient status, such that they acted "under color of state law." *See O'Connor v. Donaldson*, 422 U.S. 563 (1975) and *Estelle v. Gamble*, 429 U.S. 97 (1976).

These "Concerned Guardsmen of Mississippi" espouse the essence of the conduct prohibited by the statute. In his deposition, General Feinstein

proclaimed the Appellees'/Defendants' actions of "protecting themselves" and their unit [MANG], by engaging in the actions against Bryant. Appellee Lieutenant Colonel Malta, in his deposition, likewise stated that the purpose of the "Concerned Guardsmen of Mississippi" was to bring pressure on Bryant to halt the media attention and "shut him up."

*42 U.S.C. Section 1985*

The actions and conduct of the Appellees/Defendants, and each of them, constitute the purposeful prevention or hindering of Joe Bryant and the authorities of the State of Mississippi, the United States, or any other proper and appropriate constituted authority or agency, from the equal protection of the laws of the United States of America. As a result thereof, the Appelles/Defendants, and each of them, conspired to deprive or injure Bryant, in his person or property, by acts to deter, prevent, intimidate or threaten him, from discharging his duties as an officer in the MANG and the USAF, such that they conspired to and did  violate the terms and provisions of 42 U.S.C. Section 1985. These Appelles/Defendants, and each of them, thus conspired for the purpose of impeding, hindering, obstructing, or defeating, in any manner, Bryant from engaging the due course of justice in the State of Mississippi and in the United States of America, with the intent to deny to the equal protection of

the laws, by use of such conspiracy to deter, force, intimidate or threaten Joe Bryant from freely, fully and truthfully discharging his duties, all in violation of 42 U.S.C. Section 1985. [Amended Complaint, Para. Nos. 56 and 57. R. 760-795]

Their only argument in response to this charge is that Bryant is not a member of a protected class under 42 U.S.C. Section 1985.  Again, they miss the issue raised.  This claim under Section 1985 is not based on discriminatory animus, though hostile animus certainly exists against Bryant.  Instead, Bryant's claim is based upon the Appellees'/Defendants' concerted activities to prevent Bryant from discharging his duties.

This cause of action is specifically recognized by the United States Supreme Court in *Harrison v. Garrison*, 525 U.S. 121, 125, 119 S. Ct. 489, 492 (1998), in which the defendants in that case conspired to retaliate against a witness in federal court proceedings.  The Court, applying 42 U.S.C. 1985(2), found that the plaintiff had a cause of action for the retaliation and intimidation visited upon the plaintiff.

Here, the same is true.  This federal statute is designed to protect just such a person as Joe Bryant from the threats, harm, intimidation, harassment and

37

reprisals directed at him.  No class status is need for such a claim under 42

U.S.C. 1985(2).

Moreover, the conspiracy of the Appellees/Defendants is readily admitted

by them in their formation and participation in their "Concerned Guardsmen of

Mississippi," which was strictly formed for the purposes of attacking Joe

Bryant.

*42 U.S.C. Section 1986*

Finally, the Appellees/Defendants, and each of them, violated 42 U. S. C.

Section 1986, inasmuch as they failed or refused to prevent the commission of

the aforesaid acts of violence, threats, intimidation, coercion, and harm, through

the conspiracy.

This federal protective statute simply follows from Section 1985 for the

Appellees'/Defendants' actions in failing to prevent such wrongs against Bryant

from occurring.  Based on this activity of conspiracy, through their "Concerned

Guardsmen" organization, they are each separately liable under this Act for the

harm and statutory damages assessed under the statute. Bryant is therefore

entitled to the relief afforded him under 42 U.S.C. Section 1988.

Bryant's claims are poignantly based upon Constitutional, statutory and

regulatory law.  He has copiously invoked his rights and privileges under the

38

*First Amendment* to the *United States Constitution*. Coupled with this constitutional protection are statutory, regulatory and public policy contained in the *Military Whistleblower Protection Act*, 10 U.S.C. Section 34. Make no mistake, the point of Plaintiff's claims under 10 U.S.C. Section 1034 is not for a private cause of action under that statute; rather, Bryant contends his right to proceed with constitutional claims under the *First Amendment* and that his speech to the Inspector General are indeed "protected communication" under the military's own statutory and regulatory guidelines.

