# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

### No. 09-60182

JOE H. BRYANT, JR.
     **Plaintiff/Appellant/Cross-Appellee**

v.

MILITARY DEPARTMENT OF THE STATE OF MISSISSIPPI,
BY AND THROUGH THE MISSISSIPPI AIR NATIONAL GUARD,
     **Defendant/Appellee/Cross-Appellant**

and

FRANKLIN E. CHALK, FREDERICK D. FEINSTEIN, ROY A. GRAHAM, BILLY JOE GRESSETT, DONALD E. JONES, LANGOFRD L. KNIGHT, F. GREGORY MALTA, WILLIAM F. PARTEN, ROBERT E. PIERCE, ROGER E. SHIRLEY, CHARLES F. STEED, AARON K. WILSON and THOMAS TEMPLE; and JOHN DOES 1-20,
     **Defendants/Appellees**

---

Appeal from the United States District Court; Southern District of Mississippi, Jackson Division; No. 3:05cv179-TSL-JCS

---

**BRIEF OF APPELLEE/CROSS-APPELLANT**
**MILITARY DEPARTMENT OF THE STATE OF MISSISSIPPI, BY AND THROUGH THE MISSISSIPPI AIR NATIONAL GUARD**

---

E. Barney Robinson III (MSB #9432)
LTC, JA, MSARNG
Deputy Staff Judge Advocate
Joint Force Headquarters
MISSISSIPPI NATIONAL GUARD
Post Office Box 22567
Regions Plaza, Ste. 1700
210 East Capitol Street (39201)
Jackson, MS 39225-2567
(P) (601) 985-4525
(F) (601) 985-4500
(E) barney.robinson@butlersnow.com

JUDGE ADVOCATE COUNSEL FOR APPELLEE/CROSS-APPELLANT
MISSISSIPPI NATIONAL GUARD

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualifications or recusal.

1. **Joe H. Bryant, Jr.** – Appellant/Cross-Appellee/Plaintiff.

2. **Paul A. Koerber, Koerber Law Firm, PLLC** – counsel for Joe H. Bryant, Jr., Appellant/Cross-Appellee/Plaintiff.

3. **Wayne E. Ferrell Jr.** – counsel for Joe H. Bryant, Jr., Appellant/Cross-Appellee/Plaintiff.

4. **Military Department of the State of Mississippi, by and through the Mississippi National Guard** – Appellee/Cross-Appellant/Defendant.

5. **E. Barney Robinson III, Deputy Staff Judge Advocate, Joint Force Headquarters, Mississippi National Guard** – counsel for Military Department of the State of Mississippi, by and through the Mississippi National Guard – Appellee/Cross-Appellant/Defendant.

6. **Butler, Snow, O'Mara, Stevens & Cannada, PLLC** – civilian law firm of E. Barney Robinson III,[1] Deputy Staff Judge Advocate, Joint Force Headquarters, Mississippi National Guard – counsel for Military Department of the State of Mississippi, by and through the Mississippi National Guard – Appellee/Cross-Appellant/Defendant.

7. **Franklin E. Chalk** – Appellee/Defendant.

8. **Frederick D. Feinstein** – Appellee/Defendant.

9. **Roy A. Graham** – Appellee/Defendant.

10. **Billy Joe Gressett** – Appellee/Defendant.

---

[1] LTC Robinson appears herein in his military capacity as Judge Advocate counsel for the Guard. He does not appear herein as a member of Butler, Snow, O'Mara, Stevens & Cannada, PLLC, his civilian law firm. Nonetheless, the Guard lists Butler, Snow, O'Mara, Stevens & Cannada, PLLC in this Certificate out of abundance of caution and in the interest of full disclosure.

11. **Donald E. Jones** – Appellee/Defendant.

12. **Langford L. Knight** – Appellee/Defendant.

13. **F. Gregory Malta** – Appellee/Defendant.

14. **William F. Parten** – Appellee/Defendant.

15. **Robert E. Pierce** – Appellee/Defendant.

16. **Roger E. Shirley** – Appellee/Defendant.

17. **Charles F. Steed** – Appellee/Defendant.

18. **Aaron K. Wilson** – Appellee/Defendant.

19. **Thomas Temple** – Appellee/Defendant.

20. **Leslie Wilkes** – Appellee/Defendant.

21. **Jay Max Kilpatrick, Young, Williams, Henderson & Fuselier, P.A.** – counsel for Appellees/Defendants Franklin E. Chalk, Frederick D. Feinstein, Roy A. Graham, Billy Joe Gressett, Donald E. Jones, Langford L. Knight, William F. Parten, Robert E. Pierce, Roger E. Shirley, Charles F. Steed, Aaron K. Wilson, Leslie Wilkes and Thomas Temple – Appellees/Defendants.

22. **Robert L. Wells, Young, Williams, Henderson & Fuselier, P.A.** – counsel for Appellees/Defendants Franklin E. Chalk, Frederick D. Feinstein, Roy A.Graham, Billy Joe Gressett, Donald E. Jones, Langford L. Knight, William F. Parten, Robert E. Pierce, Roger E. Shirley, Charles F. Steed, Aaron K. Wilson Leslie Wilkes and Thomas Temple – Appellees/Defendants.

MISSISSIPPI NATIONAL GUARD

_____
E. Barney Robinson III (MSB #09432)
LTC, JA, MSARNG
Deputy Staff Judge Advocate

ii

OF COUNSEL:

Joint Force Headquarters
Office of the Staff Judge Advocate
MISSISSIPPI NATIONAL GUARD
Post Office Box 22567
Regions Plaza, Ste. 1700
210 East Capitol Street (39201)
Jackson, MS 39225-2567
(P) (601) 985-4525
(F) (601) 985-4500
(E) barney.robinson@butlersnow.com

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Fifth Circuit Rule 28.2.4, Appellee/Cross-Appellant Military Department of the State of Mississippi, by and through the Mississippi National Guard (the "Guard"),[2] submits that oral argument is not necessary in this appeal. The trial court's dismissal of the claims against the Guard under *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Eleventh Amendment and *Feres v. United States*, 340 U.S. 135, 146 (1950), was based on longstanding and clearly defined precedent.  It further should have resulted in the imposition of sanctions against COL Bryant and his counsel.  The trial court's reluctance to do so, is a clear abuse of discretion and should be reversed. The Guard respectfully submits that this appeal does not involve novel or difficult issues necessitating oral argument.

---

[2] As explained below in the Statement of Facts, there is no such single entity as "Military Department of the State of Mississippi, by and through the Mississippi National Guard."  Rather, the Mississippi Military Department and the Mississippi National Guard are two distict entitities. The Guard believes that COL Bryant's Complaint was intended to be directed at it, or its component, the Mississippi Air National Guard.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PERSONS ...................................................i

STATEMENT REGARDING ORAL ARGUMENT ....................................iv

TABLE OF CONTENTS...................................................................................v

TABLE OF AUTHORITIES ........................................................................ viii

JURISDICTIONAL STATEMENT ................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ...........................2

STATEMENT OF THE CASE.........................................................................3

STATEMENT OF FACTS ...............................................................................9

       A.    COL Bryant's Complaint and the Guard's Sanctions Motion ..................................................................................9

       B.    The Status of the Guard .................................................12

SUMMARY OF ARGUMENT ......................................................................16

STANDARD OF REVIEW ...........................................................................18

       A.    Issues on COL Bryant's Appeal ...................................18

       B.    Issues on the Guard's Cross-Appeal..............................19

ARGUMENT OF APPELLEE ......................................................................20

     I.    THE DECISION BELOW SHOULD BE AFFIRMED BECAUSE THE GUARD IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER 42 U.S.C. §§ 1983, 1985 or 1986..............20

       A.    COL Bryant Has Waived This Issue Both By Failing to Address It Below and Failing to Address It in His Appeal ..........................................................................20

       B.    According to COL Bryant – and the Facts – the Guard is an "Admitted State Agency" and Therefore it Cannot Be a "Person" Under *Will*.............................21

     II.    THE DECISION BELOW SHOULD BE AFFIRMED BECAUSE ALL COL BRYANT'S CLAIMS AGAINST THE GUARD ARE BARRED BY THE ELEVENTH AMENDMENT ..................................................................24

       A.    COL Bryant Has Waived This Issue By Failing to Address it in This Appeal .......................................24

B.     Under *Perpich*, the Guard is a State Entity and it is Therefore Entitled to Eleventh Amendment Immunity............24

C.     The Mississippi Whistleblower Protection Act Does Not Waive the Guard's Eleventh Amendment Immunity ..........................................................................................27

D.     *Lipscomb* Does Not Alter the Eleventh Amendment Analysis.........................................................................................28

III.   *FERES* BARS ALL BRYANT'S CLAIMS AGAINST THE GUARD.........................................................................................30

A.     The Rationale of *Feres*.............................................................30

B.     The Two Alternative *Feres* Tests ............................................35

C.     All COL Bryant's Alleged Injuries are Incident to His Service......................................................................................35

D.     All COL Bryant's Alleged Injuries Arise Out of His Service......................................................................................42

E.     Judicial Estoppel Prohibits COL Bryant From Denying the *Feres*-Bar.................................................................45

IV.   *MINDES* AND *MEISTER* BAR ALL BRYANT'S CLAIMS AGAINST THE GUARD ..................................................................48

V.   TO THE EXTENT ANY OF BRYANT'S CLAIMS AGAINST DEFENDANTS ARE NOT *FERES* AND/OR *MINDES* BARRED – BRYANT HAS ADMITTED THAT THE GUARD HAS NO VICARIOUS LIABILITY FOR THOSE CLAIMS ..........................................................................49

VI.   THE DISMISSAL OF COL BRYANT'S MISSISSIPPI WHISTLEBLOWER PROTECTION ACT CLAIM SHOULD BE AFFIRMED ................................................................55

ARGUMENT OF CROSS-APPELLANT...........................................................58

I.   COL BRYANT AND HIS COUNSEL WERE WELL FAMILIAR WITH *FERES* DOCTRINE BEFORE SUING THE GUARD ON NONJUSTICIABLE CLAIMS AND FURTHER KNEW THE GUARD WAS A STATE ENTITY – YET SUED IT IN FEDERAL COURT FOR DAMAGES NONETHELESS..........................................58

vi

A.    COL Bryant's Repeated Invocation of *Feres* Prior to Suing the Guard ..........................................................58

B.    COL Bryant and His Counsel Knew the Guard Was a State Entity, Both Before and After Filing This Suit................60

II.    THE GUARD MADE ITS LEGAL POSITION CLEAR BY MOTION TO DISMISS WELL BEFORE SEEKING SANCTIONS..................................................................................61

III.    COL BRYANT'S CONTINUED PROSECUTION OF HIS CLAIMS AGAINST THE GUARD AFTER NOTICE OF THE GUARD'S DEFENSES AND IMMUNITY JUSTIFIES SANCTIONS...................................................................61

CONCLUSION ........................................................................................64

CERTIFICATE OF SERVICE ................................................................68

APPENDIX A ..........................................................................................70

CERTIFICATE OF COMPLIANCE.......................................................71

## **TABLE OF AUTHORITIES**

**Cases**

*Adams v. Cinemark USA, Inc.*, 831 So.2d 1156 (Miss. 2002)................................53

*AG Acceptance Corp. v. Veigel*, 564 F.3d 695 (5th Cir. 2009) .........................21, 24

*Atascadero State Hosp. v. Scanlon*, 473 U.S. 234 (1985) .......................................27

*Audler v. CBC Innovis Inc.*, 519 F.3d 239 (5th Cir. 2008)................................16, 21

*Baulch v. Johns,* 70 F.3d 813 (5th Cir.1995).........................................................63

*Bennett v. Pippin*, 74 F.3d 578 (5th Cir. 1996)........................................................8

*Bethesda Lutheran Homes and Services, Inc. v. Born*, 238 F.3d
    853 (7th Cir. 2001).........................................................................................62

*Bryant v. Military Dept. of State of Miss. ex rel. Miss. Air Nat'l
    Guard*, 381 F.Supp.2d 586 (S.D. Miss. 2005) ....................................................5, 35

*Chappell v. Wallace*, 462 U.S. 296 (1983) .........................................................31, 32

*Clark v. U.S.*, 322 F.3d 1358 (Fed. Cir. 2003).............................................14, 22, 29

*Cohen v. Bane*, 853 F.Supp. 620 (E.D. N.Y. 1994)...................................................62

*College Savings Bank v. Florida Prepaid Postsecondary Educ.
    Expense Bd.*,  527 U.S. 666 (1999) .....................................................................27

*Costner v. Oklahoma Army Nat'l Guard*, 833 F.2d 905 (10th Cir.
    1987)..............................................................................................................32, 33

*Day v. Massachusetts Air Nat'l Guard*, 167 F.3d 678 (1st Cir. 1999) ...................27

*Doctor's Hosp. of Jefferson, Inc. v. S.E. Medical Alliance,* 123 F.3d
    301 (5th Cir. 1997).........................................................................................45

*Doe v. MySpace, Inc.*, 528 F.3d 413 (5th Cir. 2008) ...............................................18

*Duncan v. Oklahoma Nat'l Guard,* No. 91-1146-K,   1991 WL
    126737 (D. Kan. 1991)....................................................................................26

*Edwards v. General Motors Corp.*, 153 F.3d 242 (5th Cir. 1998) .........................64

*Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724 (5th Cir.
    2009)..............................................................................................................18

*F. Gregory Malta v. Joe H. Bryant, Jr.*; MSSD, East. Div.; No.
    4:05cv13-TSL-AGN ......................................................................................46, 59

*Feres v. United States*, 340 U.S. 135 (1950)  5, 20, 30, 42, 43, 48, 50, 53, 58, 61, 65

*Fleming & Associates v. Newby & Tittle*, 529 F.3d 631 (5th Cir. 2008)..................19

*Franklin E. Chalk, et. al. v. David J. Bertholf and Joe H. Bryant*;
MSSD, East. Div.; No. 4:03cv267-TSL-AGN ...............................................45, 58

*Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d
575 (5th Cir. 2002)..................................................................................19

*Gant v. U.S.*, 63 Fed. Cl. 311 (Fed. Cl. 2004)....................................................17, 56

*Gilligan v. Morgan*, 413 U.S. 1 (1973)...............................................................65

*Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391 (5th Cir. 2003) ......................47

*Hassenfratz v. Garner*, 911 F. Supp. 235 (S.D. Miss. 1995)................................32

*Hefley v. Textron, Inc.*, 713 F.2d 1487 (10th Cir. 1983) ...............................22, 26

*Hefrich v. Pennsylvania Dept. of Military Affairs*, 660 F.2d 88 (3rd
Cir. 1981) .............................................................................................26

*Henry v. Textron, Inc.*, 577 F.2d 1163 (4th Cir. 1978)........................................26

*Hernandez v. Joliet Police Dept.*, 197 F.3d 256 (7th Cir. 1999) ...........................62

*Hidahl v. Gilpin County Dept. of Social Services*, 699 F.Supp.
846 (D.Colo. 1988) ...............................................................................63

*Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814 (5th Cir. 2002)...................47

*Intrioni v. South Carolina Nat'l Guard*, 828 F. Supp. 391 (D. S.C.
1993)...............................................................................................23, 26

*Jackson v. Brigle*, 17 F.3d 280 (9th Cir.)..........................................................43

*Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765 (7th Cir. 1993) ..................32

*Lawrence v. Hawaii Air Nat'l Guard*, 126 Fed.Appx. 835, 2005 WL
658934 (9th Cir. 2005)...........................................................................26

*Laxey v. Louisiana Bd. of Trustees*, 22 F.3d 621 (5th Cir. 1994)..........................23

*Lipscomb v. Federal Labor Relations Authority*, 333 F.3d 611 (5th
Cir. 2003) ........................................................................................28, 29

*Lovell v. Heng*, 890 F.2d 63 (8th Cir. 1989).................................................32, 33

*Martinez v. Texas Department of Criminal Justice*, 300 F.3d 567 (5th
Cir. 2002) .............................................................................................27

*Maryland ex rel. Levin v. United States*, 381 U.S. 41 (1965)...............................25

*Meadows v. State of Indiana*, 854 F.2d 1068 (7th Cir. 1988) ...............................26

*Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332 (5th Cir. 2000)................................................................ 2, 17, 19, 32, 48, 49, 50

*Miles v. State of Ga. Dept. of Revenue,*143 F.R.D. 302 (S.D. Ga. 1992)..................................................................................63

*Miller v. U.S.*, 42 F.3d 297 (5th Cir. 1995).................................................42, 43

*Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) .....................................50, 61

*NeSmith v. Fulton*, 615 F.2d 196 (5th Cir. 1980) .................................15, 32, 33

*Newth v. Adjutant General's Dep't of Tex.*, 883 S.W.2d 356 (Tex. App. 1994)....................................................................................34, 35