There is no military function, expertise or discretion involved in the willful acts of retribution and violence against Mr. Bryant. For example, no analysis of military function, expertise or discretion is involved with respect to the actions of Appellee Peirce when, or about November 14, 2003, he wrote to the FAA in a conspicuous effort to have Plaintiff's private license revoked. No military function, expertise, or discretion is involved in this Court's consideration that Pierce provided the FAA with falsified medical information concerning Mr. Bryant, in a specific effort to cause Bryant to loose his civilian job with FedEx.

## ERROR OF THE DISTRICT COURT

On June 17, 2008, the District Court entered its Memorandum Opinion and Order, which granted Partial Summary Judgment to a vast majority of the Appelles/Defendants in this action, by dismissing the core claims of the Plaintiff regarding the pervasive retaliatory filings of, not just one, but multiple lawsuits against Mr. Bryant. [Docket No. 322. R. 2874]  It is respectfully submitted that the decision of June 17, 2008, is in error and misapplied the law in this action and did not consider copious facts submitted in this case.

Indeed, the Appellees/Defendants given four attempts at having this action dismissed, and they (with the exception of  Malta and Pierce) have succeeded. [*See* R. 95, 195, 198, 201, 204, 511, 2388, 2801] Mr. Bryant respectfully imparts to the Court that these multiple filings of motions have apparently caused confusion in the District Court's consideration of Bryant's claims, particularly with the respect to the latest ruling of the Court.  Bryant submits this recitation, because the latest ruling adopts arguments that incorrectly state key U. S. Supreme Court decisions but also misapplies that law to the facts of this case.

At the heart of the Court's decision of June 17, 2008, is the application of two opinions of the Supreme Court in *Bill Johnson's Restaurants v. NLRB*, 461 U. S. 731, 103 S. Ct. 2161, 76 L. Ed. 2d 277 (1983) and *BE & K Construction*

*Co. V. NLRB*, 536 U. S. 516, 122 S. Ct. 2390, 153 L. Ed. 2d 499 (2002). Bryant would respectfully submit that this Court incorrectly applied and interpreted these opinions to the case *sub judice*, in the following respects:

(A) *Bill Johnson's* does not apply to suits, such as those filed by the Appellees/Defendants, that has an objective that is illegal under federal law;

(B) this *Bill Johnson's* exception was not affected by *BE & K*;

(C) such lawsuits that violate federal law are considered "illegal speech" and are thus not protected under the First Amendment;

(D) *BE & K* and no other federal case considering these aspects address a case, such as the one at hand, in which there are some **eight (8)** cases filed strictly for retaliatory purposes;

(E) *BE & K* and no other federal decision concerns the formation of an organization or association (such as the "Concerned Guardsmen of Mississippi"), which was established strictly for the purpose of bringing multiple lawsuits against Mr. Bryant, in order to "shut him up;"

(F) the Appellees/Defendants admittedly suffered no damages for which they sought relief in their cases, such that even if successful on the merits of liability, no recovery could be made by even the most reasonable of complainants;

(G) the Appellees/Defendants admittedly brought the lawsuits, not to recover money or to enjoin perceived unlawful conduct, but rather to only admittedly harass Bryant, such that clearly no reasonable complainant could believe that the cases were objectively well based;

(H) in four of the above referenced cases, the Appellees/Defendants simply filed the lawsuits, compelled Bryant to answer and file appropriate motions, never conducted discovery and either had the cases dismissed for failure to prosecute or belatedly dismissed them voluntarily, such that even by their own standard the cases were not objectively based in fact or in law; and

(I) the burden of showing that the Appellees'/Defendants' multiple lawsuits were "objectively baseless" was incorrectly placed on Bryant.