*Orloff v. Willoughby*, 345 U.S. 83 (1953)..................................................32

*Parker v. United States*, 611 F.2d 1007 (5th Cir. 1980)..............................35, 42

*Perpich v. Department of Defense*, 496 U.S. 334 (U.S. 1990)....... 12, 13, 14, 16, 25

*Persons v. United States*, 925 F.2d 292 (9th Cir.1991) ....................................44

*Petr v. Delaware Nat'l Guard*, Case No. 94-327-SLR, 1995 WL 579634 (D. Del. Sept. 28 1995) .........................................................22

*Presley v. Jackson Municipal Airport Authority*, 94 F. Supp. 2d 755 (S.D. Miss. 2000) ...................................................................32

*Quern v. Jordan*, 440 U.S. 332 (1979) ...................................................25

*Richardson-Longmire v. Kansas, Adjutant General*, No. Civ.A.97-2679, 1997 WL 156168 (D. Kan. March 8, 1999)..............................26

*Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922 (5th Cir. 2008)....................................................................................21, 24

*Schoemer v. U.S.*, 59 F.3d 26 (5th Cir. 1995).............................................32

*Sheridan v. United States,* 487 U.S. 392 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) .......................................................................53, 54, 55

*Shocklee v. Massachusetts Mut. Life Ins. Co.*, 369 F.3d 437 (5th Cir. 2004)....................................................................................45

*Southwestern Bell Telephone Co. v. City of El Paso*, 243 F.3d 936 (5th Cir. 2001) .........................................................................25

*Stanley v. Central Intelligence Agency*, 639 F.2d 1146 (5th Cir. 1981)..................41

*Stauber v. Cline*, 837 F.2d 395 (9th Cir.) ..................................................43

*Thomas Temple, et. al. v. Joe H. Bryant, Jr.*; MSSD, East. Div.; No. 4:05cv12-TSL-AGN ........................................................................46, 59

*Tiggett v. New Jersey Nat'l Guard*, Civ.A.No. 90-2265, 1990 WL 181474 (E.D. Penn. Nov. 20, 1990)........................................................26

*Travelers Ins. Co. v. St. Jude Hosp., Inc.,* 38 F.3d 1414 (5th Cir.1994) ................63

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371 (5th Cir. 2009) ...............................................................................................19

*U.S. v. Stanley,* 483 U.S. 669 (1987) .......................................................31

*United States v. Hutchings*, 127 F.3d 1255 (10th Cir. 1997) .....................14, 23, 29

*Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289 (5th Cir. 2008)..............................................................................................29, 32, 33

*Walker v. City of Bogalusa*, 168 F.3d 237 (5th Cir. 1999) ......................................61

*Watson v. Arkansas Air Nat'l Guard*, 886 F.2d 1004 (8th Cir. 1989) ...............32, 33

*White v. Mississippi State Oil and Gas Bd.*, 650 F.2d 540 (5th Cir. 1981)..........................................................................................................15

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) ...................................................... iv, 2, 5, 16, 20, 21, 23, 30, 48, 61

*Wilson v. First Houston Investment Corp.*, 566 F.2d 1235 (5th Cir. 1978).............................................................................................................7

*Wood v. United States*, 968 F.2d 738 (8th Cir. 1992).......................................32, 33

**Statutes and Rules**

10 U.S.C. § 101 .................................................................................22, 26

10 U.S.C. § 1034 ......................................................................3, 5, 11, 39, 56

10 U.S.C. § 1040 .........................................................................................1

28 U.S.C. § 1291 ......................................................................................1, 9

28 U.S.C. § 1331 .........................................................................................1

28 U.S.C. § 1343 .........................................................................................1

28 U.S.C. § 1367 .........................................................................................1

28 U.S.C. § 1746........................................................................................18

28 U.S.C. § 1927 ..............................................................1, 3, 5, 9, 11, 63

28 U.S.C. § 2671........................................................................................52

28 U.S.C. § 2679 ...................................................................................52

32 U.S.C. § 109 ....................................................................................12

32 U.S.C. § 314 ....................................................................................15

42 U.S.C. § 1981 ...................................................................................33

42 U.S.C. § 1983 ..................................... 1, 2, 5, 11, 16, 20, 23, 33, 34, 35

42 U.S.C. § 1985 ......................................... 1, 2, 5, 11, 16, 20, 33, 34, 35

42 U.S.C. § 1986 ............................................... 1, 2, 5, 11, 16, 20, 23

42 U.S.C. § 1988 ...................................................................................33

Fed. R. App. P. 32(a)(7) ..........................................................................71

Fed. R. Civ. P. 1 ...................................................................................15

Fed. R. Civ. P. 4 .....................................................................................9

Fed. R. Civ. P. 11 ............................................................1, 3, 5, 9, 11, 61

Fed. R. Civ. P. 12(b)(1) .......................................................................3, 18

Fed. R. Civ. P. 12(b)(6) .......................................................................3, 18

Fed. R. Civ. P. 12(c) ...........................................................................3, 18

Fed. R. Civ. P. 54(b) .............................................................................1, 9

Fifth Cir. R. 32.2 ...................................................................................71

Fifth Cir. R. 32.3 ...................................................................................71

Miss. Code Ann. §§ 11-55-1 through 11-55-15 (1972) .......................................2, 63

Miss. Code Ann. § 25-9-171 (1972) ..............................................................22

Miss. Code Ann. §§ 25-9-171 through 25-9-177 (1972) ...................................11, 60

Miss. Code Ann. § 25-9-175 (1972) ..............................................................11

Miss. Code Ann. § 25-9-177 (1972) ..............................................................27

Miss. Code Ann. § 33-1-1 (1972) ..........................................................12, 13, 15

Miss. Code. Ann. § 33-3-3 (1972) .........................................................14, 15, 20

Miss. Code Ann. § 33-3-7 (1972) .................................................................15

Miss. Code Ann. § 33-3-11 (1972) ................................................................15

Miss. Code Ann. § 33-5-1 (1972) .................................................................12

Miss. Code Ann. § 33-7-1 (a) (1972) ..............................................................13

Miss. Code Ann. § 57-77-3 (1972) ........................................................................28

Miss. Const. Art. V, § 119 ..................................................................................12

**Other Authorities**

*Webster's Third New International Dictionary (Unabridged)* (1993).....................44

6 Wright & Miller, *Federal Practice and Procedure* § 1476 (1971) ........................7

## JURISDICTIONAL STATEMENT

Plaintiff/Appellant COL (Ret.)[3] Joe H. Bryant, Jr.'s original Complaint (RE2; R.40-65),[4] asserted claims under 10 U.S.C. § 1040 and 42 U.S.C. §§ 1983, 1985 & 1986.  Accordingly, the district court had jurisdiction pursuant to 28 U.S.C. §§ 1331 & 1343,  as well as supplemental jurisdiction over Bryant's Mississippi Whistleblower Protection Act claim, Miss. Code Ann. §§ 25-9-171 through 25-9-177 (1972), pursuant to 28 U.S.C. § 1367.

On January 15, 2009, the trial court, pursuant to Fed. R. Civ. P. 54(b), certified as final all orders previously dismissing claims in this Action.  (RE16; R.2944-46.)  On February 13, 2009, COL Bryant timely filed his Notice of Appeal, invoking this Court's jurisdiction under 28 U.S.C. § 1291.  (RE17; R.2947-49.) On February 18, 2009, the Guard timely filed its Notice of Cross-Appeal (RE18; R.2950-52), cross-appealing from the portions of August 26, 2005 "Corrected Memorandum Opinion and Order" denying the Guard's May 5, 2005 "Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act[5] Motion for Dismissal, Sanctions and Related Relief."

---

[3]    "COL    (Ret.)"    means    Retired    Colonel    in    military    usage. http://www.defenselink.mil/specials/insignias/officers.html#O6.    In the interest of space, the Guard will refer to COL (Ret.) Bryant herein as "COL Bryant."

[4] As used herein, "RE[numeral]" denotes the Guard's Record Excerpts at the referenced tab numeral.  "R.[numeral]" denotes Record at the referenced page or page range.  "Br.App." denotes COL Bryant's Brief of Appellant, at the referenced page number(s).

1

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

1.      Whether the district court's August 26, 2005 Order (RE12; R.518-32) holding that under *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Guard is not a "person" subject to liability under 42 U.S.C. §§ 1983, 1985 & 1986, should be affirmed.

2.      Whether the district court's August 26, 2005 Order (RE12; R.518-32) holding that the Guard enjoys Eleventh Amendment immunity against all COL Bryant's claims should be affirmed.

3.      Whether the district court's August 26, 2005 Order (RE12; R.518-32) holding  that all COL Bryant's claims against the Guard are nonjusticiable under *Feres v. United States*, 340 U.S. 135, 146 (1950), should be affirmed.

4.      Whether the district court's August 26, 2005 Order (RE12; R.518-32) holding that all COL Bryant's claims against the Guard are nonjusticiable should be affirmed on alternative grounds raised below but not addressed by the trial court, such as *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) and *Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 339 (5th Cir. 2000), including COL Bryant's failure to exhaust mandatory military administrative remedies.

---

[5] Miss. Code Ann. §§ 11-55-1 through 11-55-15 (1972).

2

5.     Whether the district court's August 26, 2005 Order (RE12; R.518-32) holding that Bryant's Military Whistleblower Act claim, 10 U.S.C. § 1034, fails to state a claim should be affirmed.

6.     On cross-appeal, whether the district court's August 26, 2005 Order (RE12; R.518-32) denying the Guard's Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act Motion for Dismissal, Sanctions and Related Relief against Plaintiff Colonel Joe H. Bryant, Jr. (RE5; R.215-44), should be reversed as an abuse of discretion and that portion of this case remanded for the determination of the amount of sanctions to be imposed on COL Bryant and his counsel.

## STATEMENT OF THE CASE

On March 17, 2005, COL Bryant filed his original Complaint against the Guard (RE2; R.40-65), and thirteen of its current or retired Guardsmen: COL Franklin E. Chalk; BG (ret.) Frederick D. Feinstein; CMSgt Roy A. Graham; CMSgt Bill Y Joe Gressett; COL Donald E. Jones; LtCol Langford L. Knight; LTC F. Gregory Malta; CMSgt William F. Parten; COL Robert E. Pierce; CMSgt Roger E. Shirley; SSgt Charles F. Steed; COL Aaron K. Wilson; and LtCol (ret.) Thomas Temple.

In lieu of an Answer, on April 12, 2005, the Guard filed its Fed. R. Civ. P. 12(b)(1), 12(b)(6), 12(c) and Eleventh Amendment Motion to Dismiss and for

Judgment on the Pleadings.  (RE3; R.95-102.)  That same day, on April 12, 2005, the Guard filed a Motion to Stay Discovery Pending Ruling on Motion to Dismiss. (R.139-45.)  On April 14, 2005, Defendant Thomas Temple filed a joinder in the Guard's motion.  (R.195-96.)   The next day, on April 15, Defendants COL Franklin E. Chalk; BG (ret.) Frederick D. Feinstein; CMSgt Roy A. Graham; CMSgt Bill Y Joe Gressett; COL Donald E. Jones; LtCol Langford L. Knight; LTC F. Gregory Malta; CMSgt William F. Parten; CMSgt Roger E. Shirley; SSgt Charles F. Steed; and COL Aaron K. Wilson, each filed joinders in the Guard's motion.  (R.198-203.)  On April 19, 2005, Defendant COL Robert E. Pierce also filed a joinder in the Guard's motion.  (R.204-05.)

On May 5, 2005, the Guard filed its Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act Motion for Dismissal, Sanctions and Related Relief against Plaintiff Colonel Joe H. Bryant, Jr. (RE5; R.215-44.)  That motion sought an award of attorneys' fees, costs and expenses, as well as additional monetary sanctions, jointly and severally against COL Bryant and his counsel. (*Id.*)

On May 10, 2005, the trial court entered an Order granting the Guard's Motion to Stay Discovery Pending a Ruling on Motion to Dismiss.  (R.259-60.)

On May 24, 2005, COL Bryant filed his Response in Opposition to the Guard's Motion to Dismiss (RE7; R.290-96), as well as his Response in

Opposition to the Guard's Motion for Sanctions (RE8; R.297-301.) On June 20, 2005, the Guard filed its Combined Rebuttal in Support of its: (1) Rule 12(b)(1), 12(b)(6), 12(c) and Eleventh Amendment Motion to Dismiss and for Judgment on the Pleadings; and (2) Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act Motion for Dismissal, Sanctions and Related Relief against Plaintiff Colonel Joe H. Bryant, Jr. (R10; R.344-432.)

On August 26, 2005 the trial court entered its Corrected Memorandum Opinion and Order,[6] dismissing all COL Bryant's claims against the Guard on the bases of: (a) the Guard not being a "person" subject to liability under 42 U.S.C. §§ 1983, 1985 & 1986, pursuant to *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989); (b) the Guard's Eleventh Amendment immunity; (c) the nonjusticiability of COL Bryant's federal claims and Mississippi Whistleblower Protection Act claims against the Guard under *Feres v. United States*, 340 U.S. 135, 146 (1950); and (d) COL Bryant's Military Whistleblower Protection Act claim, 10 U.S.C. § 1034, failing to state a claim. (R12; R.518-32.) That same Order dismissed all official capacity claims against the individual Defendants on the same bases, save for COL Bryant's individual capacity civil rights claims against them, which the trial court declined to dismiss at that time. (R12; R.532.)

---

[6] *Bryant v. Military Dept. of State of Miss. ex rel. Miss. Air Nat'l Guard*, 381 F.Supp.2d 586 (S.D. Miss. 2005).

The August 26, 2005 Order also denied the Guard's sanctions motion, merely finding that "[w]hile the court has concluded that MSANG is entitled to be dimissed from this action, the court is not persuaded that Bryant's complaint against MSANG was frivolous." (RE12; R.531-32 n.12.) The trial court did not certify its Order dimissing any of the foregoing claims or denying the Guard's sanctions motion as final, at that time.

On October 27, 2005, COL Bryant moved for leave to file an Amended Complaint – one with would join Leslie Wilkes as an additional individual Defendant and assert additional Mississippi law tort claims against all individual Defendants – (but not the Guard, which had been dismissed on August 26, 2005). (R.581-620); *see* (R.582) (COL Bryant "seeks only to join Defendant Leslie Wilkes, as a party defendant, and to more specifically plead additional, pendant state common law claims" against the individual Defendants).

On November 1, 2005, the trial court denied COL Bryant's Motion to Amend, "because the Amended Complaint reiterates claims that have already been stricken from this lawsuit." (RE13; R.627-28.) On November 16, 2006, COL Bryant filed a Motion for Reconsideration of the November 1, 2005 Order, arguing that COL Bryant was not seeking to reinstate any claims previously dismissed by the trial court, but rather was carrying forward prior language "to preserve any basis of appeal" of the August 26, 2005 Order. (R.635-38.) COL Bryant further

6

represented that "he incorporated the request that the Military Department not be required to answer or otherwise defend against the allegations in the Amended Complaint." (R.636.)

On December 5 and 6, 2005, the individual Defendants filed responses opposing COL Bryant's Motion for Reconsideration.  (R.711-27.)  On December 12, 2006, the trial court entered an Order granting COL Bryant's Motion for Reconsideration and permitting him to file his proposed Amended Complaint, finding in part that:

> …The Plaintiff had earlier sought to amend his  Complaint to add Leslie Wilkes as a party. However, the proposed Amended Complaint contained claims against the Defendants that had already been dismissed by Judge Lee, and the undersigned denied the Motion to Amend on that basis. The Plaintiff has apparently restructured his Amended Complaint and once more asks that it be permitted. He argues at this juncture that his Amended Complaint contained the dismissed claims in order to preserve his right of appeal. …[T]he court has researched the matter and is of the opinion that the denial of his Motion to Amend was in error.
>
> ….
>
> The general rule is that an amended complaint supersedes and replaces the original pleading, which would preclude an appeal of any matters contained in the original complaint, but not brought forward to the amended pleading. *Wilson v. First Houston Investment Corp.*, 566 F.2d 1235, 1237-38 (5th Cir. 1978), *rev'd on other grounds*, 444 U.S. 959 (1979). However, in *Wilson*, the court suggested that a party should not be precluded from asserting matters raised in his original complaint, but dismissed by the district court and omitted from the amendment. *Id*. There is substantial authority to the contrary. 6 Wright & Miller, *Federal Practice and Procedure* § 1476 (1971) ("Several courts have held that the amended pleading supersedes the original pleading in all respects so that an appeal from a subsequent

judgment on the merits cannot involve an attack on the dismissal of the original pleading"). Moreover, the Fifth Circuit more recently referred to this language in *Wilson* as "dictum," to which it was not bound. *Bennett v. Pippin*, 74 F.3d 578, 585 (5th Cir. 1996). While the decision in *Bennett* rested on an entirely different factual scenario, the court is unwilling to compel the Plaintiff in this case to risk waiving some of his claims against the Defendants by omitting them from his Amended Complaint.