The Appellees/Defendants in this action have not submitted any feasible challenge to Bryant's claims of his own protected speech under the *First Amendment* or under the specific statute that makes the Appellees'/Defendants' conduct of repeatedly bringing such objectively baseless suits unlawful, and thus "illegal speech," that is not protected by the *First Amendment*. Such specific federal prohibition against such retaliation is grounded in the *Military Whistleblower Protection Act*, 10 U.S.C. Section 1034. Further, such specific federal prohibition is set forth under 42 U. S. C. Sections 1985 and 1986.

Nowhere has the U. S. Supreme Court ruled that defendants avoid these statutes by filing lawsuits against a person reporting on corruption and malfeasance at a military base.

This Court should therefore reverse the District Court's ruling and allow Bryant's claims to proceed to trial against all of the adverse parties. Although a motion for reconsideration was made to the District Court, when there existed a need to correct a manifest error in law or fact, the trial court refused to do so. *Schiller v. Physicians Res. Group, Inc.*, 342 F. 3d 563, 567 (5th Cir. 2003).  In doing so, the District Court failed to consider factors regarding the importance of the reconsideration to Bryant's case and the likelihood of unfair prejudice being visited upon the parties.

Here, the very heart of Bryant's case is involved, with respect to the then clandestine, but now openly admitted, conspiring activities of all of the Appellees/Defendants to file multiple lawsuits solely and strictly designed to not only retaliate against Bryant, but to "shut him up."  That conspiracy was admittedly an association, which they named, the "Concerned Guardsmen of Mississippi."  The District Court found that an overt retaliatory motive existed for the filing of the multiple lawsuits by the Appellees/Defendants. [Docket No. 322, page 11.] Yet, the District Court's analysis, however, is manifestly

incorrect, inasmuch as its decision fails to consider the factors set forth above.

**Succinctly, such retaliatory filings of *multiple* lawsuits against Mr. Bryant, either that were never pursued or that no reasonable litigant could objectively believe were well-based in fact or in law, is *not* protected speech.**

Inasmuch as no case from the Fifth Circuit has addressed or even considered the law under *BE & K* or any factual settings comparable to the case at hand, this Court should copiously review the District Court's dismissal of Bryant's claims and reverse its decision. In accordance with Rule 5 of the *Federal Rules of Appellate Procedure* and 28 U. S. C. Section 1292, this Court's decision involves a controlling question of law, upon which there exists a substantial ground for a difference of opinion. Especially there exist no decisions from the Fifth Circuit involving interpretation of *BE & K*, since decisions of the appellate courts for the District of Columbia[3], the Ninth Circuit[4] and the Eleventh Circuit[5] drastically differ from the District Court's June 17, 2008, decision.

<u>Misapplication of *BE & K*</u>

---

[3] *Can-Am Plumbing v. NLRB*, 321 F. 3d 145 (D. C. Cir. 2003).

[4] *Kearney v. Foley & Lardner*, – F. 3d – (9th Cir. 2009)(decided May 12, 2009; Case no. 07-55566).

[5] *NLRB v. USPS*, – F. 3d – (11th Cir. 2008)(Case No. 07-14951; decided May 5, 2008).

At the heart of the Dsitrict Court's June 17, 2008, decision is its vacating

of its ruling from July 17, 2007. There, the same Court, applying *Bill

Johnson's*, made the following objective finding regarding one of the multiple

lawsuits filed by the Appellees/Defendants:

> Defendants' argument ... would have this court assume that defendants' slander suit against Bryant was meritorious, ***or at least that they had a reasonable basis for bringing the action.*** Yet, they merely declare that they "understandably were upset that Bryant made slanderous and disparaging statements about them," and argue that they could reasonably have thought they had a viable cause of action notwithstanding that Bryant did not identify them by name .... ***However, a party cannot succeed on a claim for slander merely because he was upset*** .... [Emphasis added.]