IT IS, THEREFORE, ORDERED that the Plaintiff's Motion for Reconsideration of Order on Motion to Amend and Join a Party is hereby **granted**. The Plaintiff may file and serve his Amended Complaint, in the form attached to his earlier Motion to Amend and to Join a Party Defendant, on or before January 9, 2006.

(RE14; R.753-55.)

The next day, the trial court entered an Order clarifying that despite COL

Bryant's Amended Complaint, all previously dismissed claims remained

dismissed:

The court would note that an order was entered by the magistrate judge December 12 granting plaintiff's motion to amend to add a new party, a motion which had originally been denied because the amended claim included the claims that were previously dismissed by the undersigned. The fact that an amended complaint has been filed that includes claims that the court has previously dismissed does not alter the undersigned's ruling dismissing those claims. That is to say, despite the fact that these dismissed claims are included in the amended complaint, they have been, and remain dismissed so that the only claims presently in the case are those against the individual defendants in their individual capacities.

(RE15, R.756-57.)

On December 21, 2005, COL Bryant filed his Amended Complaint. (R.760-

95.)  In accordance with the prior Orders of the trial court clarifying that the

Amended Complaint was not reasserting any previously dismissed claims, the

8

Amended Complaint was never served on the Guard under Fed. R. Civ. P. 4 and the Guard has never responded to it.

In a series of Orders that did not affect the Guard, the trial court thereafter adjudicated various dispositive motions of the individual Defendants. (RE1; R.15-39.) On January 15, 2009, the trial court, pursuant to Fed. R. Civ. P. 54(b) certified as final all prior orders dismissing any claims in this Action, as well as denying the Guard's sactions motion. (RE16; R.2944-46). On February 13, 2009, COL Bryant timely filed his Notice of Appeal, invoking this Court's jurisdiction under 28 U.S.C. § 1291. (RE17; R.2947-49.) On February 18, 2009, the Guard timely filed its Notice of Cross-Appeal (RE18; R.2950-52), cross-appealing from the portions of August 26, 2005 "Corrected Memorandum Opinion and Order" denying the Guard's May 5, 2005 "Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act Motion for Dismissal, Sanctions and Related Relief."

## STATEMENT OF FACTS

### A.    COL Bryant's Complaint and the Guard's Sanctions Motion

As explained above, the only Complaint asserted against the Guard was COL Bryant's original Complaint (RE2; R.40-65), not COL Bryant's Amended Complaint (R.760-95.) Accordingly, throughout this brief, the Guard only addresses the allegations made in COL Bryant's original Complaint. (RE2; R.40-65.)

This suit concerns military-related claims brought by a former Guard officer. According to COL Bryant, and dispositive of all his claims herein against the Guard, *"[a]t all material times relevant hereto,* [he] was a Colonel in the Mississippi Air National Guard, and served as its Commander of Operations, prior to his forced retirement from active military service, on or about June 1, 2004." (RE2; R.41) (emphasis added).

COL Bryant's original Complaint pled a myriad of allegedly wrongful acts by the Guard, and thirteen of its current or retired Guardsmen: COL Franklin E. Chalk; BG (ret.) Frederick D. Feinstein; CMSgt Roy A. Graham; CMSgt Bill Y Joe Gressett; COL Donald E. Jones; LtCol Langford L. Knight; LTC F. Gregory Malta; CMSgt William F. Parten; COL Robert E. Pierce; CMSgt Roger E. Shirley; SSgt Charles F. Steed; COL Aaron K. Wilson; and LtCol (ret.) Thomas Temple. (RE2; R.41-45) (alleging each Guardsman Defendant to be either an active or retired member of the MSANG).

The core of COL Bryant's Complaint is that he suffered numerous adverse military personnel actions, including "forced retirement", (RE2; R.41), all supposedly in retaliation for reporting perceived military wrongdoing to military authorities, including the Active Component Inspector General of the Air Force. It bears repeating that – according to COL Bryant – "[a]t all material times relevant

10

hereto..." his claims arose from his military service, based on alleged conduct by various Guard officers and NCOs. (RE2; R.41.)

COL Bryant's Complaint asserted six causes of action: (1) the Military Whistleblower Protection Act, 10 U.S.C. § 1034; (2) a claim under the First Amendment; (3) 42 U.S.C. § 1983; (4) 42 U.S.C. § 1985; (5) 42 U.S.C. § 1986; and (6) the Mississippi Whistleblower Protection Act, Miss. Code Ann. §§ 25-9-171 through 25-9-177 (1972). In remedy for his claims, he prayed for compensatory and punitive damages, as well as "[a]ll relief and remedies, including the imposition of penalties, afforded the Plaintiff, in accordance with" the Mississippi Whistleblower Protection Act. (RE2; R.64.) *See* Miss. Code Ann. § 25-9-175 (allowing a successful plaintiff to recover back pay, reinstatement, injunctive relief, compensatory damages, attorneys' fees, court costs and a civil fine of up to $10,000.00 per violation).

Soon after moving to dismiss the Complaint (RE3; R.95-102), the Guard complied with the Fed. R. Civ. P. 11 safeharbor provisions (RE5; R.216 & 223-44) and thereafter, on May 5, 2005, the Guard filed its Fed. R. Civ. P. 11, 28 U.S.C. § 1927 and Mississippi Litigation Accountability Act Motion for Dismissal, Sanctions and Related Relief against Plaintiff Colonel Joe H. Bryant, Jr. (RE5; R.215-44.) That motion sought an award of attorneys' fees, costs and expenses, as

11

well as additional monetary sanctions, jointly and severally against COL Bryant and his counsel. (*Id.*)

### B.    The Status of the Guard

COL Bryant's Complaint names as an entity Defendant the "Military Department of the State of Mississippi, by and through the Mississippi Air National Guard." (RE2; R.40.) However, there is no such entity. The Mississippi Military Department and the Mississippi Air National Guard are two separate and distinct state entities. Due to COL Bryant's conflation of separate entities, a brief explanation of the structure of Mississippi's militia forces is in order.

The Mississippi Militia, of which the Mississippi National Guard is a part, is composed of the "National Guard, the Mississippi State Guard,[7] and the unorganized militia." Miss. Code Ann. § 33-5-1 (1972). Pursuant to Miss. Code Ann. § 33-1-1(d), the "Mississippi National Guard [means] that part of the organized militia of this state[8] which is organized, equipped and federally recognized under the provisions of the laws of the United States and of the State of Mississippi relating to the National Guard." *Id.* The Mississippi Air National

---

[7] The Mississippi State Guard - an entity separate and distinct from the Mississippi National Guard - is a state defense force exempt from being impressed into the Armed Forces of the United States. *See* 32 U.S.C. § 109(c); *see also Perpich v. DOD*, 496 U.S. 334, 352 (1990) (discussing state defense forces). Essentially, the Mississippi State Guard is available to take up state duties for the Mississippi National Guard, in case the Mississippi National Guard deploys out of state.

[8] The Governor of Mississippi, not the President of the United States, is the Commander in Chief of the Mississippi Guard (unless impressed into federal service). Miss. Code Ann. § 33-3-1; Miss. Const. art. V, § 119.

12

Guard is merely a component of the Mississippi National Guard,[9] as Miss. Code Ann. § 33-1-1 (1972) provides that the Mississippi "Air national guard--Shall mean the members of federally recognized units and organizations of the Mississippi National Guard which are a reserve component of the United States Air Force." *Id.*

The "*Mississippi National Guard*—[is] that part of the organized militia of this state which is organized, equipped and federally recognized under the provisions of the laws of the United States and of the State of Mississippi relating to the national guard[,]" Miss. Code Ann. § 33-1-1(c) (1972), and "consist[s] of the organized militia within the ages prescribed by federal law and regulations, organized, armed and equipped as hereinafter provided, and of commissioned officers and warrant officers within the ages and having the qualifications prescribed by federal law and regulations." Miss. Code Ann. § 33-7-1 (a) (1972).

The Mississippi National Guard – the *entity* – is a "state militia." *Perpich v. Department of Defense*, 496 U.S. 334, 347 (U.S. 1990). However, its federally recognized *members* also hold a separate membership in the National Guard of the United States ("NGUS"), a federal reserve component. *Id.* at n.19. While the Guard's federal recognized members have dual status[10] – and can wear either their

---

[9] In military usage, "MMD" means Mississippi Military Department, "MSNG" means Mississippi National Guard, "MSANG" means Mississippi Air National Guard and "MSARNG" means Mississippi Army National Guard. Together, the MSARNG and MSANG comprise the MSNG.

[10] Some court decisions refer to the Guard or Guardsmen as "hybrid." However, under *Perpich*, "dual status" is a more accurate term, as a Guardsman is either *exclusively* in a state or

state militia hat or federal NGUS hat depending on the character of their orders, as explained by *Perpich*, only one such hat can be worn at any given time:

> Notwithstanding the brief periods of federal service, the members of the State Guard unit continue to satisfy this description of a militia. In a sense, all of them now must keep three hats in their closets-a civilian hat, a state militia hat, and an army hat-only one of which is worn at any particular time. When the state militia hat is being worn, the "drilling and other exercises" …are performed pursuant to "the Authority of training the [state] Militia according to the discipline prescribed by Congress," but when that hat is replaced by the federal hat, the second Militia Clause is no longer applicable.

*Perpich*, 496 U.S. at 348.   In contrast to its individual *members*, under our constitutional and statutory scheme, a state's guard - *the entity* - only obtains a federal status[11] if impressed by Presidential call.   10 U.S.C. § 3062(c)(1); 10 U.S.C. §§ 331-333 & 12406.[12]

The Mississippi Military Department is a department of the executive branch of the State of Mississippi, Miss. Code. Ann. § 33-3-3 (1972), and is therefore a state agency.  *Id.*   Specifically, the Mississippi Military Department ("MMD") is

---

federal status, depending on the character of  his orders – he never is *simulataneously* in both. Similarly, the Guard itself – *as opposed to the NGUS* – is always a state entity, unless impressed into federal service by Presidential call.

[11] For the Court's convenience in visualizing this State and Nation's Militia structure, a chart reflecting the interrelationship between state and federal military entities is appended hereto as Appendix A.

[12] *See Clark v. U.S.*, 322 F.3d 1358, 1365 (Fed. Cir. 2003) ("Although the National Guard of the United States is a reserve component, the Alabama National Guard, ...is not a reserve component of a uniformed service. It becomes clear, when we consider Supreme Court precedent and the statutory scheme..., that the [Alabama] National Guard and the National Guard of the United States are separate and distinct entities"); *United States v. Hutchings*, 127 F.3d 1255, 1258-59 (10th Cir. 1997) (recognizing that the state v. federal status of a state's Guard depends on whether command authority rests with the state, or, upon Presidential call, the President).

the state agency that administers - *as opposed to commands* - various parts of the Mississippi Militia.[13]   In sum, the MMD is the state analog to the federal Department of Defense, and the Mississippi Air National Guard is the state analogue to the United States Air Force.

Looking to the substance of COL Bryant's claims,[14] it is clear that he is intending to proceed against the Mississippi National Guard, as the allegations he has pled all relate to supposed incidents relating to his military service in the Guard, and he does not allege that he or any of the individual Defendants are or have been employees of the Mississippi Military Department,[15] a state executive

---

[13] Under state law, the Adjutant General is the "[e]xecutive head of the [Mississippi Military] department, and, as such, subordinate only to the governor in matters pertaining thereto."  Miss. Code Ann. § 33-3-3; *see* 32 U.S.C. § 314 (state law sets duties of the Adjutant General); *see also* Miss. Const. art. V, § 119; Miss. Code Ann. § 33-3-1.  In addition to serving as the executive head of the Mississippi Military Department, a state agency, the Adjutant General is the chief military officer of the various parts of the Mississippi Militia, including the Mississippi Guard, and is "[s]ubordinate only to the Governor in matters affecting the ...militia of this state."  Miss. Code Ann. § 33-3-7 (1972). The Adjutant General is therefore a state militia officer, as well as a state agency head. *See NeSmith v. Fulton*, 615 F.2d 196, 199 (5th Cir. 1980) ("[t]he legislative history of the National Guard Technicians Act also states clearly that Congress viewed the adjutants general as state officers").

[14] *See* Fed. R. Civ. P. 1 (The Federal Rules of Civil Procedure "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action").

[15] In any event, by statute, all employment with the MMD is at-will, and those employees serve at the pleasure of The Adjutant General.  *See* Miss. Code Ann. § 33-3-11("The adjutant general shall: (1) Appoint all of the employees of his department and he may remove any of them at his discretion").  As a result, none of them hold a constitutionally protected property interest in their positions. *See White v. Mississippi State Oil and Gas Bd.*, 650 F.2d 540, 542 (5th Cir. 1981) ("If, under Mississippi law, White's employment could be terminated only for cause, he had a protected property interest in his employment; however, if he could be terminated at will, he did not").

agency.  Accordingly, both the Guard and the district court have treated the Guard as the intended Party-Defendant, without objection from COL Bryant.

Yet even if Guard is mistaken as to the intended entity Defendant, such does not affect the instant appeal or cross-appeal.  As explained below, the bases for dismissal and judgment set forth herein apply equally to the Mississippi National Guard and the Mississippi Military Department, both of which are military state entities.

## SUMMARY OF ARGUMENT

The Guard is a state militia entity.  *Perpich v. Department of Defense*, 496 U.S. 334, 347 (U.S. 1990).  Accordingly, under *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Guard is not a "person" subject to liability under 42 U.S.C. §§ 1983, 1985 & 1986.

Further, because the Guard is a state entity, it has Eleventh Amendment immunity against COL Bryant's claims.  *E.g.*, *Jones v. New York State Div. of Military Affairs*, 166 F.3d 45, 49 (2d Cir. 1999) (holding that both New York Military Department and National Guard are state entities entitled to Eleventh Amendment immunity).  Additionally, because COL Bryant has failed to challenge, let alone raise the *Will* and Eleventh Amendment issues in this appeal, they are waived in the Guard's favor.  *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008).

16

Even setting aside those dispositive bases for affirmance, under the allegations of his Complaint and his numerous admissions both here and below, all COL Bryant's alleged "injuries arise out of or are in the course of activity incident to service[,]" *Feres v. United States*, 340 U.S. 135, 146 (1950), and are therefore barred by the *Feres* Doctrine. Further, COL Bryant's admitted failure to exhaust his military administrative remedies with the Air Force Board for Correction of Military Records bars his claims under *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), as reaffirmed and expanded by *Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 339 (5th Cir. 2000).

Even if one ignores the fact that COL Bryant now contends he is not seeking to prosecute a private cause of action for damages under the Military Whistleblower Protection Act, 10 U.S.C. § 1034, the dismissal of that claim should still be affirmed. Every court to have considered the issue has found – as did the district court below – that the MWPA provides no private right of action for damages; and (2) its sole remedies are administrative. *Soeken v. U.S.*, 47 Fed. Cl. 430, 433 (Fed. Cl. 2000); *see also Gant v. U.S.*, 63 Fed. Cl. 311, 316 (Fed. Cl. 2004).

With respect to the Guard's cross-appeal, prior to filing this suit, COL Bryant had affirmatively alleged in numerous answers and notices of removal that the *Feres* Doctrine and constitutional immunities barred claims against him arising

17

out of many of the same underlying matters at issue in this case. Further, COL Bryant and his counsel both knew that the Guard was a state entity – in fact, they alleged same in paragraph 3 of his Complaint. Additionally, weeks before filing its sanctions motion, the Guard first filed its Motion to Dismiss and put COL Bryant and his counsel on further actual notice of the baselessness of his claims. Accordingly, both COL Bryant and his counsel's initial claims against the Guard, as well as their refusal to voluntarily dismiss them on request warranted sanctions.

## STANDARD OF REVIEW

### A.    Issues on COL Bryant's Appeal

The district court dismissed all COL Bryant's claims against the Guard pursuant to Fed. R. Civ. P. Rule 12(b)(1), 12(b)(6) and 12(c). The standard of review for a dimissal under both Rule 12(b)(6) and 12(c) is de novo. *See Equal Access for El Paso, Inc. v. Hawkins*, 562 F.3d 724, 726 (5th Cir. 2009) (Rule 12(b)(6) standard) & *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) (Rule 12(c) standard).

In connection with its Motion to Dismiss, the Guard presented four types of evidence to the district court: (a) the allegations in COL Bryant's Complaint, (RE2; R.40-65); (b) COL Bryant's judicial admissions in this Action, (RE7; R.271-96); (c) COL Bryant's judicial admissions in filings from related litigation, (RE10; R.367-432); and (d) the 28 U.S.C. § 1746 Declaration of COL Robert Thomas on

certain "arm-of-the-state" issues. (RE10; R.364-66.) The Parties presented no other evidence to the trial court in connection with the Guard's Motion to Dismiss.