[Docket No. 235, page 19-20. R. 2253] The District Court then goes on to more

thoroughly make just such a ruling based on the "objective baseless" standard,

as is set forth in *BE & K*, although the District Court merely failed to cite the

decision.[6]

Most important and manifestly in error in the Court's decision of June 17,

2008 is the failure to consider the fact that ***no speech made in a lawsuit is

protected, when the suit is filed in violation of federal law.***

---

[6] As further argued herein, the District Court's June 17, 2008 decision incorrectly placed the burden of showing that the Appellees'/Defendants' multiple cases were "objectively baseless" on Mr. Bryant; whereas, in the Court's July 17, 2007, decision, the burden was correctly placed on the Appellees/Defendants.

In *Bill Johnson's*, the Supreme Court ***conspicuously*** indicated that that case did not involve either (a) a case in which the claims are preempted by federal law or (b) ***a case that has an objective that is illegal under federal law***. 461 U. S. at 737 n. 5, 103 S. Ct. at 2167 n. 5.  *See also NLRB v. Nash-Finch Co.*, 404 U. S. 138, 144, 92 S. Ct. 373, 377, L. Ed. 2d 328 (1971).  The Appellees/Defendants **admit** that they filed all of the lawsuits (not just the slander suit) in retaliation against Bryant and in order to "shut him up."  Such an admission violates the following federal law:

1.  *Military Whistleblower Protection Act*, 10 U.S.C. Section 1034.

2.  the *First Amendment* of the *United States Constitution*.

3.  42 U. S. C. Section 1985.

4.  42 U. S. C. Section 1986.

In essence, according to *Bill Johnson's*, if the ***objective*** of the lawsuits is to violate federal law, then it is ***not*** protected.  The manifest error of the District Court's decision is that it did not consider the plain exemption expressed by the Supreme Court in *Bill Johnson's* and the plain fact that ***nothing*** in its decision in *BE & K* changes or other affects this expressed exemption stated in *Bill Johnson's*.

This distinction was precisely noted by the Court of Appeal for the District of Columbia in *Can-Am Plumbing v. NLRB*, 321 F. 3d 145, 151 (D. C. Cir. 2003).[7]  Just as lawsuits that are preempted by the *National Labor Relations Act* are not controlled by *Bill Johnson's*, so too are lawsuits that are ***filed with the objective of violating federal law***.  Indeed, in both *Bill Johnson's* and in *Can-Am Plumbing*, it was conceded that such lawsuits fell under the expressed exception and thus outside the protection of the *First Amendment*. *See Can-Am*, 321 F. 3d at 151.  *BE & K* affected none of this exception.

Other reported cases from a federal courts of appeals involving the interpretation of *BE & K* are *NLRB v. USPS*, – F. 3d – (11th Cir. 2008)(Case No. 07-14951; decided May 5, 2008) and *Kearney v. Foley & Lardner*, – F. 3d – (9th Cir. 2009( decided May 12, 2009; Case No. 07-55566).[8]  In *USPS*, no lawsuit was even filed.  Instead, suit was merely threatened; yet, the Eleventh Circuit found such retaliatory conduct to be in violation of federal law.  The court called such conduct "illegal speech."  Such speech is therefore **not** protected by

---

[7] Nowhere in the District Court's decision of June 17, 2008, is this decision by the District of Columbia Circuit even addressed.

[8] The only other decision by a federal court of appeals citing *BE & K* is *Molski v. Evergreen Dynasty Corp.*, 521 F. 3d 1215 (9th Cir. 2008); however, the citation is in the court's dissent, and the case strictly concerned pre-filing orders or injunctions, regarding multiple filings of frivolous lawsuits by a party.

the *First Amendment*. *USPS*, slip opinion at pages 5-6, *citing NLRB v. Gissel Packing Co.*, 395 U. S. 575, 618, 89 S. Ct. 1918, 1942 (1969). In *Kearney*, the Ninth Circuit found that discovery and spoliation violations by a school district and its counsel in an eminent domain proceeding did not shield them from liability in a subsequent lawsuit by the landowner, as being protected speech, and it find the "sham" exception applicable.

Additionally, a close reading of *Bill Johnson's*, *BE & K*, *Can-Am*, *Kearney* and *USPS* indicates that the burden of showing that the lawsuits were not "objectively baseless" fell on defendant. In instances, when the employers are in a similar litigation position as the Appellees/Defendants in this action, they had the burden of such proof, not Mr. Bryant. Throughout the District Court's Memorandum Opinion and Order of June 17, 2008, this burden was erroneously placed on Bryant. Hence, manifest error exists.