The Guard's Rule 12(b)(1) motion challenged the Court's subject matter jurisdiction under: (a) the Eleventh Amendment; as well as (b) lack of justiciability under *Feres v. United States*, 340 U.S. 135, 146 (1950), *Mindes v. Seaman*, 453 F.2d 197, 202-03 (5th Cir. 1971) and *Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 339 (5th Cir. 2000). "When addressing a dismissal for lack of subject matter jurisdiction, [the Fifth Circuit] review[s] application of law de novo and disputed factual findings for clear error." *U.S. ex rel. Branch Consultants v. Allstate Ins. Co.*, 560 F.3d 371, 376 (5th Cir. 2009).

### B.    Issues on the Guard's Cross-Appeal

"This court reviews a district court's imposition of sanctions for abuse of discretion." *Fleming & Associates v. Newby & Tittle*, 529 F.3d 631, 641 (5th Cir. 2008) (citation omitted). "Generally, an abuse of discretion only occurs where no reasonable person could take the view adopted by the trial court." *Friends for Am. Free Enter. Ass'n v. Wal-Mart Stores, Inc.*, 284 F.3d 575, 578 (5th Cir. 2002) (internal quotation marks omitted).

**ARGUMENT OF APPELLEE**

**I.    THE DECISION BELOW SHOULD BE AFFIRMED BECAUSE THE GUARD IS NOT A "PERSON" SUBJECT TO LIABILITY UNDER 42 U.S.C. §§ 1983, 1985 OR 1986**

**A.    COL Bryant Has Waived This Issue Both By Failing to Address it Below and Failing to Address it in His Appeal**

In its Motion to Dismiss, the Guard contended that under *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), it – as a state entity – is not a "person" subject to liability under 42 U.S.C. §§ 1983, 1985 or 1986.[16]  *E.g.*, (RE3; R.99-100.)   As found by the district court, COL Bryant "completely ignore[d] MSANG's argument that it is not a 'person'…" under *Will* "and thus has in effect confessed MSANG's motion."   (RE12; R.529 at n.10.)   The trial court then accepted the Guard's argument and held that COL "Bryant's claims 42 U.S.C. §§ 1983, 1985 and 1986 are barred for the further reason that these statutes create rights against 'persons' and a state is not considered a 'person' under these statutes."  (RE12; R.526.)

Now, on appeal, COL Bryant has *again* completely ignored this argument, which was one of the dispositive bases on which all but one[17] of COL Bryant's claims against it were dismissed.   These facts alone are dispositive of all COL Bryant's civil rights claims for two reasons.

---

[16] As mentioned above, the MMD is a department of the executive branch of the State of Mississippi, Miss. Code. Ann. § 33-3-3 (1972), and is therefore also a state agency. *Id.*

[17] This argument did not address Bryant's Mississippi Whistleblower Protection Act claim, which the district court found failed to state a claim and was *Feres*-barred. (RE12; R.518-

First, "[u]nder this Circuit's general rule, arguments not raised before the district court are waived and will not be considered on appeal unless the party can demonstrate "extraordinary circumstances." *AG Acceptance Corp. v. Veigel*, 564 F.3d 695, 700-01 (5th Cir. 2009) (citation omitted). Second, "[a] party waives an issue if he fails to adequately brief it" on appeal, *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 255 (5th Cir. 2008) (citation omitted), and COL Bryant may not cure this fatal defect by raising it in his reply brief, as "[a]n argument first supported in a reply brief comes too late because the appellee is not entitled thereafter to respond." *Sanders v. Unum Life Ins. Co. of America*, 553 F.3d 922, 926-27 (5th Cir. 2008). Accordingly, COL Bryant's failure to contest, let alone address, the Guard's *Will* argument below or in this Court is in-and-of-itself grounds for affirmance of the dismissal of all his civil rights claims against the Guard.[18]

**B.    According to COL Bryant – and the Facts – the Guard is an "Admitted State Agency" and Therefore it Cannot Be a "Person" Under *Will***

Even if COL Bryant were able, at this late date, to finally challenge the finding that the Guard is not a "person" for purposes of the civil rights statutes, his argument should still fail. Below, COL Bryant conceded that the Guard is an

---

32.)

[18] While the *Will* argument did not address Bryant's MSWPA claim, COL Bryant now asserts that he is not asserting a direct claim under that statute. *See* (Br.App. at 39) ("Make no mistake, the point of [Bryant's MSWPA claim] is not for a private cause of action under that statute…"). Regardless, the district court's dismissal of that cause of action for failure to state a claim and under *Feres* was correct.

"admitted state agency."   (RE7; R.287.)  Of course, COL Bryant could not have reasonably contended otherwise, as his Complaint alleges the Guard is liable[19] under the Mississippi Whistleblower Protection Act ("MSWPA"), which applies only to a "'Governmental entity' [which] means a board, commission, department, office or other agency of the state or a political subdivision *of the state*."  Miss. Code Ann. § 25-9-171 (1972) (emphasis added).

COL Bryant's concession was correct.  Under 10 U.S.C. § 101(c)(2), the Mississippi National Guard is one of the "[o]rganized militia of the several States...."  Thus, the Mississippi Guard is a state entity, under the command of the Governor.  *E.g., Jones v. New York State Div. of Military Affairs*, 166 F.3d 45, 49 (2d Cir. 1999) (New York Guard is state entity).[20]  Under our constitutional and statutory scheme, a state's guard - *the entity* - only obtains a federal status if impressed by Presidential call.  10 U.S.C. § 3062(c)(1); 10 U.S.C. §§ 331-333 & 12406.[21]

---

[19] (RE2; R.62-63.)

[20] *See Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983) (holding that the Kansas National Guard "[i]s not independent of the State of Kansas; rather, it is an arm of the state and entitled to any immunity which the state possesses "); *Petr v. Delaware Nat'l Guard*, No. 94-327-SLR, 1995 WL 579634, *2 (D. Del. Sept. 28 1995) ("[e]ach state's National Guard itself is a state agency").

[21] *See Clark v. U.S.*, 322 F.3d 1358, 1365 (Fed. Cir. 2003) ("Although the National Guard of the United States is a reserve component, the Alabama National Guard, ...is not a reserve component of a uniformed service. It becomes clear, when we consider Supreme Court precedent and the statutory scheme..., that the [Alabama] National Guard and the National Guard of the United States are separate and distinct entities"); *United States v. Hutchings*, 127 F.3d 1255,

22

"[N]either a State nor its officials acting in their official capacities are "persons" under § 1983." *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989). Considering this very argument in the context of a suit against the New York Department of Military and Naval Affairs, as well as the New York National Guard, the Second Circuit found:

> [A]s the district court noted, neither the DMNA nor the NYANG are "persons" within the meaning of 42 U.S.C. § 1983. Thus, even apart from Eleventh Amendment considerations, Jones has failed to state a claim against either state agency.

*Jones v. New York State Division of Military and Naval Affairs*, 166 F.3d 45, 49 (2d Cir. 1999)(citing *Will*, 491 U.S. at 71).[22] Thus, as sections 1983, 1985 & 1986 all create rights against "persons," COL Bryant's claims against the Guard therefore all fail to state a claim and must be dismissed. *See Laxey v. Louisiana Bd. of Trustees*, 22 F.3d 621, 623 (5th Cir. 1994) (citing *Will*) (applying the rule that state entities "are not 'persons' under § 1983, and the case could have been dismissed on that ground").

---

1258-59 (10th Cir. 1997) (recognizing that the state v. federal status of a state's Guard depends on whether command authority rests with the state, or, upon Presidential call, the President).

[22] *Accord Introini v. South Carolina Nat'l Guard*, 828 F. Supp. 391, 392 (D. S.C. 1993) ("Under *Will*, a § 1983 claim against the Guard cannot be maintained in state or federal court").

23

## II. THE DECISION BELOW SHOULD BE AFFIRMED BECAUSE ALL COL BRYANT'S CLAIMS AGAINST THE GUARD ARE BARRED BY THE ELEVENTH AMENDMENT

### A. COL Bryant Has Waived This Issue By Failing to Address it in This Appeal

In its Motion to Dismiss, the Guard contended that the Eleventh Amendment barred all COL Bryant's claims against it. *E.g.*, (RE3; R.100.) COL Bryant did address this argument in one limited respect – by contending that the Mississippi Legislature has waived the state's immunity with respect to MSWPA claims. (RE7; R.287.) Otherwise, he ignored it.

The district court rejected COL Bryant's limited waiver argument and held that "inasmuch as the MSANG, for present purposes, is a state agency, <u>all</u> of plaintiff's remaining claims against MSANG are barred by the Eleventh Amendment." (RE12; R.523-24.) COL Bryant has again completely ignored this dispositive basis for the district court's holding in this appeal and has therefore waived this issue. *Veigel*, 564 F.3d at 700-01; *Sanders*, 553 F.3d at 926-27. Accordingly, COL Bryant's failure to contest, let alone address, the Eleventh Amendment bar to his claims is in-and-of-itself grounds for affirmance of the dismissal of all his civil rights claims against the Guard.

### B. Under *Perpich*, the Guard is a State Entity and it is Therefore Entitled to Eleventh Amendment Immunity

Even if COL Bryant were able, at this late date, to finally challenge the Eleventh Amendment bar to his claims against the Guard, his argument should still

24

fail. Under 10 U.S.C. § 101(c)(2), the Mississippi Guard is one of the "[o]rganized militia of the several States...[;]" *see Perpich v. DOD*, 496 U.S. 334, 350-51 (1990) (recognizing that the militias are state entities); *see also Maryland ex rel. Levin v. United States*, 381 U.S. 41, 48 (1965), *vacated on other grounds,* 382 U.S. 159 (1965) (citation omitted) ("[a]ll located decisions ...hold that National Guardsmen of the several states are employees of the state except when in the actual service of the United States"); (RE11; R.447 at n.8) (addressing *Southwestern Bell Telephone Co. v. City of El Paso*, 243 F.3d 936, 938 (5th Cir. 2001) "arm-of-the-state" factors) & (RE10; 364-66) (Decl. of COL Thomas addressing certain "arm-of-the-state" factors).

The Eleventh Amendment prohibits any suit "commenced or prosecuted" against one of the United States by Citizens of another state. The Guard, as a state agency, enjoys the protections of the Eleventh Amendment. Examining this very argument, the Seventh Circuit has held:

> The first question we must confront is whether [Kansas Army National Guard] is an arm of the state which is entitled to Eleventh Amendment immunity. ...[W]hile KANG is subject to substantial control by the United States, itself an immune entity, the State of Kansas exercises significant authority over it. The Governor of Kansas serves as commander-in-chief and appoints the adjutant general and other officers. ....
>
> The second element, that of financial independence, is controlled by the following test: does the suit seek to impose "a liability which must be paid from public funds in the state treasury...." *Quern v. Jordan*, 440 U.S. 332, 337 (1979). Since KANG has no independent taxing

25

> power, a judgment against it apparently would be satisfied from state funds.
>
> Thus, we conclude that KANG is not independent of the State of Kansas; rather, it is an arm of the state and entitled to any immunity which the state possesses.

*Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983) (some citations omitted*); accord Jones v. New York State Div. of Military Affairs*, 166 F.3d 45, 49 (2d Cir. 1999) (holding that both the New York Military Department and National Guard are state entities entitled to Eleventh Amendment immunity);[23] *Meadows v. State of Indiana*, 854 F.2d 1068, 1069 (7th Cir. 1988) (suit against Indiana Guard and Guard officers barred by Eleventh Amendment). As a result, the Eleventh

---

[23] Numerous courts have found that state Guards, their Adjutants General and military departments enjoy full immunity under the Eleventh Amendment. *E.g., Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 769 n. 3 (7th Cir. 1993), *cert. denied* 510 U.S. 933 (1993) (Eleventh Amendment bars claims against Guard); *Hefley v. Textron, Inc.*, 713 F.2d 1487, 1493 (10th Cir. 1983) (Kansas National Guard "[i]s not independent of the State of Kansas; rather, it is an arm of the state and entitled to any immunity which the state possesses"); *Hefrich v. Pennsylvania Dept. of Military Affairs*, 660 F.2d 88, 90 (3rd Cir. 1981) (military department immune under Eleventh Amendment); *Henry v. Textron, Inc.*, 577 F.2d 1163, 1164 (4th Cir. 1978), *cert. denied* 439 U.S. 1047 (1978) (Virginia Guard immune under Eleventh Amendment); *Richardson-Longmire v. Kansas, Adjutant General*, no. Civ.A.97-2679, 1997 WL 156168 (D. Kan. March 8, 1999) (Kansas TAG immune under Eleventh Amendment); *Intrioni v. South Carolina Nat'l Guard*, 828 F. Supp. 391, 396 (D. S.C. 1993) (South Carolina Guard immune under Eleventh Amendment); *Duncan v. Oklahoma Nat'l Guard*, no. 91-1146-K, 1991 WL 126737 (D. Kan. 1991) (Oklahoma and Kansas Guards immune under Eleventh Amendment); *Tiggett v. New Jersey Nat'l Guard*; No. 90-2265, 1990 WL 181474 (E.D. Penn. Nov. 20, 1990) (New Jersey Guard immune under Eleventh Amendment); *cf. Crout v. Washington*, 149 Fed.Appx. 601, 604, 2005 WL 2108661, *2 (9th Cir. 2005) ("all of Crout's claims against Washington State and the Washington Army National Guard, except his Title VII claims, are barred because the Eleventh Amendment bars suits against a state and state agencies in federal court"); *Lawrence v. Hawaii Air Nat'l Guard*, 126 Fed.Appx. 835, 837, 2005 WL 658934, *1 (9th Cir. 2005) ("Based upon [Hawaii National Guard's] Eleventh Amendment immunity, the district court was correct in dismissing all of Lawrence's non-Title VII claims against HIANG for all relief sought").

Amendment bars all COL Bryant's claims against the Guard and requires their dismissal.[24]

### C. The Mississippi Whistleblower Protection Act Does Not Waive the Guard's Eleventh Amendment Immunity

As mentioned above, although he has failed to raise the issue on appeal, before the district court COL Bryant did argue that the MSWPA constitutes a legislative waiver of the Guard's Eleventh Amendment immunity. (RE7; R.287.) Invoking this Court's decision in *Martinez v. Texas Department of Criminal Justice*, 300 F.3d 567, 573 (5th Cir. 2002), the district court rejected this argument, holding that "the text of the statute [referring to suits against the state in "circuit," not "federal" courts][25] belies [COL Bryant's] opinion." (RE12; R.524-25.) The district court's decision is sound and fully consistent with *Martinez*.

The "'test for determining whether a State has waived its immunity from federal-court jurisdiction is a stringent one[,]'" *College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 675 (1999) (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985)), and a state only

---

[24] *Cf. Day v. Massachusetts Air Nat'l Guard*, 167 F.3d 678, 686 (1st Cir. 1999) ("It does not matter whether the Massachusetts National Guard is viewed as a federal or state entity. If federal, *Feres* applies; if not, damage claims against it in federal court are barred by the Eleventh Amendment").

[25] The MSWPA specifies that any "Actions to recover civil fines and other remedies provided for under Section 25-9-175 may be instituted in the *Circuit Court* for the First Judicial District of Hinds County or in the *circuit court* of the public employees' residence." Miss. Code Ann. § 25-9-177 (1972) (emphasis added).

waives its sovereign immunity by making a "'clear declaration'[26] that it intends to submit itself to our jurisdiction[.]" *College Savs. Bank*, 527 U.S. at 676:

> Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. Nor does it consent to suit in federal court merely by stating its intention to "sue and be sued," or even by authorizing suits against it "'in any court of competent jurisdiction[.]'" We have even held that a State may, absent any contractual commitment to the contrary, alter the conditions of its waiver and apply those changes to a pending suit.

*Id.*, 527 U.S. at 676 (citations omitted). In sum, COL Bryant's waiver argument, like his others against the Guard, is meritless.

### D.    *Lipscomb* Does Not Alter the Eleventh Amendment Analysis

As mentioned above, the only argument COL Bryant made below with respect to the Eleventh Amendment was putative waiver by the legislature under the MSWPA. (RE7; R.287.) COL Bryant conceded that the Guard is an "admitted state agency[,]" in the capacity he sued it herein and has never contended otherwise. (RE7; R.287.) Despite this fact, the Guard brought this Court's prior decision in *Lipscomb v. Federal Labor Relations Authority*, 333 F.3d 611, 619 (5th Cir. 2003) to the district court's attention and explained why it is inapposite. (RE11; R.449-450.) Although it did not cite *Lipscomb* in its decision, the district court implicitly acknowledged it had considered it and found it inapposite, by

---

[26] Not only has COL Bryant pointed to no "clear declaration" of intended waiver, to the contrary, in Mississippi, "[i]t is, and has always been, the intent of the Legislature that the sovereign immunity of the State of Mississippi pursuant to either state law or the Eleventh Amendment to the United States Constitution may only be waived by express authorization set forth in an enactment of the Mississippi Legislature." Miss. Code Ann. § 57-77-3 (1972).

stating the "inasmuch as the MSANG, *for present purposes*, is a state agency, <u>all</u> of plaintiff's remaining claims against MSANG are barred by the Eleventh Amendment." (RE12; R.523-24) (italics added). The district court's conclusion was correct. However, out of abundance of caution, the Guard will briefly address *Lipscomb*.