The decisions in *Can-Am, Kearney* and *USPS* directly conflict with the decision made by the District Court on June 17, 2008. There being no decisions by the Fifth Circuit concerning interpretation of *BE & K*, this Court should either vacate the decision and reverse for further proceedings not inconsistent with the above law.

<u>Not Just One Lawsuit, but **Multiple** Lawsuits</u>

48

As noted, the defamation case against Bryant has been dismissed, and now all appeals have been exhausted. As the District Court had already found in its ruling on July 17, 2007, the Appellees/Defendants *objectively* had no basis for filing the suit. However, the principal manifest error from the District Court's June 17, 2008 ruling, regarding the *Chalk, et al. v. Bryant* defamation case, is the declaration that, even though the Appellees/Defendants neither sought nor stated incurred damages, the slander case was nevertheless not "objectively baseless." Respectfully, what reasonable complainant could or would file a lawsuit and not have sustained loss or damages?

Indeed, it has been recognized that, as an element for a cause of action for slander, Mississippi defamation law requires that a harm be incurred. *Speed v. Scott*, 787 So. 2d 626, 631 (Miss. 2001). *See also, Franklin v. Thompson*, 722 So. 2d 688, 692 (Miss. 1998).

More than just this defamation case, these Appllees/Defendants also filed other cases that **were not even pursued.** For instance, consider the following cases filed in this very District Court:

1. *Malta v. Riverstates Publishing and Bryant*; Civil Action No. 4:06cv11-TSL: dismissed by order entered on April 13, 2007, for failure to prosecute;

2. *Wilson v. CNH Investments and Bryant*; Civil Action 4:06cv12-TSL: dismissed by Agreed Order entered on September 21, 2006, with no discovery or other prosecution of the case being made; and

3. *Chalk v. Bryant*; Civil Action No. 4:06cv13-TSL:  dismissed by Agreed Order entered on September 22, 2006, with no discovery or other prosecution of the case being made.

In *Pierce v. Bryant*, Civil Action No. 4:06cv6-TSL: the case was remanded to state court on May 31, 2006; yet, no further prosecution of the case has been made, other than Bryant obtaining an order compelling discovery on June 23, 2008.  Malta also filed suit against Bryant in Lauderdale Circuit Court, and he has failed to prosecute that action, as well. *See Malta v. Bryant, et al.*, Case No. 04cv262B.

What reasonable complainants then would file multiple lawsuits, not prosecute them, and then proclaim that the suits were not "objectively baseless?"  Yet, these Appellees/Defendants filed these lawsuits for the stated purpose of harassing Bryant to "shut him up."  Is that not sham litigation?

Clearly, this Court must be mindful of the facts that *Bill Johnson's*, *BE &K*, *Can-Am*, *Kearney* and *USPS*, all involved only **one** (1) lawsuit, not multiple lawsuits by the same defendants against a single person, like Mr.

Bryant.  As a mere result of their filing and serving him with process, Bryant had to hire counsel, spend time and resources defending the claims, endure even the inconvenience of such cases, have anxiety regarding multiple lawsuits being filed against him, have concern for himself and his family as to whether he can afford and sustain himself against such attacks, and ultimately go through the court proceedings to vindicate himself.  If, as the Appellees/Defendants have stated, their purpose was to retaliate against Bryant and "shut him up," they have apparently accomplished that result. **However, such a result does not establish that the Appellees/Defendants had an objective basis in filing these lawsuits.**  Is such conduct by them not an abuse of process?

A review of all cases applying *BE & K* only concerns application of its standard with respect to but a single case, not multiple cases, such as here.  At what point then does such filings become "objectively baseless?"

Mr. Bryant would respectfully submit that this honorable court should reverse the errors of the June 17, 2008 Memorandum Opinion and Order and grant him a trial on the merits.