*Lipscomb* found that the "MSA[R]NG[27] and MSNG are [federal] executive agencies for the purpose of FLRA authority" *in unionization matters involving 32 U.S.C. § 709 federal military technicians.*[28] *Lipscomb*, 333 F.3d at 619. Thus, "[f]or the purposes of the rights asserted in this case, [- the federal government's rights in 32 U.S.C. § 709 civilian technician unionization matters arising under the Federal Service Labor Management Act -] the MSNG is a federal agency...[,]" therefore mooting an Eleventh Amendment issue.[29] *Lipscomb*, 333 F.3d at 618 n.7.

---

[27] "MSARNG" means Mississippi Army National Guard.

[28] This Court's recent decision in *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 295-99 (5th Cir. 2008) (contains a thorough explanation of the nature and role of Section 709 Technicians – who are nominal federal employees detailed to the command of each state's Guard Adjutant General).

[29] Under our Nation's state v. federal military structure, the Mississippi Guard a state entity, is separate and distinct from the federal entity – the National Guard of the United States – of which the Mississippi Guard is not a part. As recognized by the Federal Circuit, "[a]lthough the National Guard of the United States is a reserve component, *the Alabama National Guard, ...is not a reserve component of a uniformed service*. It becomes clear, when we consider Supreme Court precedent and the statutory scheme..., that *the [Alabama] National Guard and the National Guard of the United States are separate and distinct entities*." *Clark v. U.S.*, 322 F.3d 1358, 1365 (Fed. Cir. 2003) (emphasis added); *see United States v. Hutchings*, 127 F.3d 1255, 1258-59 (10th Cir. 1997) (recognizing that the state v. federal status of a state's Guard

*Lipscomb* is inapplicable here by its own terms, as it is undisputed that COL Bryant was *not* a section 709 federal technician.  Further, COL Bryant's Complaint readily reveals that this Action does *not* involve FLRA or federal union matters in which the Guard would arguably be acting on behalf of the federal government, with respect to administering 32 U.S.C. § 709 nominal federal employees.  As a result, *Lipscomb* is inapposite and does not alter the Eleventh Amendment analysis.

## III.    *FERES* BARS ALL BRYANT'S CLAIMS AGAINST THE GUARD

*Will* and the Eleventh Amendment are each in-and-of-themselves case dispositive.  As a result, this Court need go no further in order to affirm the district court.  However, should this Court desire to do so, the decision below can be affirmed on numerous additional bases set forth below.

### A.    The Rationale of *Feres*

As found by the district court, "it cannot be reasonably questioned that COL Bryant's allegations against MSANG (and for that matter, against all the defendants) relating to his employment are subject to the *Feres* bar."  (RE12; R.531.)  This holding is sound and should be affirmed.

A host of United States Supreme Court and Fifth Circuit cases have held that military personnel decisions are nonjusticiable in civilian fora. Servicemembers cannot assert claims against the military, their superiors or other servicemembers

_____

depends on whether command authority rests with the state, or, upon Presidential call, the President).

"where the injuries arise out of or are in the course of activity incident to service."

*Feres v. United States*, 340 U.S. 135, 146 (1950); *U.S. v. Stanley*, 483 U.S. 669, 683-84 (1987); *Chappell v. Wallace*, 462 U.S. 296, 304-05 (1983). This prohibition, known as the *Feres* Doctrine, flatly prohibits suits against the military and military personnel for injuries arising out of or in the course of activity "incident to service."

The Supreme Court's holdings in *Feres*, *Chappell*, and *Stanley* are premised upon two major concerns: the separation of powers set out in the constitution and the disruption servicemember suits cause to military efficiency and national security. In reference to the separation of powers concern, *Stanley* stated:

> It is clear that the Constitution contemplated that the Legislative Branch have plenary control over the rights, duties, and responsibilities in the framework of the Military Establishment. Congress, we noted, has exercised that authority to establish a comprehensive internal system of justice to regulate military structure. The unique disciplinary structure of the Military Establishment and Congress' activity in the field constitute special factors which dictate that it would be inappropriate to provide [a *Bivens* remedy].

*Stanley*, 483 U.S. at 679 (quoting *Chappell*, 462 U.S. at 301) (citations omitted).

Thus, "[c]ivilian courts may not sit in plenary review over intraservice military disputes." *Crawford v. Texas Air Nat'l Guard*, 794 F.2d 1034, 1035 (5th Cir. 1986). This is because:

> Judges are not given the task of running the Army. The responsibility for setting up channels through which [complaints of discrimination, favoritism, etc.] can be considered and fairly settled rest upon the

31

Congress and upon the President of the United States and his subordinates. The military constitutes a specialized community governed by separate discipline from that of the civilian. Orderly government requires that the judiciary be scrupulous not to interfere with legitimate Army matters, as the Army must be scrupulous not to intervene in judicial matters.

*Chappell*, 462 U.S. at 301 (quoting *Orloff v. Willoughby*, 345 U.S. 83 (1953)).

"*Feres* applies both to reservists and National Guardsmen." *Schoemer v. U.S.*, 59 F.3d 26, 29 (5th Cir. 1995).[30] The prohibition against suit by servicemembers against the military and military personnel enunciated by *Feres*, *Chappell*, and *Stanley* applies with equal force to suits against a state's National Guard itself, by "guardsmen" whose claims arise out of or are incident to service. Further, *Feres* also applies fully to claims against state military departments, like the Adjutant General's Department of Texas and the Mississippi Military

---

[30] *Accord Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 302 (5th Cir. 2008); *Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 769 (7th Cir. 1993), *cert. denied* 510 U.S. 933 (1993); *Wood v. United States*, 968 F.2d 738, 740 (8th Cir. 1992); *Farmer v. Mabus*, 940 F.2d 921, 923-25 (5th Cir. 1991); *Lovell v. Heng*, 890 F.2d 63, 65 (8th Cir. 1989); *Watson v. Arkansas Air Nat'l Guard*, 886 F.2d 1004, 1011 (8th Cir. 1989); *Costner v. Oklahoma Army Nat'l Guard*, 833 F.2d 905, 907 (10th Cir. 1987); *Holdiness v. Stroud*, 808 F.2d 417, 426 (5th Cir. 1987); *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *NeSmith v. Fulton*, 615 F.2d 196, 203 (5th Cir. 1980). Further, lawsuits by supposedly "civilian" individuals whose "claims" arose incident to military-style duties are also prohibited. In fact, this Court has expressly held that Mississippi "civilian" technicians may not challenge military personnel decisions in civilian courts or fora. *Hassenfratz v. Garner*, 911 F. Supp. 235, 236 (S.D. Miss. 1995); *see also Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 340 (5th Cir. 2000) (With respect to National Guard Military Technicians "the special hybrid civilian-military nature of these [military] technicians warranted application of *Feres*"); *Presley v. Jackson Municipal Airport Authority*, 94 F. Supp. 2d 755, 758-764 (S.D. Miss. 2000) (finding that a "civilian" firefighter's ADA claim against the MMD was nonjusticiable, despite the fact that he was not even a member of the Mississippi National Guard).

32

Department.  *E.g.*, *Walch v. Adjutant General's Dept. of Tex.*, 533 F.3d 289, 301 (5th Cir. 2008).[31]

The *Feres*, *Chappel* and *Stanley* prohibition is not limited to *Bivens* actions. Actions based upon 42 U.S.C. §§ 1981,[32] 1983,[33] 1985[34] & 1988[35] are also nonjusticiable.  *Walch*, 533 F.3d at 297.  This is because "[t]here is no principled basis for according state actors sued under 42 U.S.C. § 1983 a different degree of immunity than would be accorded federal actors sued in an identical abridgement of rights under *Bivens*."  *Wright v. Park*, 5 F.3d 586, 591 (1st Cir. 1993).  All constitutional violations under the First,[36] Fifth,[37] and Fourteenth Amendment[38] intertwined with civil rights actions are likewise nonjusticiable.  *E.g. Newth v.*

---

[31] *Accord Presley v. Jackson Mun. Airport Auth.*, 94 F. Supp. 2d 755, 761 n.7 (S.D. Miss. 2000) ("The court would note that while the defendant herein is not the United States, but rather the Mississippi Military Department, *Feres* may still be appropriately invoked").

[32] *Watson v. Arkansas Air Nat'l Guard*, 886 F.2d 1004, 1008 (8th Cir. 1989).

[33] *Wright v. Park*, 5 F.3d 586, 588 (1st Cir. 1993); *Knutson v. Wisconsin Air Nat'l Guard*, 995 F.2d 765, 770 (7th Cir. 1993); *Wood v. United States*, 968 F.2d 738, 740 (1992); *Lovell v. Heng*, 890 F.2d 63, 64 (8th Cir. 1989); *Watson v. Arkansas Air Nat'l Guard*, 886 F.2d 1004, 1007 (8th Cir. 1989); *Holdiness v. Stroud*, 808 F.2d 417 424 (5th Cir. 1987); *Crawford v. Texas Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1986); *NeSmith v. Fulton*, 615 F.2d 196, 200 (5th Cir. 1980).

[34] *Wright*, 5 F.3d at 588; *Lovell*, 890 F.2d at 64; *Holdiness*, 808 F.2d at 424; *Crawford*, 794 F.2d at 1036.

[35] *Lovell*, 890 F.2d at 63-65.

[36] *Crawford*, 794 F.2d at 1036.

[37] *Knutson*, 995 F.2d at 769; *Holdiness*, 808 F.2d at 424; *Crawford*, 794 F.2d at 1036; *NeSmith*, 615 F.2d at 202.

[38] *See supra* at nn. 30-37.

*Adjutant General's Dep't of Tex.,* 883 S.W.2d 356, 357-60 (Tex. App. 1994) (National Guard employee's constitutional and state law claims are nonjusticiable).

The refusal of courts to embroil themselves in internal military affairs is not dependent on the relief sought by the plaintiff. Courts have consistently dismissed cases brought by Guardsmen seeking not only damages or back pay[39] but also those seeking equitable relief such as a declaratory judgment, injunction, or reinstatement.[40] Importantly, the absence of a remedy at law or equity is not a relevant factor in the courts' determination not to review cases brought by servicemembers. *Stanley*, 483 U.S. at 683 ("[I]t is irrelevant ...whether the laws currently on the books afford [the plaintiff], or any other particular serviceman, an 'adequate' federal remedy for his injuries").

Further, to the extent a military plaintiff - like COL Bryant - attempts to assert *state law claims* against the Guard, those "claims" are likewise flatly barred by *Feres*, because "[j]udicial review of a claim for damages asserted in the basis of state law would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of claims founded in § 1985, § 1983 and *Bivens*." *Holdiness v. Stroud*, 808 F.2d 417, 426 (5th Cir. 1987). This is true even with respect to statutory whistleblower act claims like the one asserted by COL Bryant. *E.g. Newth v. Adjutant General's Dep't of Tex.*, 883 S.W.2d 356,360 (Tex.

---

[39] *See supra* at nn. 30-37.

App. 1994) ("We conclude that judicial review of a claim for damages based on the Texas Whistleblower Act would constitute no less an unwarranted intrusion into the military personnel structure than the entertainment of *Bivens* actions or claims brought under the Federal Tort Claims Act, 42 U.S.C. sections 1983 and 1985, or the federal whistleblower statute").  In sum, **all** federal, constitutional or state law claims brought by military members – such as COL Bryant – to redress injuries arising out of or incident to service are simply nonjusticiable.

### B.    The Two Alternative *Feres* Tests

*Feres* sets forth two *alternative* standards for applying the nonjusiticiability bar.  In addition to barring claims based on injuries "incident to service," *Feres* also bars claims "where the injuries *arise out of* ...service...."  *Feres*, 340 U.S. at 146 (emphasis added).  The Guard will address each separately.

### C.    All COL Bryant's Alleged Injuries Are Incident to His Service

In determining whether a plaintiff's injuries are incident to service, the Fifth Circuit applies the so-called *Parker* factors:

> We examine the totality of the circumstances to determine whether a serviceman's injury was incident to military service. *Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir. 1980). In particular, we consider: (1) the serviceman's duty status; (2) the site of his injury; and (3) the activity he was performing.

*Schoemer v. U.S.*, 59 F.3d 26, 28 (5th Cir. 1995).   While *Parker* formally enunciated a three-part test, duty status alone may be dispositive, and this Court

---

[40] *See supra* at nn. 30-37.

often does not examine the other prongs, unless the status prong itself is problematic. *See id.* at 28-29 ("We often treat the serviceman's duty status as the most important factor because it indicates the nature of the nexus between the serviceman and the Government at the time of injury").

Here, duty status alone is sufficient to establish that all COL Bryant's alleged injuries are incident to his service, as according to COL Bryant, and dispositive of all his claims against the Guard in his Complaint, ***"[a]t all material times relevant hereto, [he] was a Colonel in the Mississippi Air National Guard, and served as its Commander of Operations, prior to his forced retirement from active military service, on or about June 1, 2004."***  (RE2; R.41) (emphasis added). Further, even a cursory read of his Complaint reveals that all the supposed wrongs forming the basis of his claims against the Guard were supposedly done by military officials in retaliation for his exposure of alleged military problems at the 186th Air Refueling Wing, Mississippi Air National Guard,[41] his former unit.

Here, not only has COL Bryant alleged[42] that: *"[a]t all material times relevant hereto*, [he] was a Colonel in the Mississippi Air National Guard, and

---

[41] As to the site of the alleged injury, COL Bryant repeatedly alleges wrongdoing in connection with official military functions, such as meetings with military superiors or military police. *E.g.*, (RE2; R.50, 52 & 56.)  Further, the activity COL Bryant alleges led to the supposed retaliation was his exposure of putative military wrongdoing.

[42] As explained in detail in the Statement of the Case, only the original Complaint was asserted at the Guard.  The Guard was dismissed before COL Bryant filed his Amended Complaint.

served as its Commander of Operations, prior to his forced retirement from active military service, on or about June 1, 2004[,]"[43] he further has pled that *all* the alleged acts of wrongdoing in his Complaint, allegedly leading to his "forced" retirement, were "based upon ...retaliation and reprisal" for his filing of a military Inspector General complaint while a member of the Guard.[44]  For example:

> 25.    During Plaintiff's deployment to Bosnia-Herzegovina, [then-Major General and Assistant Adjutant General] Cross sought Plaintiff's voluntary separation from the Mississippi Air National Guard to be effective on or about November 1, 1999. Plaintiff was also notified and requested to sign a letter of resignation, which Plaintiff refused to do. Also, <u>while deployed, Plaintiff received notification that he was being relieved of his duties as Director of Operations of the MSANG Headquarters by [then-Major General and Assistant Adjutant General] Cross</u>, which was violative of the Plaintiff's interests, especially during his deployment to a theater of war.

> 26.    In or about July, 1999, <u>Plaintiff [COL Bryant]</u> returned to Key Field Air National Guard Base, and rather than be reinstated to his former position as Director of Operations of the MSANG, he <u>was instead assigned to the position of an officer junior in grade, a lieutenant colonel, and was directed to assist an officer junior to him, a lieutenant colonel who already held the position, all in violation of National Guard Bureau regulations.  Furthermore, the Plaintiff was directed to occupy an "office", which was actually in a "storage room" in the 186th Air Refueling Wing headquarters building, and he was ordered to never report to anyone or perform any duties regarding the Wing's flight operations, even though Plaintiff was a pilot and a Colonel</u>. ...Plaintiff would show and state unto the Court that such conduct has been previously utilized by said Defendants against other former members of the 186th, in order to coerce their resignation or retirement from service.

---

[43] (RE2; R.49) (emphasis added).

[44] (RE2; R.59.)

27.    ... [Then-Major General and Assistant Adjutant General] Cross, with the assistance and input from Weaver and certain named Defendants, including, but not limited to, [Lieutenant Colonels] Knight, Temple and Chalk, composed a career damaging report regarding the Plaintiff, in a effort to adversely affect his military record. Plaintiff would respectfully show unto the Court that such action was taken in retaliation of Plaintiff's previous complaints regarding the operations of the 186th, as set forth herein above.