**PENDENT STATE LAW CLAIMS**

INTENTIONAL AND NEGLIGENT INFLICTION OF MENTAL DISTRESS

Succinctly, the Appellees/Defendants do not challenge Bryant's claim of such mental and emotional distress, other than to badly argue that he has not suffered any such distress, albeit that which exists in his own mind.  Both the deposition testimony of Bryant and that of his physician, Dr. Michael Nanney thoroughly document the stress visited upon Bryant, because of the actions of the Appellees/Defendants.  In fact, as a result of Pierce's malicious letter writing to the FAA and the subsequent investigation of Bryant, he was placed under the tremendous stress and threat of losing his job with FedEx.

These actions are just the kind of extreme and outrageous conduct that goes "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Croft v. Grand Casino Tunica, Inc.*, 910 So. 2d 66, 75 (Miss. App. 2005).  No good faith can be attributable to Pierce in writing the letter to the FAA, inasmuch as the very physician he referenced, demanded that the letter be withdrawn.

Therefore, the overwhelming evidence prevents entry of summary judgment on these claims.

## DEFAMATORY/FALSE LIGHT LIABILITY

Once again, the Appellees/Defendants wholly ignore this cause of action stated in Bryant's Amended Complaint.  The claim is squarely based upon the

willful and malicious activity of Pierce in writing his letter to the FAA, that Bryant was mentally unfit to fly and could cause harm to others. Pierce based his letter on information he specifically received from Malta. Yet, the information was patently false, as established by Dr. Edward Carruth, to whom the issue of Bryant's mental status had been attributed. Carruth even demanded a retraction, and to this day Pierce has failed to do so.

The most factually similar case is found in *McWhorter v. Barre*, 132 S. W. 2d 354 (Tenn. App. 2003)(applying law similar to Mississippi). *See also Stephens v. Kemco Foods, Inc.*, 928 So. 2d 226, 233 (Miss. App. 2006)(reversing trial court's grant of directed verdict) and *Armistead v. Minor*, 815 So. 2d 1189, 1193 (Miss. 2002). In *McWhorter*, the defendant was a physician who sent a similarly scandalous letter to the FAA regarding the mental and physical status of the plaintiff to fly and did so to annoy, harass and disgrace the plaintiff's reputation as a pilot, upon which his livelihood rested. *McWhorter*, at 364-365.

Stronger evidence exists here, inasmuch as Pierce is not a physician, he based it on words spoken by his co-defendant, Malta, and he even refused to retract the letter, after demand was made by Dr. Edward Carruth. The Appellees/Defendants here simply argue that, well, Bryant never lost his job

53

with FedEx or his pilot license; yet, such a blind conclusion misses the damage visited upon Bryant's reputation as a pilot and the embarrassment and tarnished reputation it caused him. Indeed, as Bryant testified, he was subjected to multiple "check outs" by FedEx, until the matter eventually was resolved in his favor. The harm is nevertheless real.

In *McWhorter*, the same such defense was rejected by the Court, and the jury's verdict for compensatory and punitive damages was upheld. *Id.* at 367.

When Pierce's defamatory and libelous letter to the FAA is coupled with the multitude of other letters written and sent by the "Concerned Guardsmen of Mississippi," all of the Appellees/Defendants are liable for the same specific and defamatory conduct in which they sought to economically harm Bryant. Beyond question, the stress attributable to this wrongful acts caused the aforesaid enumerated damages for which Bryant is entitled to recovery.

Summary judgment was therefore inappropriate on this claim.

## INTERFERENCE WITH BRYANT'S EMPLOYMENT

Candidly, the Appellees/Defendants do not challenge whether Bryant meets the state common law requirements of this claim; instead, their only argument is that Pierce, and apparently all of the others, were justified in writing such letters to interfere with Bryant's job at FedEx and his pilot license.

*See Par Industries, Inc. v. Target Container Co.*, 708 So. 2d 44, 48 (Miss. 1988); *Cenac v. Murry*, 609 So. 2d 1257, 1268-69 (Miss. 1992).  Thus, their sole defenses are (a) good faith for having sought Bryant's loss of his job and his pilot license and (b) that Bryant did not lose his job.