28.    In or about February 2000, Plaintiff brought his written complaint to the attention of Colonel Roger Shields, the then acting executive officer for the Commander, Mississippi National Guard, Adjutant General George Walker. Approximately one week later, in or about the first week of March, 2000, [then-Major General and Assistant Adjutant General] Cross threatened the Plaintiff with the loss of his career in the MSANG....

....

30.    ...Plaintiff sought a meeting with then Major General George S. Walker, as well as then Mississippi [National Guard Commander in Chief] Governor Ronnie Musgrove, to whom he petitioned for a change in the leadership of the 186th and was supported by written correspondence to both by approximately 80 airmen. As a result, on or about March 22, 2000, Plaintiff met with Walker. Plaintiff sought to provide [Major General] Walker with the same written complaint as had been provided to the acting executive officer, Colonel Roger Shields, in February 2000, but [Major General] Walker refused to accept the written complaint. Instead, [Major General] Walker indicated his displeasure with the actions of the Plaintiff and further indicated that such continued actions of seeking a change in the leadership of the 186th would result in his dismissal from the MSANG.

31.    Unknown at the time to the Plaintiff and without his agreement, Plaintiff was relieved of his duties to the MSANG, on or about March 28, 2000; yet, he remained a member of the United States Air Force. Indeed, on April 6, 2000, Plaintiff attended his mandatory unit drill weekend, *and during this period,* Plaintiff was subjected to assignment to a "storeroom" and was ridiculed by [then-Wing Commander] Weaver and certain Defendants, including, but not limited to, [Lieutenant Colonel] Chalk and [Major] Malta.

38

32.    In or about early April 2000, <u>Plaintiff was **ordered**</u> by Defendant [Lieutenant Colonel] Temple to meet with Defendants [Lieutenant Colonel] Temple and [Major] Malta at the law offices of Bordeaux and Jones in Meridian, Mississippi. <u>At the meeting</u> on or about April 18, 2000, <u>he was **ordered** to sign dismissal paperwork associated with his dismissal from the MSANG</u>. Plaintiff refused.

33.    On or about April 10, 2000, [then-National Guard Commander in Chief] Governor Musgrove corresponded with a retired member of the MSANG, Colonel Robert Soule, who had supported the Plaintiff for the change in leadership of the 186th and who had expressed concerns with the lack of leadership and low morale at the 186th. In said correspondence, [then-National Guard Commander in Chief] Governor Musgrove had indicated that the Plaintiff had purportedly signed an acknowledgment, dated June 8, 1998, that he would be separated from the MSANG, and a copy of this statement was enclosed. This acknowledgment has subsequently been determined to be a forgery by the Inspector General of the United States Air Force (USAF).

....

40.    As a result of the Plaintiff's protected communications with [Adjutant General] Lipscomb and the Inspector General's investigators, ...the Defendants, and each of them, systematically engaged and continue to engage in threats and other intimidation tactics, as set forth herein below, against the Plaintiff, specifically for his having communicated such wrongful conduct to the Inspector General and his personnel. Such conduct on the part of the Defendants, therefore, was taken in reprisal for Plaintiff's having communicated with the Inspector General, such that the Defendants' actions violate 10 U.S.C. Section l034(b)(1) and (2).

42.    Throughout the continuing investigations by the Air Force Inspector General's office, the Defendants, and each of them, continued to engage in threats, violence and other means of intimidation against the Plaintiff, ***strictly for his having engaged in such protected communication with the Inspector General and Adjutants General, Walker and [Adjutant General] Lipscomb, with the MSANG***. Plaintiff would show and state unto the Court that, in addition to those actions previously committed by those certain Defendants named above, the following specific actions of threats,

intimidation, violence, coercion and harm include but are not limited to, the following:

a.    On or about March 3, 2001 [while COL Bryant was in the Air Force Reserve],[45] Plaintiff was met by armed MSANG airmen, when Plaintiff attempted to attend the Minority Awareness Council Meeting....

43.    ***As set forth above, each and every one of these actions by the Defendants, and each of them, was taken as a direct and proximate result of and as a reprisal to or in retaliation of Plaintiff's protected communication and speech with the Inspector General and investigative personnel and with Plaintiff's former commanding officers, General Lipscomb and General Walker***. Indeed, the aforesaid conduct of the Defendants, and each of them....

44.    As a direct and proximate result of the aforesaid actions, ...by the Defendants, and each of them, against the Plaintiff, he was forced into retirement from military service and his career in the armed forces of the United States unjustifiably terminated, on or about June 1, 2004, all based upon the retaliation and acts of reprisal committed by the Defendants, and each of them.

(RE2; R.49-59) (emphasis added).

With respect to the Guard, the above allegations expose the falsity of COL Bryant's assertions in his brief that the alleged "harm [was done] to [COL] Bryant in his personal and private citizen capacity." (Br.App. at 33.)  In fact, by COL Bryant's own admission, he remained a member of the military until his allegedly "[f]orced retirement from active military service, on or about June 1, 200**4**." (RE2; R.41) (emphasis added).  This is important because, excluding his allegations regarding the filing of civil lawsuits - which COL Bryant readily admits in his

---

[45] *See* (RE2; R.40-65 at ¶¶2, 31, 34 & 44.)

Complaint do not involve the Guard[46] - the latest date alleged for putative wrongdoing on the part of *any* Defendant in his original Complaint is June 1, 2004 -- the date on which COL Bryant alleges Defendants somehow caused him to be "unjustifiably terminated" from the United States Air Force Reserve.  (RE2; R.41, 52, 53 & 59.)

Although admitting "the genesis of [COL] Bryant's involvement in the Inspector General's investigation of Appellees/Defendants' conduct lies within the military...[,]" (Br.App. at 8-9), COL Bryant argued below – and suggests here – that **"the actions of the Defendants themselves carried what started out as an intra-military matter into an extra-military matter."**  (RE7; R.281) (emphasis in original).  This argument is nothing more than an attempt to avoid *Feres* through an allegation of continuing tort.  Yet in this Circuit, "[a]llegations of such 'continuing torts' do not escape the application of the *Feres* doctrine."  *Stanley v. Central Intelligence Agency*, 639 F.2d 1146, 1154 (5th Cir. 1981).  With respect to his claims against the Guard, all COL Bryant's alleged injuries are incident to his service and therefore *Feres*-barred.

---

[46] *See* (RE2; R.57) (emphasis added) ("Filing of frivolous lawsuits ...by each of the Defendants, <u>*sans*</u> *MSANG*").

### D.    All COL Bryant's Alleged Injuries Arise Out of His Service

While this Court often applies the *Parker*[47] Factors in order to determine if a servicemember's claims are incident to service, that analysis is not nearly so formal and rigid as COL Bryant suggested to the district court below. Both here and below, COL Bryant implies that unless he was on-orders at any given moment, any putative injury he may have suffered could not have arisen out of or been incident to his military service. However, this Court has rejected just this type of rigid interpretation of *Feres*.

In *Miller v. U.S.*, 42 F.3d 297 (5th Cir. 1995), a United States Naval Academy plebe midshipman sued the government over injuries he sustained during an orientation summer when struck in the head by a laser sailboat boom. *Id.* at 299. The midshipman had volunteered for that duty, was not technically a member of the Navy at the time, and further was not on active duty in the military at the time of his injury. *Id.* at 300. Rejecting a formalistic approach to *Feres* that focuses on a servicemember's orders status at a given snapshot in time, this Court affirmed the district court's dismissal of the plebe midshipman's claims under *Feres*:

> While we do not deny the importance of the service member's duty status, <u>we believe the parties' almost exclusive focus on whether or not Miller was on active military duty at the time of his injuries is entirely too narrow and does not adequately address the most</u>

---

[47] *Parker v. United States*, 611 F.2d 1007, 1013 (5th Cir. 1980).

42

important rationale for the doctrine--the need to exercise a great deal of caution before requiring or allowing the civilian bench and bar to analyze and, in the end, judge military decisions. ...In the end, a court must determine whether an activity is incident to service by "examining the totality of circumstances...." *Id.* at 1013. This examination should address not only *Parker*'s three factors but should take into account the rationale behind the *Parker* test. A review of the various rationale advanced over the years supports our decision to reject an approach which overemphasizes the duty status prong of the *Parker* test and to re-focus the inquiry on whether or not Miller's injuries "ar[ose] out of or [were] in the course of activity incident to service." *Feres*, 340 U.S. at 146 (emphasis added). The history of the doctrine reveals that the question of what activities are "incident to service" has undergone "a rather complex evolution" but that the "overall trend [of the evolution] is unmistakable." *Jackson v. Brigle*, 17 F.3d 280, 282 (9th Cir.), *cert. denied,* 513 U.S. 868 (1994). "The test has been broadly construed to immunize the United States and members of the military from any suit which may 'intrude in military affairs,' 'second-guess[] military decisions,' or 'impair[] military discipline.' " *Id.* (quoting *Stauber v. Cline*, 837 F.2d 395, 398 (9th Cir.), *cert. denied,* 488 U.S. 817 (1988)....

....

**The fact that an injured service member is not on active duty when the injury occurs does not preclude application of the *Feres* doctrine as the parties suggest**. Keeping in mind that "duty status is to be viewed as a continuum from actual active duty at one extreme to discharge at the other," *Adams*, 728 F.2d at 739, **we are not persuaded that "incident to service" necessarily denotes an "active duty" status or even that the service member is currently "in service" in the sense that he or she is actively pursuing the military duties of a soldier at the time of injury**. We therefore reject the parties' attempts to make the dispositive question on this issue whether or not Miller was on active duty.

*Miller*, 42 F.3d at 301-303 (emphasis added) (some citations omitted).

Unlike members of the Active Components, Guardsmen activities often cannot be neatly divided into purely military or civilian spheres. Unless called to

43

state or federal active duty, Guardsmen typically are on military orders for limited periods of time; often necessitating the performance of military-related activities while technically not "on orders."   As informed by *Miller*, *Feres* takes this continuum into account, and cannot be ignored merely because a servicemember may not be "on orders" at any given moment.  Thus:

> This test should not be given as constricted a scope as the parties imply. The Ninth Circuit has recognized that "practically any suit that 'implicates ... military judgments and decisions' runs the risk of colliding with *Feres*." *Persons v. United States*, 925 F.2d 292, 295 (9th Cir. 1991) (emphasis added) (quoting *Johnson*, 481 U.S. at 691).

*Miller*, 42 F.3d at 304-305 (some citations omitted).

The reasoning employed in *Miller* is not new, and should not be surprising in light of *Feres*.  As explained above, this is because *Feres* sets forth two *alternative* standards for applying the nonjusiticiability bar.  In addition to barring injuries which are "incident to service," *Feres* also bars injuries that "*arise out of ...* service....."  *Feres*, 340 U.S. at 146 (emphasis added).

"Arise" means "to originate from a specified source."  *Webster's Third New International Dictionary (Unabridged)* at 117 (1993).  COL Bryant's allegations leave no doubt that **all** his claims "originate" from his military service.

For example, COL Bryant admits that "the genesis of the Plaintiff's involvement in the Inspector General's investigation of Defendants' conduct lies within the military...[,]" (RE7; R.273), that the entirety of this dispute "**started out**

44

**as an intra-military matter...[,]"** (RE7; R.281) (emphasis in original), and that ***all***

the alleged acts of wrongdoing in his Complaint, allegedly leading to his "forced"

retirement, were "based upon ...retaliation and reprisal" for his filing of that

military Inspector General complaint while a member of the Guard.[48]  Thus, COL

Bryant's alleged injuries by his own admission "arise out of" his service and *Feres*

therefore bars them in their entirety.

  **E.**  **Judicial Estoppel Prohibits COL Bryant From Denying the *Feres*-Bar**

   Even if COL Bryant's Complaint and admissions below had not been

enough, the district court had an additional basis on which to find all COL Bryant's

alleged injuries to arise out of his service and to be incident thereto – COL

Bryant's numerous judicial admissions in related litigation.  These matters were

presented to the district court by the Guard, but were not invoked by the district

court in its decision.  Nevertheless, the Guard raises them here, realizing that "the

court of appeals may affirm on grounds raised in the trial court but different than

those relied upon by the district court." *Shocklee v. Massachusetts Mut. Life Ins.*

*Co.*, 369 F.3d 437, 439 (5th Cir. 2004) (citing *Doctor's Hosp. of Jefferson, Inc. v.*

*S.E. Medical Alliance,* 123 F.3d 301, 307 (5th Cir. 1997)).

   *First*, in *Franklin E. Chalk, et. al. v. David J. Bertholf and Joe H. Bryant*;

MSSD, East. Div.; no. 4:03cv267-TSL-AGN, COL Bryant was sued for

---

[48] (RE2; R.59.)

45

defamation concerning radio comments he made about many of the same matters that form the underlying basis for his claims in this Action.  On July 14, 2003, COL Bryant removed the *Chalk* suit to federal court and alleged in his Notice of Removal that:

> On its face, <u>Plaintiffs'</u> [many of whom are Defendants herein] <u>Complaint asserts claims based on [COL Bryant's] activities while in the course and scope of [his] employment as officer[] of the United States Air Force and the Mississippi Air National Guard</u>....  As such, Plaintiffs' claims ...are barred under ...*Feres*..., because ...*Joe H. Bryant, Jr. [was] engaged in activity incident to [his] military service at the time*....

(RE10; R.369) (emphasis added).

Similarly, in his *Chalk* suit answer, COL Bryant *again* alleged that *Feres* barred the claims against him.  (RE10; R.384 & 390.)  Finally, in his remand response, COL Bryant even argued that **all** his actions concerning the matter - *post-Guard service* - were "within the scope and course of his [military] employment...[,]" and part of "an important governmental function..."  (RE10; R.395-96.)  The *Chalk*, *Temple*[49] and *Malta* suits against COL Bryant all involved the same underlying Air Force Inspector General investigation, as well as certain similar alleged wrongdoing by and between COL Bryant and the individual

---

[49] COL Bryant took nearly identical positions regarding the underlying disputes being incident to his service and therefore *Feres*-barred in *Thomas Temple, et. al. v. Joe H. Bryant, Jr.*; MSSD, East. Div.; no. 4:05cv12-TSL-AGN, *see* (RE10; R.403 & 409) and in *F. Gregory Malta v. Joe H. Bryant, Jr.*; MSSD, East. Div.; no. 4:05cv13-TSL-AGN, *see* (RE10; R.417 & 423.)

Defendants in this Action -- some of which allegedly occurred *after* COL Bryant contends he left the Guard on March 28, 2000.[50] *See* (*id.*); *see also* (RE2; R.52.)

Having at least three times filed court papers claiming the underlying disputes in question arose incident to his military service and attempting to cloak himself in the protections of *Feres*, it should go without saying that COL Bryant is now judicially estopped from contending otherwise.  As this Court has held:

> Statements made in a previous suit by an attorney before the court can be imputed to a party and subject to judicial estoppel. ...Here, Hall's attorney made the statements to the court in the pleadings, his own motions, in response to Woods' motions, and at the pretrial hearing. This Circuit has indicated that the doctrine applies to more than just sworn statements of a party and likewise has never specifically stated that it applies only to a party's sworn statements....
>
> Hall also argues that cases applying judicial estoppel to statements made by a party's attorney only involve circumstances where the attorney made a "concession." However, there is no such "concession" requirement that must be met before applying judicial estoppel based on the statements of a party's attorney.  ... Further, Hall's attempt to assert that GE is the manufacturer is contrary to the "general principles of judicial estoppel" which state "a party cannot advance one argument and then, for convenience or gamesmanship after that argument has served its purpose, advance a different and inconsistent argument." *Hotard v. State Farm Fire & Cas. Co.*, 286 F.3d 814, 818 (5th Cir. 2002).

*Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396-397 (5th Cir. 2003) (emphasis added) (some citations omitted).  Based on *Hall*, even if the Rules did not prohibit COL Bryant from running from the allegations of his own Complaint,

---

[50] Although he contends he had left the Guard by this date, COL Bryant admits he remained a member of the military through the Air Force Reserve, until June 1, 2004.  *See* (RE2; R.41, 52, 53 & 59.)