These defenses lose merit when Pierce patently ignored Dr. Carruth's demand that his letter be retracted.  Moreover, Dr. Carruth pointed indicated that the information contained in the letter was false. As set forth above, the damage done to Bryant in his employment is quantified as a loss of some $60,000 in not being able to train to flight of wide-bodied jets, as well as the resulting scrutiny, embarrassment and annoyance he endured because of their efforts to rob him of his livelihood.  Only through his talent as a gifted pilot was Bryant able to retain his job at FedEx and keep his pilot's license.

Summary judgment was likewise unwarranted on this claim.

## OTHER STATE PENDENT LAW CLAIMS

In his Amended Complaint, Bryant has also illustrated causes of action for the assault and battery visited upon him by Defendants Temple and Wilks. These actions in and of themselves are not challenged; yet, the District Court dismissed the claims. Instead, their argument is that they occurred more than a year before the filing of this action.  Yet, their concerted activities, through

their "Concerned Guardsmen of Mississippi" and the continued threats, harassment and intimidation are established above, such that the Appellees'/Defendants' conduct is continuing, even including the break-in of Bryant truck in Memphis even since this civil action was filed.

Bryant's claims of damage to his and his family's personal property, including the vandalism to his wife's and son's vehicle, are not refuted. The extreme hatred of the Appellees/Defendants toward Bryant and even their establishment of an organization to attack him, brings such civil conspiracy into the fold for which Bryant is entitled to recovery.

## CONCLUSION

Based on the above and foregoing law and application of such law to the underlying facts, reversal of the District Court's decisions is mandated, with instruction that trial proceed against all of the Appellees/Defendants, in accordance with this Court determination. To not allow such remedial proceedings grants permission by persons and agencies falsely cloaking themselves in military garb to wage a "counter offensive" against an honor-bound soldier who simply reported corruption and brought public scrutiny to those who refused to abide the law. Mr. Bryant is entitled to his day in court.

RESPECTFULLY SUBMITTED, this the _____ day of May, 2009.

Joe H. Bryant, Jr., Appellant

By:_____
Paul A. Koerber and Wayne E. Ferrell
His Attorneys

## <u>CERTIFICATE OF SERVICE</u>

I, Paul A. Koerber, certify that, on May 14, 2009, a paper copy and an electronic (compact disk) copy of the original brief for appellant, a copy of the original record excerpts, and the official record in this case, consisting of five (5) volume(s) of the pleadings, no volumes of transcript, no volumes of supplemental records, and no envelope(s) of exhibits, were served upon the following counsel:

Emerson Barney Robinson, Esq.
Butler Snow O'Mara Stevens & Cannada, P.C.
P. O. Box 22567
Jackson, Mississippi   39225-2567

Jay Max Kilpatrick, Esq.
Robert L. Wells, Esq.
Young Williams Henderson & Fuselier
P. O. Box 23059
Jackson, Mississippi   39225-3059

M. Mark Majors, Esq.
Joint Staff Judge Advocate
Mississippi National Guard
P. O. Box 5027
Jackson, Mississippi   39296-5027

_____
Paul A. Koerber

58

CERTIFICATE OF COMPLIANCE

Pursuant to 5TH CIR. R. 32.2 and .3, undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7).

1.    EXCLUSIVE OF THE EXEMPTED  PORTIONS IN 5TH CIR. R. 32.2, THE BRIEF CONTAINS  13,201 words printed in a proportionally spaced typeface.

2. THE BRIEF HAS BEEN PREPARED in proportionally spaced typeface using Corel WordPerfect 12 software for Windows XP in Times New Roman 14 point font in text and Times New Roman 12 point font in footnotes

3.    The undersigned understands that a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), may result in the Court's striking this brief and imposing sanctions against the person signing the brief.  The undersigned has likewise filed simultaneous with this brief, his motion for leave to file a brief in excess of thirty (30) pages, due to the multiple rulings of the District Court.

_____

Paul A. Koerber

59