COL Bryant would be judicially estopped from denying a *Feres*-bar of his claims against the Guard in this Action.[51]

## IV.   *MINDES* **AND** *MEISTER* **BAR ALL BRYANT'S CLAIMS AGAINST THE GUARD**

As an alternative basis for dismissal below, the Guard invoked *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971), as reaffirmed and expanded by *Meister v. Texas Adjutant General's Dept.*, 233 F.3d 332, 339 (5th Cir. 2000), *r'hng denied* 247 F.3d 243, *cert. denied* 523 U.S. 1052 (2001).[52] Finding *Will*, the Eleventh Amendment and the *Feres* Doctrine each independently case-dispositive, the district court found it unnecessary to invoke *Mindes* and *Meister* – and they are not cited in the opinion dismissing COL Bryant's claims against the Guard.  Again recognizing; however, that "court of appeals may affirm on grounds raised in the trial court but different than those relied upon by the district court[,]" *Shocklee*,

---

[51] Below, COL Bryant contended that "[t]his very [district] Court adjudicated that the claims presented in those cases [*Chalk* suit] were not 'incident to service'...."  (RE7; R.283.)  Yet in *Chalk*, the district court merely found that for purposes of the claims *against COL Bryant*, his actions in calling in to a radio show and commenting on the I.G. report were not in the course and scope of his military employment so as to entitle him to Westfall Act substitution.  (03/31/04 Mem. Op. and Order, [13] in 4:03cv267-TSL-AGN.)  That finding is inapposite to the issue of whether COL Bryant's claims asserted against the *Defendants* herein arose from or incident to COL Bryant's service.

[52] In *Meister*, this Court found that *Mindes* has continuing viability as to claims that - although not incident to service and therefore *Feres*-barred - are still related enough to military decision-making that the courts should not adjudicate them:

It is true that *Stanley* blocks claims brought by servicemen incident to their military service, which therefore preempts *Mindes* with respect to such claims. But claims still fall within *Mindes* that *Stanley* does not encompass--those involving "internal military decisions" that are not "incident to [a serviceman's] military service."

369 F.3d at 439, the Guard merely notes its argument and authorities submitted on this issue below, (RE4; R.125-26, 128-30 & RE11; 450-52) and further notes that *Mindes*, *Meister* and COL Bryant's abject failure to exhaust his military administrative remedies with the Air Force Board for Correction of Military Records before suing the Guard, *see* (*id.*), are additional bases for affirmance.[53]

## V.    TO THE EXTENT ANY OF BRYANT'S CLAIMS AGAINST DEFENDANTS ARE NOT *FERES* AND/OR *MINDES* BARRED – BRYANT HAS ADMITTED THAT THE GUARD HAS NO VICARIOUS LIABILITY FOR THOSE CLAIMS

According to COL Bryant, "while the history of this case has its genesis in the military, the facts developed …establish that the wrongful conduct of the Appellees/Defendants carried over into extra-military wrongs." (Br.App. at 4.) COL Bryant recounts various alleged acts of wrongdoing against him, including: assault; gun shots at his home; harassing telephone calls; sabotage of his airplane; vandalism of his vehicle; and scandalous letters to the FAA and TSA. (Br.App. at 7.) He then attempts to escape *Feres* by arguing that "the harm being perpetrated against Bryant is in his civilian capacity…." (Br.App. at 8.) Continuing his effort to escape *Feres*, COL Bryant further argues that this alleged misconduct could not

_____

*Meister*, 233 F.3d at 341.

[53] One of the threshold *Mindes* justiciability requirements is "Exhaustion of intra-service measures." *Meister*, 233 F.3d at 339 (citing *Mindes*, 453 F.2d at 201). Bryant could have – but did not – sought relief from the Air Force Board for the Correction of Military Records ("AFBCMR"), which is specifically designed to consider claims of servicemembers such as those asserted by COL Bryant. *See* 10 U.S.C. § 1552(a). "In this circuit, exhaustion is a prerequisite to judicial review of [Guardsman] grievances" under *Mindes*." *Crawford v. Texas*

have "had anything to do with 'internal military decisions[,]'" (Br.App. at 35), rendering *Feres*, *Meister* and *Mindes* no obstacle to his claims.

COL Bryant made the same argument below, contending that at least some of the acts and omissions over which he is suing were allegedly done by Guard personnel acting in their *personal*, non-military capacities, and outside of the course and scope of their military duties. For example, COL Bryant contended that:

> [A]s set forth herein, <u>this case</u> does not seek to have this Court override military decisions, but it is <u>rather brought in order to have this Court address</u> the above violence and <u>continuing acts</u> of threats and intimidation <u>against the Plaintiff by individuals, who just so happen to also be in the military but who act for no military purpose or reason</u>; rather, they act for their own hatred against the Plaintiff. <u>Their actions occur off-base, have no justifiable military purpose, are perpetrated strictly for personal reasons</u>....
>
> ....
>
> [T]he Complaint points to specific allegations of unmitigated violence, threats and intimidate against the Plaintiff. <u>No where ...is it found that these actions are service-related</u>....
>
> ....
>
> [T]he Defendants have not even argued or stated frankly to this Court how repeated gun shots, harassing telephone calls, physical assault and battery, the filing of frivolous law suits, the falsification of medical information to the FAA, the interference with Plaintiff's employment at FedEx, the issuance of false and defamatory statements, invoking the investigatory authority of the TSA, the cutting of the gasoline line on Plaintiff's vehicle, the shooting out of windows to Plaintiff's motor home, and the slashing of tires on Plaintiff's airplane, have anything to do with military functions.

---

*Army Nat'l Guard*, 794 F.2d 1034, 1036 (5th Cir. 1980).

...[T]he actions of the Defendants themselves carried what started out as an intra-military matter into an extra-military matter.

....

[The individual Defendants' herein] actions were not in the course and scope of their military employment....

....

Surely, the Defendants in their motion did not contend that their violence against the Plaintiff is "incident to *their* military service," since to do so would be akin to the military declaring war against its own personnel and civilians.

(RE7; R.278-81, 283 & 285) (emphasis added).

As the Guard pointed out below – while apparently intended to address

*Feres* – COL Bryant's argument confuses two separate and distinct issues:

(1)    whether *COL Bryant's* alleged injuries are incident to or arose out of *his* military service;

### with the separate issue of,

(2)    whether the individual Defendants, or some other non-Defendant Guard personnel, by whose acts COL Bryant seeks to impose vicarious liability on the Guard, were acting within the course and scope of *their* military duties at the time the alleged harm was supposedly perpetrated.

This distinction is an important one, as the first issue is relevant to whether

COL Bryant's claims against the Guard (and other Defendants) are *Feres*-barred.

The second issue, however, is relevant solely to whether or not the *individual*

Defendants or some as-of-yet-named Guard personnel are or are not entitled to

51

Westfall Act[54] and Federal Tort Claims Act[55] protections -- which is a question *independent* of the *Feres* analysis at issue here.

Eventhough COL Bryant's contention that at least part of his claims are based on acts by the *individual* Defendants or other Guard personnel on out-of-scope personal missions is not relevant to the a proper *Feres*-analysis – which focuses on the *Plaintiff*, not the Defendants – COL Bryant's contention is relevant for a different reason. By admitting that he is seeking to hold the Guard vicariously liable for **out**-of-scope, off-duty, personal mission-type, acts and omissions by its personnel, COL Bryant has further cleared the deck for a *Feres*-bar to extinguish all of his claims against the *Guard*.

The Guard, as an entity, can only act through its personnel. As a result, all COL Bryant's claims against the Guard in this Action rest vicariously on the alleged acts and omissions of various Guard personnel, many, if not all of whom

---

[54] *See* 28 U.S.C. § 2679(d)(1) ("Westfall Act") ("Upon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose, any civil action or proceeding commenced upon such claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant").

[55] The Federal Tort Claims Act applies to tort claims against National Guardsmen who are on military orders at the time of an alleged incident. *See* 28 U.S.C. § 2671 (emphasis added) (for purposes of FTCA protections, "Employee of the government" includes (1) officers or employees of any federal agency, members of the military or naval forces of the United States, members of the National Guard while engaged in training or duty under section 115, 316, 502, 503, 504, or 505 of title 32, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation").

have been named as individual Defendants in this Action. To be sure, the Guard certainly does <u>not</u> concede that any Guard personnel committed any wrongful act towards COL Bryant, whether in or out of the scope of their military duties. However, as "[a]n employer is [only] liable for the torts of his employee only when they are committed within the scope of employment[,]" *Adams v. Cinemark USA, Inc.*, 831 So.2d 1156, 1159 (Miss. 2002), ***if*** Guard personnel were - *as COL Bryant contends* - outside of military scope, the Guard can have no liability for their actions.

As the United States Supreme Court has plainly held:

> The tortious conduct of an off-duty serviceman, not acting within the course and scope of his office or employment, does not in itself give rise to Government liability whether the conduct is intentional or merely negligent.

*Sheridan v. United States*, 487 U.S. 392, 401 (1988).

The district court readily recognized that – by his own contentions – COL Bryant has admitted the Guard has no vicarous liability for this alleged wrongdoing:

> Notable here with respect to MSANG's position that Bryant's claims are barred by the *Feres* doctrine is the fact that while MSANG has broadly argued that all Bryant's claims *against it* are subject to *Feres,* its argument proceeds from the premise that all of Bryant's claims *against it* are related exclusively to employment/personnel issues, such as demeaning grade, work and space assignments, an alleged career-damaging evaluation and his "forced retirement." Indeed, MSANG's initial brief contained no specific acknowledgment of plaintiff's factual allegations of intentional threats, vandalism and

violence to which he claims he was subjected by "defendants," but rather focused solely on the military nature of the alleged "personnel decisions" concerning Bryant.

Conversely, in his response to the motion, <u>Bryant has himself sidestepped MSANG's arguments as to the military character of the referenced employment-related allegations of the complaint, and focused instead entirely on his allegations of intentional threats, vandalism and violence by the individual defendants, which he submits were committed "by individuals, who just so happen to also be in the military but who act for no military purpose or reason [but] rather ... for their own hatred against the Plaintiff."</u>

In the court's opinion, it cannot reasonably be questioned that Bryant's allegations against MSANG (and for that matter, against all the defendants) relating to his employment are subject to the *Feres* bar. Bryant, in fact, does not actually contend otherwise.

Whether Bryant's claims based on his remaining allegations of misdeeds by "defendants" would be covered by *Feres* and its progeny is another matter, however. <u>In the court's opinion, in light of plaintiff's contention that the individual defendants perpetrated these alleged threats and acts of vandalism and violence, and other acts of attempted interference with his civilian employment with FedEx on their own, for their own personal reasons and with no arguable military purpose, it follows that MSANG can have no liability of any sort based on such alleged wrongful acts.</u> *See Sheridan v. United States*, 487 U.S. 392, 401, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988) ("The tortious conduct of an off-duty serviceman, not acting within the course and scope of his office or employment, does not in itself give rise to Government liability whether the conduct is intentional or merely negligent").

(RE12; R.528-31.)

Thus, to the extent any of COL Bryant's claims against the Guard are not *Feres*, *Mindes* or *Meister*-barred, they are nonetheless barred by COL Bryant's dispositive admissions below that the entirety of the allegedly extra-military conduct over which he has supposedly asserted claims, was the result of "threats

54

and intimidation against the Plaintiff by individuals, who just so happen to also be in the military but who act[ed] for no military purpose or reason; …[who had] no justifiable military purpose, [who] perpetrated [these alleged acts] strictly for personal reasons[,] and [whose] actions were not in the course and scope of their military employment....   (RE7; R.278-80 & 83.)  Given these admissions, under *Sheridan*, 487 U.S. at 401, the district court's decision should be affirmed.

## VI.   THE DISMISSAL OF COL BRYANT'S MISSISSIPPI WHISTLEBLOWER PROTECTION ACT CLAIM SHOULD BE AFFIRMED

Although COL Bryant's Brief addresses numerous "Pendent State Law Claims," (Br.App. at 51-56), it is important to point out again that the *only* state law claim asserted against the Guard in COL Bryant's original Complaint was under the MSWPA.   (RE2; R.62-63.)   COL Bryant's supposed claims for: infliction of emotional distress; defamation; false light privacy violation; tortious interference; and assault and battery are not asserted against the Guard.   (RE2; R.40-65.)  Rather, all those putative causes of action were added by COL Bryant when he amended his Complaint on December 21, 2005, (R.760-795), long after the district court had dismissed all claims against the Guard on August 26, 2005.[56] (RE12; R.518-32.)  Accordingly, the only state law claim at issue in this appeal *with respect to the Guard* is COL Bryant's MSWPA claim.

---

[56] *See supra* at Statement of the Case for a procedural history of the Guard's dismissal and Bryant's post-dismissal of the Guard, amendment of his Complaint.

COL Bryant has attempted to have it both ways with his MSWPA claim. In his Complaint, COL Bryant clearly pleaded a private right of action under the statute, as the very first Count of his Complaint states:

<u>COUNT I</u>

48. The Defendants, and each of them, have violated the terms and provisions of the aforesaid Military Whistleblower Protection Act, 10 U.S.C. § 1034, by engaging in the aforesaid wrongful conduct, including the perpetration of threats, intimidation, violence and harm against the Plaintiff.

49. **As a direct and proximate result of said violations** and wrongful conduct, **the Plaintiff has suffered and incurred** actual and compensatory, incidental and consequential, **damages**, *for which the Defendants*, and each of them *are liable*.

(RE2; R.59-60) (emphasis added).

However, when the Guard exposed in its brief (RE4; R.188-89), the facts that: (1) the MWPA provides no private right of action for damages; and (2) its sole remedies are administrative, *Soeken v. U.S.*, 47 Fed. Cl. 430, 433 (Fed. Cl. 2000); *see also Gant v. U.S.*, 63 Fed. Cl. 311, 316 (Fed. Cl. 2004), COL Bryant back-tracked and curiously contended that:

Make no mistake, the point of Plaintiff's claims under 10 U.S.C. § 1034 [Military Whistleblower Protection Act] is not for a private cause of action under that statute; rather, Plaintiff contends his right to proceed with constitutional claims under the First Amendment and that his speech to the Inspector General are indeed "protected communication" under the military's own statutory and regulatory guidelines.

56

(RE7; R.281.)  Despite this disclaimer, the district court found that COL Bryant "clearly did plead a claim for violation of the [MSWPA]" and went on to dismiss it for failure to state a claim.  (RE12; R.522-23 & 523 n.5.)

Now, on appeal, COL Bryant is again hedging over whether or not he is requesting a reversal of that decision.  For example, he continues to reference certain communications at issue in his Complaint as "protected communication, in accordance with 10 U.S.C. [§] 1034."  (Br.App. at 21); *see* (Br.App. at 32) ("[t]hese expressions [are] protected under the [MSWPA]").  However, he then states that "[m]ake no mistake, the point of [COL Bryant's] claims under 10 U.S.C. Section 1034 is not for a private right of action under that statute; rather, COL Bryant contends his right to proceed with constitutional claims under the First Amendment and that his speech to the Inspector General are indeed 'protected communication' under the military's own statutory and regulatory guideless").  (Br.App. at 39.)

Whatever his intent on this issue, it does not matter.  Every court to have considered the issue has found the MSWPA to grant no private right of action.  Accordingly, dismissal of this claim should be affirmed.

## ARGUMENT OF CROSS-APPELLANT

**I.    COL BRYANT AND HIS COUNSEL WERE WELL FAMILIAR WITH *FERES* DOCTRINE BEFORE SUING THE GUARD ON NONJUSTICIABLE CLAIMS AND FURTHER KNEW THE GUARD WAS A STATE ENTITY – YET SUED IT IN FEDERAL COURT FOR DAMAGES NONETHELESS**

**A.    COL Bryant's Repeated Invocation of *Feres* Prior to Suing the Guard**

Prior to filing suit against the Guard on March 17, 2005, COL Bryant and his counsel filed multiple notices of removal and answers in suits against him in which he invoked the *Feres* Doctrine with respect to many of the same underlying matters at issue in this suit.

For example, in *Franklin E. Chalk, et. al. v. David J. Bertholf and Joe H. Bryan*; MSSD, East. Div.; no. 4:03cv267-TSL-AGN, COL Bryant was sued for defamation concerning radio comments he made about many of the same matters that form the underlying basis for his claims in this Action.  On July 14, 2003, COL Bryant removed the *Chalk* suit to federal court and alleged in his Notice of Removal that:

> On its face, <u>Plaintiffs'</u> [many of whom are Defendants herein] <u>Complaint asserts claims based on [COL Bryant's] activities while in the course and scope of [his] employment as officer[] of the United States Air Force and the Mississippi Air National Guard</u>....  As such, Plaintiffs' claims ...are barred under ...*Feres*..., because ...*Joe H. Bryant, Jr. [was] engaged in activity incident to [his] military service at the time*....

(RE10; R.369) (emphasis added).

58

Similarly, in his *Chalk* suit answer, COL Bryant *again* alleged that *Feres* barred the claims against him.  (RE10; R.384 & 390.)  Finally, in his remand response, COL Bryant even argued that **all** his actions concerning the matter - *post-Guard service* - were "within the scope and course of his [military] employment...[,]" and part of "an important governmental function...."  (RE10; R.395-96.)  The *Chalk*, *Temple*[57] and *Malta* suits against COL Bryant all involved the same underlying Air Force Inspector General investigation, as well as certain related wrongdoing by and between COL Bryant and the individual Defendants in this Action – some of which allegedly occurred *after* COL Bryant contends he left the Guard on March 28, 2000.[58]  *See* (*id.*); *see also* (RE2; R.52.)

The record reflects that ***all*** these filings by COL Bryant took place *before* he sued the Guard over the same underlying matters that he had *previously* alleged to be nonjusticiable under the *Feres* Doctrine.  He and his counsel's conduct with respect to the Guard's Eleventh Amendment immunity is little better.

---

[57] COL Bryant took nearly identical positions regarding the underlying disputes being incident to his service and therefore *Feres*-barred in *Thomas Temple, et. al. v. Joe H. Bryant, Jr.*; MSSD, East. Div.; no. 4:05cv12-TSL-AGN, *see* (RE10; R.403 & 409) and in *F. Gregory Malta v. Joe H. Bryant, Jr.*; MSSD, East. Div.; no. 4:05cv13-TSL-AGN, *see* (RE10; R.417 & 423.)

[58] Although he contends he had left the Guard by this date, COL Bryant admits he remained a member of the military through the Air Force Reserve, until June 1, 2004.  *See* (RE2; R.41, 52, 53 & 59.)

**B.    COL Bryant and His Counsel Knew the Guard Was a State Entity, Both Before and After Filing This Suit**

While COL Bryant apparently did not explicitly plead the Eleventh Amendment in his answers in the above-cited litigation, he did generally plead constitutional immunities. *E.g.*, (RE10; R.383 & 389.) However, there can be no legitimate doubt that he knew he was suing a state entity when he filed this suit on March 17, 2005. (RE2; R.40-65.)

In his original Complaint, Bryant affirmatively alleged:

> Defendant, Military Department of the State of Mississippi, acting by and through its Mississippi Air National Guard, …is a public militia of the State of Mississippi….

(RE2; R.42.)

He further asserted a claim against the Guard under the Mississippi Whistleblower Protection Act, Miss. Code Ann. §§ 25-9-171 through 25-9-177 (1972), (RE2; R.62-63), which only permits claims against a "board, commission, department, office or other agency of the state or a political subdivision *of the state* [of Mississippi]." Miss. Code Ann. § 25-9-171 (1972) (emphasis added). Then, in response to the Guard's Motion to Dismiss (RE3; R.95-102), COL Bryant conceded that the Guard is an "admitted state agency." (RE7; R.287.) Despite these facts, he sued the Guard in federal court and sought damages – in blatant disregard of the Eleventh Amendment. (RE2; R.63-64.)

60

## II.    THE GUARD MADE ITS LEGAL POSITION CLEAR BY MOTION TO DISMISS WELL BEFORE SEEKING SANCTIONS

"A signatory violates Rule 11 if he fails to conduct a reasonable inquiry into the law and facts underlying his motion." *Walker v. City of Bogalusa*, 168 F.3d 237, 241 (5th Cir. 1999). Here, even cursory research would have readily revealed to COL Bryant and his counsel that his claims against the Guard are barred by *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989), the Eleventh Amendment and *Feres/Mindes*.

Further, it bears mention that the Guard did not file its sanctions motion (RE5; R.215-44), until some 25-days *after* COL Bryant and his counsel were served with the Guard's Motion to Dismiss and supporting memorandum (RE3-4; R.95-192), which informed them in detail of the applicable law. Additionally, the Guard had previously complied with the Fed. R. Civ. P. 11 safeharbor provisions (RE5; R.216 & 223-44), and *yet again* put COL Bryant and his counsel on notice that the claims were baseless. Despite *repeated* actual notice of the frivolity of COL Bryant's claims against the Guard, he refused to dismiss and has continued to prosecute this claims to this date – for over three years.

## III.    COL BRYANT'S CONTINUED PROSECUTION OF HIS CLAIMS AGAINST THE GUARD AFTER NOTICE OF THE GUARD'S DEFENSES AND IMMUNITY JUSTIFIES SANCTIONS

Analyzing an analogous situation in which a plaintiff failed to dismiss after a defendant's Eleventh Amendment immunity was made clear by motion, the

Seventh Circuit found:

> Pursuant to the rule, counsel for the State's Attorney's Office served Cerda with its proposed motion for sanctions and the supporting memorandum of law on November 26, 1997. It was only after Cerda failed to take any corrective action within this 21-day period that the motion for sanctions was filed with the court. It seems evident from the record that Cerda could have avoided any sanctions despite his seemingly inadequate pre-filing inquiry if he had simply voluntarily dismissed the State's Attorney's Office within this 21-day period. He has offered no reason why he failed to take advantage of the 21-day period for corrective action, nor for why he failed to file a motion to voluntarily dismiss the Office after the Eleventh Amendment argument was made clear to him.... Accordingly, we are of the opinion that the district court did not abuse its discretion in sanctioning Cerda for his failure to conduct an adequate pre-filing inquiry and for his failure to dismiss the State's Attorney's Office after he was made aware that the claims against them were meritless [under the Eleventh Amendment].

*Hernandez v. Joliet Police Dept.*, 197 F.3d 256, 265 (7th Cir. 1999) (emphasis

added).

> In another similar situation, the Seventh Circuit likewise held:

> We come last to the issue of sanctions. The appeal, as we have said, is frivolous; but so was the suit. ...[B]ecause, whatever the possible merit of the suit, it should have been obvious to any lawyer that relief was barred on multiple grounds, including res judicata, the Eleventh Amendment, judicial estoppel, and qualified immunity. So clear is this that we think it was unreasonable for the district court to deny relief under Rule 11. That denial is reversed and the matter returned to the district court for the assessment of a proper sanction....

*Bethesda Lutheran Homes and Services, Inc. v. Born*, 238 F.3d 853, 859 (7th Cir.

2001) (Posner, J.) (emphasis added).[59]

---

[59] *Accord Cohen v. Bane*, 853 F.Supp. 620, 630 (E.D. N.Y. 1994) ("Here, Plaintiffs' attorney could easily have determined the likely success by examining the case law and

COL Bryant and his counsel had a duty under Rule 11 and the Mississippi Litigation Accountability Act, Miss. Code Ann. §§ 11-55-1 through 11-55-15 (1972), not to file a suit they knew was barred by law.  COL Bryant's counsel further had a duty under 28 U.S.C. § 1927 not to multiply these proceedings, by contining to prosecute it after demand was made for voluntary dismissal.  As this Court has found:

> Section 1927 provides that "[a]ny attorney ...who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The adverbs being in the conjunctive, sanctions under § 1927 must be predicated on actions that are both "unreasonable" *and* "vexatious." *See Travelers Ins. Co. v. St. Jude Hosp., Inc.,* 38 F.3d 1414, 1416-17 (5th Cir.1994). This requires that there be evidence of bad faith, improper motive, or reckless disregard of the duty owed to the court. *See id.; Baulch v. Johns,* 70 F.3d 813, 817 (5th Cir.1995).
>
> ….
> …The [district] court found that Crampton deliberately kept her meritless case alive for no purpose other than to force GM to settle or to defend it….
>
> ….
> Crampton was not content to allow her suit to die on the vine. Rather, she kept it alive, hoping to extort a nuisance-value settlement. In so doing, she abused the judicial process to harass an apparently innocent defendant into paying money to which her client had no rightful

considering the fact that many of the claims were barred by res judicata, the Eleventh Amendment, and immunity. ...Accordingly, the Court hereby orders Plaintiffs' attorneys to pay the costs of this motion to the Attorney General's office"); *Miles v. State of Ga. Dept. of Revenue,*143 F.R.D. 302, 304-305 (S.D. Ga. 1992) ("[M]inimal research would have revealed the extension of the Eleventh Amendment by the Supreme Court of the United States. Since plaintiffs' attorney failed to make a reasonable inquiry into the fairly straightforward and well-established legal issues surrounding this case, Rule 11 sanctions are appropriate"); *Hidahl v. Gilpin County Dept. of Social Services*, 699 F.Supp. 846, 849-50 (D.Colo. 1988) (awarding sanctions due to plaintiffs' filing suit clearly barred by the Eleventh Amendment).

claim. Her deliberate acts bespeak not negligence, but bad faith: the willful continuation of a suit known to be meritless…. The district court did not abuse its discretion in concluding that Crampton unreasonably and vexatiously multiplied the proceedings by keeping Edward's suit alive….

*Edwards v. General Motors Corp.*, 153 F.3d 242, 246-47 (5th Cir. 1998).

Here, it is important to mention that one of COL Bryant's counsel, Wayne Ferrell, is a retired Lieutenant Colonel from the Mississippi Air National Guard – who graduated from both the United States Army's Judge Advocate Officer Basic and Advanced Courses.[60]  In light of that fact, it is beyond dispute that he knew of the Guard's state status, Eleventh Amendment immunity and *Feres*-protections at the time COL Bryant filed this Action and at all times thereafter.  When one couples this fact with COL Bryant's numerous prior invocations of *Feres* in connection with many of the same underlying alleged events, COL Bryant and his counsel's conduct in prosecuting this suit is exposed as especially outrageous.

## CONCLUSION

It is beyond cavil that COL Bryant's alleged injuries over which he has sued the Guard arose out of or were in the course of activity incident to his Mississippi Air National Guard service, and COL Bryant improperly sought to draw the trial court into examining the motivations and animus of the various military superiors involved.  However, "[i]t would be difficult to think of a clearer example of the

---

[60]    *See* LTC (Ret.) Ferrell's Web Site at http://www.airlawonline.com/military_service.html.

64

type of governmental action that was intended by the Constitution to be left to the political branches directly responsible ... [or] to conceive of an area of governmental activity in which the courts have less competence." *Farmer v. Mabus*, 940 F.2d 921, 923 (5th Cir. 1991), *cert. denied*, 112 S.Ct 935 (1992) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)).  Accordingly, for this and the other reasons set forth above, including the Guard's Eleventh Amendment immunity – a fundamental principle of our federal system – the judgment of the district court dismissing all COL Bryant's claims against the Guard should be affirmed.

With respect to the Guard's cross-appeal, the August 26, 2005 Order denying the Guard's sanctions motion, merely found that "[w]hile the court has concluded that MSANG is entitled to be dimissed from this action, the court is not persuaded that Bryant's complaint against MSANG was frivolous."  (RE12; R.531-32 n.12.) With due respect to the trial court below, how can COL Bryant's Complaint against the Guard not be frivolous, given the law and his repeated prior filings arguing that claims based on much of the same underlying matters as the ones he has asserted here are *Feres*-barred?  Further, his team of experienced lawyers is certainly familiar with the Eleventh Amendment; yet despite this bedrock principle of federal constitutional law, they filed suit against an "admitted state agency[,]" (RE7; R.287), in federal court, seeking damages.  (RE2; R.63-64.)

65

Here, both COL Bryant and his counsel's original and continued prosecution of his claims against the Guard is without any justification and in bad faith. Accordingly, the Guard respectfully submits that its sanctions motion should have been granted and that the district court abused its discretion by declining to do so.

The Guard prays that this Court will affirm the dismissal of all claims against it, rule in its favor on the cross-appeal, reverse the trial court's denial of its sanctions motion and remand only that portion of this case to the district court for further proceedings, for the limited purpose of determining the appropriate amount of sanctions to be awarded. The Guard prays for such further, alternative or supplemental relief as may be appropriate in the premises.

THIS the 11th day of June, 2009.

Respectfully submitted,

MISSISSIPPI NATIONAL GUARD

_____
E. Barney Robinson III (MSB #09432)
LTC, JA, MSARNG
Deputy Staff Judge Advocate

OF COUNSEL:

Joint Force Headquarters
Office of the Staff Judge Advocate
MISSISSIPPI NATIONAL GUARD
Post Office Box 22567
Regions Plaza, Ste. 1700
210 East Capitol Street (39201)
Jackson, MS 39225-2567
(P) (601) 985-4525
(F) (601) 985-4500
(E) barney.robinson@butlersnow.com

## <u>CERTIFICATE OF SERVICE</u>

I, LTC E. Barney Robinson III, Deputy Staff Judge Advocate and counsel

for the Mississippi National Guard, do certify that I have this day caused a true and

correct copy of the foregoing instrument to be delivered to the following, via First

Class United States Mail and e-mail:

Paul A. Koerber, Esquire
Koerber Law Firm, PLLC
Post Office Box 12805
Jackson, MS  39236-2805
(E) psaklaw@aol.com

Wayne E. Ferrell Jr., Esquire
Attorney at Law
Post Office Box 24448
Jackson, MS 39225-4448
(E) wferrell@airlawonline.com

ATTORNEYS FOR APPELLANT/CROSS-APPELLEE/PLAINTIFF
COL JOE H. BRYANT, JR.

Jay Max Kilpatrick, Esquire
Robert L. Wells, Esquire
YOUNG, WILLIAMS, HENDERSON & FUSELIER
P.O. Box 23059
Jackson, MS 39225-3059
(E) rwells@youngwilliams.com
(E) jay.kilpatrick@youngwilliams.com

ATTORNEYS FOR APPELLEES/DEFENDANTS FRANKLIN E.
CHALK, FREDERICK D. FEINSTEIN, ROY A.GRAHAM, BILLY JOE
GRESSETT, DONALD E. JONES, LANGOFRD L. KNIGHT, WILLIAM
F. PARTEN, ROBERT E. PIERCE, ROGER E. SHIRLEY, CHARLES F.
STEED, AARON K. WILSON, LESLIE WILKES AND THOMAS
TEMPLE

68

LTC F. Gregory Malta
919 Prairie Street
Houston, TX 77002
(E) greg.malta@msjack.ang.af.mil

APPELLEE/DEFENDANT PRO SE

THIS the 11th day of June, 2009.

_____
E. BARNEY ROBINSON III

**APPENDIX A**

## CERTIFICATE OF COMPLIANCE

Pursuant to Fifth Cir. R. 32.2 and 32.3, the undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6).

1.    Exclusive of the exempted portions in Fifth Cir. R. 32.2, the brief contains 15,008 words.  If the 187 words in the chart contained in the Appendix are also counted, the sum total is 15,195.

2.    The brief has been prepared in proportionally spaced typeface using Microsoft Word Version 2002 SP3 in 14 point Regular Times New Roman font, with footnotes in 12 point font.

3.    The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in Fed. R. App. P. 32(a)(7), the typeface requirements of Fed. R. App. P. 32(a)(5) or the type-style requirements of Fed. R. App. P. 32(a)(6), may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

Dated:  June 11, 2009.

_____
E. Barney Robinson III (MSB #09432)
LTC, JA, MSARNG
Deputy Staff Judge Advocate

72

OF COUNSEL:

Joint Force Headquarters
Office of the Staff Judge Advocate
MISSISSIPPI NATIONAL GUARD
Post Office Box 22567
Regions Plaza, Ste. 1700
210 East Capitol Street (39201)
Jackson, MS 39225-2567
(P) (601) 985-4525
(F) (601) 985-4500
(E) barney.robinson@butlersnow.com

Jackson 4041215v.4



**STATE**

**FEDERAL**

GOVERNOR OF MISSISSIPPI

Miss. Const.. art. IX, § 217
Miss. Const. art V, § 119

PRESIDENT

U.S. Const. art. II, § 2

ADJUTANT GENERAL

Miss. Code Ann. § 33-3-11
32 U.S.C. § 314

MISSISSIPPI MILITIA

Miss. Code Ann. § 33-5-1
Miss. Const. art. IX, § 214
Miss. Code Ann. § 33-5-1
U.S. Const., art. I, § 8, cls. 15 & 16

ARMY

10 U.S.C. § 3062 (b)-(d)

AIR FORCE

10 U.S.C. § 8062 (b)-(d)

32 U.S.C. § 101 (4)
10 U.S.C. § 101(c)(2)
Miss Code Ann. § 33-7-1

**When in Service of U.S.**
**(Impression Through Call)**

U.S. Const. art II, § 2
U.S. Const. art I, § 8 cls. 15 & 16
10 U.S.C. §§ 331-333
10 U.S.C. §§ 12406-12407

UNORGANIZED MILITIA

MISSISSIPPI STATE GUARD

MISSISSIPPI NATIONAL GUARD

Miss. Code Ann. § 33-5-1

Miss. Code Ann. § 33-5-51

UNIT

ORGANIZATION

10 U.S.C. § 10105

NATIONAL GUARD UNITED STATES (Shell)

REGULAR ARMY/AF

ARMY RESERVE AF RESERVE

32 U.S.C. § 104
AR 310-25
NGR 10-1
Miss. Code Ann. § 33-7-1(b)

UNIT UNIT

10 U.S.C. § 12404
10 U.S.C. § 12301

UNITS AND ORGANIZATIONS OF NATIONAL GUARD (Shell)

MEMBERS OF NATIONAL GUARD WITH FEDERAL RECOGNITION (Shell)

Soldiers

32 U.S.C. § 325, 10 U.S.C. § 12401
10 U.S.C. §§ 12401-12403