UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

Case No. 09-60182

_____

JOE H. BRYANT, JR.,

Plaintiff-Appellant-Cross Appellee

v.

MILITARY DEPARTMENT OF THE STATE OF MISSISSIPPI;

Defendant-Appellee-Cross Appellant

and

FRANKLIN E. CHALK; FREDERICK D. FEINSTEIN; ROY A. GRAHAM;
BILLY JOE GRESSETT; DONALD E. JONES; LANGFORD L. KNIGHT;
F. GREGORY MALTA; WILLIAM F. PARTEN; ROBERT E. PIERCE;
ROGER E. SHIRLEY; CHARLES F. SPEED; AARON K. WILSON;
THOMAS TEMPLE; JOHN DOES 1-20; and LESLIE WILKES,

Defendants-Appellees

_____

Appellee's Brief

_____

On Appeal from the United States District Court
For the Southern District of Mississippi

Jay M. Kilpatrick (MS Bar No. 100136)
Lindsay G. Watts (MS Bar No. 101981)
Attorneys for the Appellees
210 E. Capitol Street
Suite 2000
Jackson, Mississippi 39201
(601) 948-6100

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of *Bryant v. Military Dept. of the State of Miss. et al.*, Case No. 09-60182. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.

1.  Joe H. Bryant, Jr., Appellant
2.  Military Department of the State of Mississippi, Appellee
3.  Franklin E. Chalk, Appellee
4.  Frederick D. Feinstein, Appellee
5.  Roy A. Graham, Appellee
6.  Billy Joe Gressett, Appellee
7.  Donald E. Jones, Appellee
8.  Langford L. Knight, Appellee
9.  F. Gregory Malta, Appellee
10. William F. Parten, Appellee
11. Robert E. Pierce, Appellee
12. Roger E. Shirley, Appellee
13. Charles F. Speed, Appellee
14. Aaron K. Wilson, Appellee
15. Thomas Temple, Appellee
16. Leslie Wilkes, Appellee
17. Paul A. Koerber, Attorney for Appellant
18. Koerber Law Firm, PLLC
19. Wayne E. Ferrell, Attorney for Appellant
20. E. Barney Robinson III, Attorney for the Appellee, Military Department of the State of Mississippi
21. Butler, Snow, O'Mara, Stevens and Cannada, PLLC
22. Jay M. Kilpatrick, Attorney for the Appellees
23. Lindsay G. Watts, Attorney for the Appellees
24. YoungWilliams P.A.

Respectfully submitted, this the 12th day of June, 2009.

_____
Attorney for Appellees

i

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Rule 34(a)(1) of the Federal Rules of Appellate Procedure and Rule 28.2.4 of the Fifth Circuit Court Rules, the individual appellee-defendants submit that oral argument is not necessary in this appeal. The district court's decision dismissing a majority of the claims against the individual appellee-defendants was correct, well-reasoned and should be affirmed. All issues decided by the district court were based upon application of authorities which are clear and established. Therefore, the individual appellee-defendants respectfully submit that this appeal does not involve novel or difficult issues necessitating oral argument. Lastly, any and all arguments of the parties are clearly set forth in the respective briefs, and oral argument is highly unlikely to assist in the decision of this appeal.

## TABLE OF CONTENTS

Page

Certificate of Interested Persons ...................................................................i

Statement Regarding Oral Argument ....................................................... ii

Table of Contents .................................................................................... iii

Table of Authorities ................................................................................vi

Jurisdictional Statement ............................................................................1

Statement of the Issues.............................................................................2

Statement of the Case...............................................................................3

Statement of the Facts ..............................................................................5

      1.  Background........................................................................5

      2.  The First IG Investigation ................................................8

      3.  The Second IG Investigation.............................................8

      4.  Bryant's Media Campaign.................................................9

      5.  Allegations in This Suit ..................................................14

Summary of the Argument.....................................................................17

Standard of Review................................................................................21

Argument................................................................................................24

    I.      Pursuant to its August 26, 2005 Order, the district
court correctly applied the <u>Feres</u> doctrine and properly
dismissed all claims against the individual appellees-
defendants in their official capacities..................................24

II.    Pursuant to its July 17, 2007 Order, the district court properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to the (1) Military Whistleblower Protection Act, (2) Mississippi Whistleblower Protection Statute, (3) 42 U.S.C. § 1983, (4) 42 U.S.C. §§ 1985 and 1986, and (5) state law claims for assault and battery..................26

    A.  The Military Whistleblower Act ................................................27

    B.  The Mississippi Whistleblower Protection Statute .......................28

    C.  42 U.S.C. § 1983 .........................................................................30

    D.  42 U.S.C. § 1985 .........................................................................34

    E.  Assault and Battery .....................................................................38

III.   Pursuant to its June 17, 2008 Order, the district court correctly Applied the "objectively baseless" standard set forth in the Supreme Court decision of BE & K Construction Co v. NLRB and properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to the alleged retaliatory litigation. ......................................40

    A.  No Duty to Report Wrongdoing...................................................41

    B.  First Amendement Right of Access to the Courts.........................43

        1.  The Factual Basis for the Radio Talk Show Slander Suit.......47

        2.  Factual Basis for the Malicious Prosecution Suits..................49

        3.  Factual Basis for Pierce's Suit ...............................................49

IV.   Pursuant to its June 17, 2008 Order, the district court Properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to alleged acts of vandalism. ..............................................................51

Conclusion……. .................................................................................................53

Certificate of Service ..........................................................................54

Certificate of Compliance ....................................................................55

TABLE OF AUTHORITIES

Cases                                                                                                    Page

*Acquisto v. U.S.,* 70 F.3d 1010, 1011 (8th Cir. 1995)                                   27

*Arvain v. Wal-Mart Stores Tex, L.P.,* 534 F3d 473, 378 (5th Cir. 2008)          23

*BE & K Construction Co. vs. NLRB,* 536 U. S. 516 (2002)                 2, 40, 45, 51

*Bell Atl. Corp. v. Twombly,* 127 S.Ct. 1955, 1974 (2007)                           21, 24

*Bill Johnson's v. N.L.R.B.,* 461 U.S. 731 (1983)                                  44, 45, 46

*Breaux v. Halliburton Energy Servs.,* 562 F.3d 358, 364 (5th Cir. 2009)         22

*Brumfield v. Hollins,* 551 F.3d 322, 326 (5th Cir. 2008)                               22

*Carpenters Local 610 v. Scott,* 463 U.S. 825 (1983)                                    34

*Chalk v. Bertholf,* 980 So. 2d 290, 293 (Miss. Ct. App. 2007)                     13, 40

*Chappell v. Wallace,* 462 U.S. 296 (1983)                                              25

*Crawford v. Texas Army National Guard,* 794 F.2d 1034, 1036
(5th Cir. 1986)                                                                      17, 25

*Dallas v. Holmes,* 137 Fed. Appx. 746, 753 (6th Cir. 2005)                           37

*Ellison v. De La Rosa,* 685 F.2d 959, 960 (5th Cir. 1982)                            31

*Feres v. United States,* 340 U. S. 135, 146 (1950)                        2, 17, 21, 24-26

*Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994)                     20, 23, 32, 35, 52

*Gant v. U.S.,* 63 Fed. Cl. 311, 316 (Fed. Cl. 2004)                                   17

*Garrie v. James L. Gray, Inc.,* 921 F.2d 808, 813 (5th Cir. 1990)                 19, 37

*Great American Fed. Savings & Loan Ass'n v. Novotny,*
442 U.S. 366, 372 (1979) ... 34

*Griffin v. Breckenridge,* 403 U.S. 88, 101 (1971) ... 34

*Harmon v. Grizzel,* 2005 WL 1106975, at 5 (S.D. Ohio 2005) ... 32

*Harper v. Realmark Corp.,* 2004 WL 1795392 (S.D. Ind. 2004) ... 41

*In re Katrina Canal Breaches Litig.,* 495 F.3d 191, 205
(5th Cir. 2007) ... 21

*Ishkhanian v. Forrester Clinic S.C.,* 2003 WL 21479072 (N.D. Ind. 2003) ... 41

*Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force,*
379 F.3d 293, 301 (5th Cir. 2004) ... 22

*Kush v. Rutledge,* 460 U.S. 719, 726 (1983) ... 37

*Lee v. Wal-Mart Stores, Inc.,* 34 F. 3d 285, 288 (5th Cir. 1994) ... 22

*Meister v. Texas Adjutant General's Dept.,* 233 F.3d 332, 339
(5th Cir. 2000) ... 21

*Mindes v. Seaman,* 453 F.2d 197, 202-03 (5th Cir. 1971) ... 21

*Schultz v. Wellman,* 717 F.2d 301, 304 (6th Cir. 1983) ... 32

*Soeken v. U.S.,* 47 Fed. Cl. 430, 433 (Fed. Cl. 2000) ... 17, 27

*U.S. ex rel. Branch Consultants v. Allstate Ins. Co.,* 560 F.3d 371, 376
(5th Cir. 2009) ... 21

*United States v. Classic,* 313 U.S. 299, 326 (1982) ... 31

*United States v. Shearer,* 472 U.S. 52, 58 (1985) ... 25

*United States v. Stanley,* 483 U.S. 669, 684 (1987) ... 25

*Ward v. N.L.R.B.,* 462 F.2d 8, 13 (5th Cir. 1972) ... 35

*Waters v. City of Morristown, Tenn.,* 242 F.3d 353, 359 (6th Cir. 2001)           31

Statutes

28 U.S.C. § 1291                                                                                1, 4

28 U.S.C. § 1331                                                                             1, 5, 8

28 U.S.C. § 1343                                                                                   1

28 U.S.C. § 1367                                                                                   1

42 U.S.C. § 1983                                         2, 17, 18, 26, 30, 31, 34, 40

42 U.S.C. § 1985                            2, 15, 17-19, 25-26, 34, 37-38, 40-43

42 U.S.C. § 1986                                  2, 15, 17, 25-26, 34, 38, 40-41

Military Whistleblower Protection Act (MWPA),
10 U.S.C. § 1034                                              15, 17, 26-28, 40, 42

Miss. Code Ann. § 25-9-175 (2009)                                                      29

Miss. Code Ann. § 15-1-35 (2009)                                                  19, 39

Mississippi Whistleblower Protection Statute (MWPS),
Miss. Code Ann. § 25-9-173 (2009)                               2, 17, 26, 28, 30, 40

National Labor Relations Act, 29 U.S.C. § 141 *et. seq.*                               44

JURISDICTIONAL STATEMENT

Pursuant to Rules 28(a)(4)(A) through (D) of the Federal Rules of Appellate Procedure, COL Bryant premised jurisdiction upon the trial court based upon 28 U.S.C. §§ 1331 & 1343.  Further, according to COL Bryant, pursuant to 28 U.S.C. § 1367, the trial court has supplemental jurisdiction over the remaining claims in this action.

On January 15, 2009, the district court, pursuant to Fed. R. Civ. P. 54(b), certified as final the Corrected Memorandum Opinion and Order entered on August 26, 2005, the Memorandum Opinion and Order entered on July 17, 2007, and the Memorandum Opinion and Order entered on June 17, 2008.  (R. at 2944-46). On February 13, 2009, COL Bryant timely filed his Notice of Appeal, invoking this Court's jurisdiction under 28 U.S.C. § 1291.  (R. at 2947-49). Defendant Military Department of Mississippi filed its Notice of Cross Appeal on February 18, 2009.  (R. at 2950-52).

STATEMENT OF THE ISSUES

1. Whether, pursuant to its Order on August 26, 2005, the district court correctly applied the Feres doctrine and thereby properly dismissed all claims against the individual appellee-defendants in their official capacities.

2. Whether, pursuant to its Order on July 17, 2007, the district court properly granted summary judgment in favor of all individual appellee-defendants with regards to all individual capacity claims relating to the (1) Military Whistleblower Protection Act, (2) Mississippi Whistleblower Protection Statute, (3) 42 U.S.C. § 1983, (4) 42 U.S.C. §§ 1985 and 1986, and (5) state law claims for assault and battery.

3. Whether, pursuant to its Order on June 17, 2008, the district court correctly applied the "objectively baseless" standard set forth in the Supreme Court decision of BE & K Construction Co. v. NLRB and thereby properly granted summary judgment in favor of all individual appellee-defendants with regards to all claims relating to the alleged retaliatory litigation.

4. Whether, pursuant to its Order on June 17, 2008, the district court properly granted summary judgment in favor of all individual appellee-defendants with regards to all claims relating to alleged acts of vandalism.

<u>STATEMENT OF THE CASE</u>

On March 17, 2005, COL Bryant filed this action in the United States District Court for the Southern District of Mississippi.  (R. at 40-65).

On August 26, 2005, pursuant to a Motion to Dismiss filed by the Defendant Military Department of Mississippi by and through the Mississippi Air National Guard (as joined into by all of the individual appellee-defendants), the district court entered a Corrected Memorandum Opinion and Order dismissing all claims against the Defendant Military Department of the State of Mississippi and dismissing all claims against the individual appellee-defendants in their official capacities.  (R. at 518).

On July 17, 2007, the district court, pursuant to a Motion for Summary Judgment filed by all individual appellee-defendants (with the exception of Greg Malta), entered a Memorandum Opinion and Order which granted partial summary judgment in favor of the individual appellee-defendants in their individual capacities with respect to certain claims.  (R. at 2278).

On June 17, 2008, the district court, pursuant to a Second Motion for Summary Judgment filed by all individual appellee-defendants (with the exception of Greg Malta) entered a Memorandum Opinion and Order which granted summary judgment in favor of the individual appellee-defendants in their individual capacities with regards to the vast majority of the remaining claims.  (R.

at 2874).  Reading all of the Orders in conjunction with one another, only certain claims against defendants Malta and Pierce remain pending in the district court.

On January 15, 2009, the district court, pursuant to Fed. R. Civ. P. 54(b), certified as final the Corrected Memorandum Opinion and Order entered on August 26, 2005, the Memorandum Opinion and Order entered on July 17, 2007, and the Memorandum Opinion and Order entered on June 17, 2008.  (R. at 2944-46).    On February 13, 2009, COL Bryant timely filed his Notice of Appeal, invoking this Court's jurisdiction under 28 U.S.C. § 1291.  (R. at 2947-49). Defendant Military Department of Mississippi filed its Notice of Cross Appeal on February 18, 2009.  (R. at 2950-52).

<u>STATEMENT OF THE FACTS</u>

### *1. Background*

Each and every claim asserted by COL Bryant has its genesis in his belief that the defendants retaliated against him in various ways because he reported allegations to the Inspector General of the Air Force.

This case began with the unsuccessful attempt by COL Bryant to become the commander of a unit of the Mississippi National Guard, the 186th Air Refueling Wing (ARW) in Meridian.  COL Bryant joined the unit as a captain in 1980. (R. at 597).  The individual appellee-defendants are all current or former members of that unit.  COL Bryant rose through the ranks to become a Lieutenant Colonel. After 18 years in that unit, COL Bryant was selected in 1998 to be the Air Operations Director at the state headquarters in Jackson.  In that position, he was promoted to the rank of a full Colonel.  (R. at 597).

Once in his new position, COL Bryant told his immediate superior, Brigadier General Harold Cross, the Commander of the Air Guard, that he wanted to return to the 186th as the wing commander.  Brigadier General Cross advised him that there was no vacancy in that position.  COL Bryant asked Brigadier General Cross to oust the incumbent and put him in the position.  (R. at 1331-33). Brigadier General Cross advised COL Bryant that he needed some command experience to position himself to be the wing commander.  (R. at 1332).  Brigadier

Cross suggested that he volunteer for duty in Bosnia with NATO forces. (R. at 49). COL Bryant thought the suggestion was helpful but he later contended that Brigadier General Cross was trying to get rid of him. (R. at 1332). While COL Bryant was on duty in Bosnia, Brigadier General Cross asked for his resignation from the Mississippi National Guard. Id. COL Bryant refused. (R. at 49-50). Upon his return from NATO duty in 1999, COL Bryant was assigned back to the 186th in what he thought was a meaningless position. (R. at 600-01).

COL Bryant did not give up on his goal to become the wing commander. He put together an application package touting his qualifications. (R. at 1332-33). He solicited letters of support from other officers in the unit. (R. at 1334). About the same time, COL Bryant also violated the chain of command and improperly petitioned then-Governor Musgrove to replace the leadership of the unit. (R. at 603).

In January 2000, COL Bryant again went over Brigadier General Cross and sent his resume directly to The Adjutant General, Brigadier General George Walker. (R. at 1334). In February of 2000, COL Bryant asked Brigadier General Walker for an appointment to present his case. (R. at 1334). COL Bryant met with and gave Brigadier General Walker's executive officer a letter that was critical of the wing commander and other officers in the unit. (R. at 1334-35).

A week later, Brigadier General Cross told COL Bryant that he did not appreciate what he was doing and that he would be discharged from the National Guard. (R. at 602, 1334). In a separate meeting, Brigadier General Walker confirmed to COL Bryant that he would be discharged. (R. at 1334). Shortly thereafter, COL Bryant was involuntarily discharged from the Mississippi National Guard. (R. at 52, 1334-35).

COL Bryant then started drafting a complaint to file with the Inspector General of the Air Force. (R. at 1335). When Brigadier General Walker unexpectedly resigned in July 2000, COL Bryant decided to hold off on filing anything with the IG. Id. COL Bryant hoped that the new TAG[1] would be more receptive to his request to be the wing commander. James Lipscomb was appointed the new TAG but it was months before COL Bryant scheduled an appointment with him. (R. at 604). When they met on 2/13/01, COL Bryant gave him a lengthy letter complaining about some of the officers in the unit. (R. at 1354-67). Among other things, COL Bryant alleged *inter alia* that Brigadier General Cross had forged his signature on a resignation letter. (R. at 604-05, 1358). COL Bryant also alleged other wrongdoing by Brigadier General Cross and other senior leaders in the unit. (R. at 1354-67). COL Bryant said that he had witnessed wrongdoing in the 186th for the last eight years, and that he wanted to

---

[1] In military usage, "TAG" denotes The Adjutant General.

be the wing commander to reform the bad practices. (R. at 598, 1331). COL
Bryant also sent a copy to the IG. (R. at 54).

COL Bryant welcomed his self-imposed label of "whistleblower." (R. at
1353). However, many others believe that when COL Bryant did not get the wing
commander's job, he snapped and became bitter and vindictive. (R. at 1411).

### 2. *The First IG Investigation*

The Air Force IG appointed a member of its staff, Colonel David Bertholf,
to be the investigating officer. (R. at 1336-37). His final report was presented to
Brigadier General Lipscomb on 12/17/02. (R. at 1339). The report opined that
allegations against three officers (none of the defendants here) were substantiated.
(R. at 1337).

### 3. *The Second IG Investigation*

A second IG investigation commenced on the conclusion of the first one.
During the second investigation, COL Bryant filed allegations against 15 officers,
including some of the individual appellee-defendants here. The Air Force IG
presented its report of the second investigation to Brigadier General Cross (who
had in the interim been named TAG) in September 2004. The report substantiated
allegations against 13 officers, including some of the individual appellee-
defendants.

### 4. *Bryant's Media Campaign*

COL Bryant's media campaign started when the first IG report did not result in the immediate discharge of the Wing Commander. A frustrated COL Bryant complained to then-Governor Musgrove in an email dated 2/3/03 that "there has been NO action taken by the [Adjutant General]." (R. at 1368). COL Bryant also asked the Governor for a meeting. Id. The following day, COL Bryant sent a copy of the IG report to then-Governor Musgrove and said that a "follow-on investigation" would look into whether two state airplanes had been misappropriated for the benefit of then-Senator Trent Lott and further stated that "Colonel Weaver should be relieved of command immediately." (R. at 1369). COL Bryant again asked for a meeting with the Governor. (R. at 1338, 1369).

COL Bryant emailed the Governor again on 2/20/03 criticizing him for not taking any action. (R. at 1370). COL Bryant said that he had no choice but to go the media. Id. He said he would be interviewed by the Meridian TV station that day and that several newspapers would carry stories that weekend about the IG report. Id. The Clarion-Ledger broke the story on 2/23/03 under the headline, "Records Falsification, Racism Revealed in Report." (R. at 1448). COL Bryant posed for pictures for that story. Id.

Within two days of the story, Brigadier General Lipscomb discharged the wing commander. (R. at 1446). COL Bryant now realized the power of the press.

9

His three-year goal of getting the wing commander replaced was achieved with a single negative story in the newspaper.  Since COL Bryant knew that a second investigation had been ordered, he set a goal of getting more officers fired. With his new connections with the media, COL Bryant could keep media attention focused on the follow-up investigation.

The first story on 2/22/03 was followed by stories on local TV.  The Meridian Star followed the story very closely.  The editor, Buddy Bynum, was a friend of COL Bryant's since their school days.  (R. at 1346, 1350).  Not surprisingly, the editor wrote an editorial on 3/2/03 stating, "I agree with Bryant and others who say that only a full housecleaning can restore the unit's luster."  (R. at 1477).  COL Bryant added that the Adjutant General should "remove from positions of authority every single member or officer at the 186th whose hands have been sullied by a collapse of integrity."  Id.

The newspapers ran a number of follow-up stories for the next two months. (R. at 1447-1500).  COL Bryant was frequently quoted in those stories.  Id.  The following is a sampling of some of the headlines.

| Date | Headline |
|---|---|
| 2/25/03 | Guard Commander Relieved of Duties, M-Star  (R. at 1447). |
| 2/23/03 | Records Falsification  (R. at 1448-49) |
| 2/25/03 | Probe Shows Misconduct in 186th, M-Star  (R. at 1450-57). |
| 2/25/03 | Liquor Store is One of 186th Features, M-Star  (R. at 1458-61). |
| 2/27/03 | More Disciplinary Action Likely in Guard's 186th  (R. at 1462-65). |
| 2/28/03 | Lott: IG's Findings Reflect on 186th, M-Star  (R. at 1466-68). |
| 3/1/03 | Lipscomb Says 186th Commander Discharged, CL  (R. at 1469-71). |

| | | |
|---|---|---|
| 3/2/03 | 186th ARW Target of New Investigation | (R. at 1472-73). |
| 3/2/03 | Leadership Should be Replaced (letter to editor) | (R. at 1474-76). |
| 3/2/03 | Blowing the Whistle on the 186th | (R. at 1477-78). |
| 3/5/03 | Probe Focusing on Liquor Store | (R. at 1479-83). |
| 3/7/03 | Officer Put on Leave in Base Probe | (R. at 1484-85). |
| 3/19/03 | Lipscomb Pledges to Find Out Truth About Guard | (R. at 1486). |
| 4/6/03 | Probe Into Meridian Guard Unit Expanded | (R. at 1487). |
| 4/27/03 | The Fortunate Few | (R. at 1488-89). |
| 4/30/03 | Politics May be Behind Problems in the Guard | (R. at 1490). |
| 4/30/03 | Guardsmen Allegedly Coerced in Fund Drive, CL | (R. at 1491-92). |
| 5/1/03 | Former Guardsmen Cite Coercion, M-Star | (R. at 1493). |
| 5/2/03 | Bryant Confirms Reports of Coercion at 186th. | (R. at 1496). |
| 5/7/03 | Investigator Interviews 186th Members | (R. at 1499-1500). |

Obviously, COL Bryant was serious about his goal of replacing the unit's

leadership. To cast a wider net, COL Bryant decided to file more charges against

more officers with the IG. COL Bryant solicited grievances from disgruntled

members (current and former) of the unit against officers in the unit. COL Bryant

consolidated their complaints (some of which were 10 years old) into a 14-page

email and sent it to the IG on April 12, 2003. (R. at 1340). This email made

allegations against 10 or more officers. Id. COL Bryant wanted to file as many as

80 allegations, but the investigating officer convinced him to limit his campaign to

44 allegations against 15 subjects. (R. at 1347).

On 5/7/03, the Meridian Star reported that the IG investigator had been in

Meridian for five days interrogating witnesses. (R. at 1498). On May 19, 2003,

COL Bryant sent an email to then-Governor Musgrove giving him a status report

of sorts on the investigation. (R. at 1345, 1381). He said that the current

11

investigation would be far more damning than the first one and that everyone would be embarrassed.  Id.  COL Bryant also specifically named seven defendants: Pierce, Wilson, Chalk, Malta, Graham, Shirley and Speed.  COL Bryant's email stated:

> [There is] a certain element of airmen [who] should be … removed from command.  This is documented.  I find it utterly amazing and disgusting that … ***Cross, Weaver, Warren, Pierce, Wilson, Chalk, Malta, Graham, Shirley and Speed,*** [have been either promoted or assigned greater duties while identified and under investigation] … These promotions/ assignments give the appearance of personal rewards for not telling the truth. . . .

(R. at 1381).  COL Bryant also gave the Governor notice that he would "share everything with the media" and was scheduled to appear on a radio talk show in 8 days.  (R. at 1345, 1381).  COL Bryant's email to the Governor was circulated on the base.  Several defendants became alarmed that COL Bryant would specifically mention their name to the Governor in such a negative context.  (R. at 1396, 1414, 1422, and 1432).

COL Bryant was the featured guest on that radio talk show on May 27.  (R. at 1345).  COL Bryant did not identify any of the defendants by name, but he made the following defamatory charges against the leadership of the unit:

> There are some disgusting officers . . . in leadership positions. Tr. 36. There's about 10 to 12 more people that need to be admonished. Tr. 34.  [T]here's more [than] 60 or 100 more charges against … 10 to 15 people [yet to come] . . . .   [T]he entire leadership structure is corrupt. Tr. 38.  I'm after the chief NCOs and the lieutenant colonels and above that have got blood on their hands in this action. Tr. 44.

12

All I want is leadership change. Tr. 11. I'm not going to stop until … we've had a leadership change . . . . I'm going to be relentless . . . Tr. 15. General Lipscomb and General Cross … [are] examples of failed leadership. Tr. 17. We have allowed a mafia type system to grow in the leadership. Tr. 41.

(R. at 1383-91).

After the radio show, the individual appellee-defendants had a meeting to review their options. They discussed COL Bryant's email to the Governor, which specifically used several names, and the radio show. As they all held "leadership" positions in the 186th, the individual appellee-defendants justifiably felt that they had been slandered by his public statements that the "leadership … is corrupt" and that he was "after [those] that had blood on their hands." (R. at 1396, 1412).

As a result, on June 3, 2003, the individual appellee-defendants (with the exception of Wilkes and Temple) filed a slander lawsuit in Lauderdale County Circuit Court. (R. at 2876-77). See also Chalk v. Bertholf, 980 So. 2d 290, 293 (Miss. Ct. App. 2007). The slander lawsuit was later dismissed on grounds that COL Bryant had not specifically named any of the defendants during the radio talk show. Id. However, the dismissal does not detract from the fact that the individual appellee-defendants had a justifiable and reasonable basis in law and in fact to file the suit. Hence, COL Bryant cannot show sham litigation.

Temple and Wilkes filed separate malicious prosecution lawsuits against COL Bryant arising out of the Moose Lodge incident. Bryant, Wilkes and Temple

13

exchanged words at the Moose Lodge in Meridian on September 3, 2003.  (R. at

1440-41, 1427-30.)  Bryant filed criminal assault charges against both.  Id.  The

court dismissed the case without those defendants having to present any defense.

Id.  Temple and Wilkes then filed civil suits in Lauderdale County for malicious

prosecution in Lauderdale County Circuit Court.  Id.

Pierce filed a separate invasion of privacy lawsuit in Newton County Court.

See Pierce v. Dep't. of the United States Air Force, 512 F.3d 184 (2007).  After the

second IG investigation, the Air Force IG sent COL Bryant a summary of its

findings.  The letter to COL Bryant stated that it was protected by the Privacy Act

and that COL Bryant should return the letter or destroy it.  COL Bryant did neither.

Rather, he gave a copy to The Meridian Star and the Clarion Ledger which

published the name of Pierce and other persons.  The stories publicly detailed the

allegations against Pierce.  COL Pierce filed a suit for invasion of privacy in the

Circuit Court of Newton County.

### 5.  *Allegations in This Suit*

COL Bryant fancifully alleges that as a result of his filing charges with the

IG, the individual appellee-defendants retaliated against him by having armed

guards prevent him from attending a dinner, firing shots around his home, making

harassing phone calls to his home, filing frivolous lawsuits, committing assault and

battery (by Temple and Wilkes), writing an anonymous letter to the FAA (by

14

Pierce), sending anonymous letters to FedEx, committing acts of vandalism and malicious mischief, including cutting a gas line on his wife's car, shooting out a window to his motor home, and destroying appliances and slashing the tires on his airplane.[2]  (R. at 606-09).  Based on these alleged facts, COL Bryant pled 11 counts under the following statutes and/or common law:

1.    Violated the Military Whistleblower Protection Act.  (R. at 610-11).
2.    Violated the First Amendment to the U.S. Constitution  (R. at 611).
3.    Violated 42 U.S.C. §§ 1983 and 1985, 1986 and 1988.  (R. at 612-13).
4.    Violated the Miss. Whistleblower Protection Act.  (R. at 614).
5.    Intentional infliction of emotional distress.  (R. at 616)].
6.    Negligent infliction of emotional distress.  (R. at 615).
7.    Interfered with Bryant's employment with FedEx.  (R. at 616).
8.    Placed Bryant in a false light.  (R. at 616).
9.    Temple and Wilkes engaged in assault and battery.  (R. at 617).
10.   Vandalized personal property.  (R. at 617).
11.   Engaged in a civil conspiracy to harm Bryant. (R. at 618).

Counts 1-4 were made in the original complaint. Counts 5-11 were added in the Amended Complaint.

Pursuant to the district court's orders, the only claims still pending are: (1) COL Bryant's claims against Malta for allegedly having threatened him; and (2) COL Bryant's claims against Pierce for negligent and/or intentional infliction of emotional distress, defamatory/false light liability and intentional interference with COL Bryant's employment at FedEx.  (R. at 2888-89).  Therefore, those claims against these defendants are not a part of this appeal.  This seems to be lost on

---

[2] It should be noted that COL Bryant only sued people who had pending suits against him.  COL Bryant then asked the Court to consolidate all cases in which he was a party.

15

COL Bryant as he continues to cite to actions of Malta and Pierce throughout his

brief.  All other claims against all other defendants have been dismissed and are the

focus of this appeal.

## SUMMARY OF THE ARGUMENT[3]

COL Bryant's claims against the individual appellee-defendants in their official military capacities are barred by the Feres doctrine and its progeny of cases because his injuries "arise out of or are in the course of activity incident to service." Feres v. United States, 340 U.S. 135, 146 (1950). See also Crawford v. Texas Army National Guard, 794 F.2d 1034, 1036 (5th Cir. 1986) (extending the doctrine to § 1983 and §1985 claims).

The dismissal of COL Bryant's claims with respect to the Military Whistleblower Protection Act (MWPA), 10 U.S.C. § 1034, should be affirmed by this Court because the MWPA (1) provides no private right of action for damages, and (2) its sole remedies are administrative. Soeken v. U.S., 47 Fed. Cl. 430, 433 (Fed. Cl. 2000); see also Gant v. U.S., 63 Fed. Cl. 311, 316 (Fed. Cl. 2004).

Likewise, the dismissal of COL Bryant's claims against the individual appellee-defendants with respect to the Mississippi Whistleblower Protection Statute (MWPS), Miss. Code Ann. § 25-9-173 (2009), should be affirmed because the plain language of the statute clearly indicates that (1) it does not apply to co-workers (such as the individual appellee-defendants), (2) the statute requires an actual adverse effect on either compensation or employment and COL Bryant has

---

[3] The individual appellee-defendants incorporate by reference herein all arguments and authority cited by defendant Military Department of Mississippi in its Brief of Appellee that support affirmance of the dismissal of any claims below.

17

neither alleged nor proven either, and (3) since the statute only applies to "public employee[s]," COL Bryant cannot claim protection under the statute for any alleged actions taken after his discharge from the Guard in April 2000.

Further, for the reasons explained by the Guard, the dismissal of COL Bryant's claims on the basis of Will v. Michigan Dept. of State Police, 491 U.S. 58 (1989) and the Eleventh Amendment should be affirmed.

Although COL Bryant has alleged a First Amendment claim, there is simply no direct cause of action for violation of the First Amendment; as such, any claim based upon violation of the First Amendment would have to be maintained under 42 U.S.C. § 1983, which COL Bryant has also alleged against the individual appellee-defendants. Even so, the district court properly dismissed COL Bryant's § 1983 claim against the individual appellee-defendants because, Bryant failed to produce sufficient evidence of state action or actions committed "under color of state law" which is required in a § 1983 claim.

COL Bryant's claims under § 1985 (1), (2) and (3) must also fail. First, COL Bryant's raw unsupported allegations of various acts of alleged vandalism were not enough to meet his burden on summary judgment. As such, the district court was correct in dismissing any claim that COL Bryant may have under § 1985(1). As for any potential claims that COL Bryant may have had under either § 1985 (2) or (3), COL Bryant failed to demonstrate his membership in a historically

18

protected class and, as a result, the district court was correct in dismissing those claims. See Garrie v. James L. Gray, Inc., 921 F.2d 808, 813 (5th Cir. 1990) (rejecting the argument that whistleblowers are a protected class for the purposes of a § 1985 argument).

The district court correctly found that the individual appellee-defendants were entitled to summary judgment with respect to COL Bryant's claims for assault and battery because the applicable one-year statute of limitations had run when this suit was filed on March 17, 2005. Miss. Code Ann. § 15-1-35 (2009).

As to COL Bryant's claims of retaliation with respect to the causes of action filed against him, the district court correctly applied the "objectively baseless" standard as set forth in BE&K Construction Co v. N.L.R.B., 536 U.S. 516 (2002), and properly dismissed any and all of COL Bryant's claims against the individual appellee-defendants based on the alleged retaliatory litigation. The district court correctly found that COL Bryant's claims were barred due to First Amendment protection as COL Bryant could not present competent evidence that the litigation filed by the individual appellee-defendants was "objectively baseless."

Finally, the district court properly granted summary judgment in favor of the individual appellee-defendants with regards to all of COL Bryant's raw, unsupported claims of vandalism as a result of COL Bryant's failure to come forward with any objective proof that any of the individual appellee-defendants

19

were involved in any of the alleged acts of vandalism.  See Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994) (holding that unsubstantiated assertions, improbable inferences, and unsupported speculation are simply not competent summary judgment evidence).

STANDARD OF REVIEW

The district court dismissed COL Bryant's claims against the individual appellee-defendants in their official capacities pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(6) and 12(c).

For both a 12(b)(6) motion and a 12(c) motion, this Court's standard of review is de novo.  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007).  Although the reviewing court must accept the factual allegations in the pleadings as true, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). This is the standard to be used in reviewing the dismissal of any and all claims asserted against the individual appellee-defendants in their official capacity by way of the district court's August 26, 2005 Order.

With respect to a Rule 12(b)(1) dismissal, which challenges the Court's subject matter jurisdiction under: (a) the Eleventh Amendment; as well as (b) lack of justiciability under Feres v. United States, 340 U.S. 135, 146 (1950), Mindes v. Seaman, 453 F.2d 197, 202-03 (5th Cir. 1971) and Meister v. Texas Adjutant General's Dept., 233 F.3d 332, 339 (5th Cir. 2000), this Court "review[s] [the] application of law de novo and disputed factual findings for clear error." U.S. ex rel. Branch Consultants v. Allstate Ins. Co., 560 F.3d 371, 376 (5th Cir. 2009).

21

The district court granted summary judgment pursuant to Fed. R. Civ. P. 56 on all remaining claims against the individual appellee-defendants. The applicable standard of review pertaining to a district court's grant of summary judgment in favor of a defendant is de novo. "We review the district court's summary judgment de novo." Lee v. Wal-Mart Stores, Inc., 34 F.3d 285, 288 (5th Cir. 1994). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." Breaux v. Halliburton Energy Servs., 562 F.3d 358, 364 (5th Cir. 2009). "A genuine issue of material fact exists [only] if a reasonable jury could enter a verdict for the non-moving party." Brumfield v. Hollins, 551 F.3d 322, 326 (5th Cir. 2008). "All the facts and evidence must be taken in the light most favorable to the non-movant." Breaux, 562 F.3d at 364. Although factual controversies are to be viewed in favor of the nonmoving party, that occurs only when there is an actual controversy (i.e. when both parties have submitted proper evidence of contradictory facts). Lee, 34 F.3d at 288. Therefore, in a summary judgment context, the nonmovant must identify specific evidence in the record that supports that party's claim. Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force, 379 F.3d 293, 301 (5th Cir. 2004). "[S]uch evidence must be sufficient to sustain a finding in favor of the nonmovant on all issues as to which the nonmovant would bear the burden of proof at trial." Id. Additionally, this

22

Court is not limited to the district court's reasons for its grant of summary judgment. "[This Court] may affirm the district court's summary judgment on any ground raised below and supported by the record." Arvain v. Wal-Mart Stores Tex, L.P., 534 F.3d 473, 478 (5th Cir. 2008). Lastly, and most importantly for purposes of this particular case, unsubstantiated assertions, improbable inferences, and unsupported speculation are simply not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

ARGUMENT

**I. Pursuant to its August 26, 2005 Order, the district court correctly applied the <u>Feres</u> doctrine and properly dismissed all claims against the individual appellees in their official capacities.**

In his Complaint, COL Bryant made various allegations against the individual appellee-defendants in both their individual capacities and in their official military capacities.  As stated *supra,* the appropriate standard of review for the district court's decision to grant the individual appellee-defendants' Rule 12(b)(1) Motion is de novo with regards to the application of law; yet disputed factual findings are reviewed by the Court for clear error.  The appropriate standard of review for Rule 12(b)(6) and 12(c) Motions is de novo.  Under this standard, the Court must accept COL Bryant's factual allegations in his Complaint as true, and must determine if the district court was in error by holding that he did not plead "enough facts to state a claim to relief that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 127 S.Ct. 1955, 1974 (2007).  The district court was correct in dismissing Bryant's claims against them in their official military capacities as a result of the <u>Feres</u> bar.

In <u>Feres v. United States</u>, 340 U.S. 135 (1950), the Supreme Court held that in enacting the Federal Tort Claims Act (FTCA), Congress did not intend for the FTCA to apply to a person who sustained an injury incident to military service, even if that injury would otherwise be actionable under the FTCA.  Thus, the Court

24

held that soldiers could not recover under the FTCA for injuries that "arose out of or were in the course of activity incident to service." Id. at 146.  Subsequently, that holding was extended by the Court in Chappell v. Wallace, 462 U.S. 296 (1983), where the Court held that, in keeping with Feres, "it would be inappropriate to provide enlisted military personnel with a Bivens-type remedy against their superior officers," reasoning that

> [t]he special nature of military life, the need for unhesitating and decisive action by military officers and equally disciplined responses by enlisted personnel would be undermined by a judicially created remedy exposing officers to personal liability at the hands of those they are charged to command.

> Id.  The Court's holding continued to be extended in subsequent cases.[4]

This Court extended the doctrine to § 1983 and §1985 claims in Crawford v. Texas Army National Guard, 794 F.2d 1034, 1036 (5th Cir. 1986).  In Crawford, the Court reasoned that

> Section 1983 and due process claims, like those predicated on Bivens, invite judicial second-guessing of military actions and tend to overlap the remedial structure created within each service….

> Id.

Consistent with these long established doctrines of law, the district court stated as follows:

---

[4] See United States v. Shearer, 472 U.S. 52, 58 (1985) (dismissing claim against Army for negligent supervision by mother of a serviceman who was murdered by another serviceman on the basis that allowing the claim to proceed would involve the courts in military management); United States v. Stanley, 483 U.S. 669, 684 (1987) (dismissing claims of former servicemen against Army for experimental administration of LSD on him while in military).

> [I]t cannot reasonably be questioned that Bryant's allegations against MSANG (and for that matter, against all the defendants) relating to his employment are subject to the Feres bar. Bryant, in fact, does not actually contend otherwise.

(R. at 531). The court correctly extended these doctrines to the individual appellee-defendants by holding that "MSANG's motion to dismiss is granted, as are the motions of the individual named defendants in their official capacities." (R. at 532). It is clear from a review of COL Bryant's Complaint (R. at 40-65) that he asserted claims against the individual appellee-defendants in their official military capacity. Therefore, this Court (like the district court) must take those allegations to be true. When taken as true, those allegations clearly fall within the Feres doctrine as well as its progeny of cases that apply its reasoning.[5]

In accordance with the well-reasoned opinion of the district court with regards to the interpretation and application of Feres, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants with regards to any and all claims against them in their official capacities.

**II. Pursuant to its July 17, 2007 Order, the district court properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to the (1) Military Whistleblower Protection Act, (2) Mississippi Whistleblower Protection Act, (3) 42 U.S.C. § 1983, (4) 42 U.S.C. §§ 1985 and 1986, and (5) state law claims for assault and battery.**

---

[5] In addition to the foregoing, the individual appellee-defendants hereby join into the brief filed on behalf of defendant Military Department of Mississippi with respect to all arguments relating to the Feres doctrine and the Eleventh Amendment. The Eleventh Amendment effectively bars all of COL Bryant's claims against all of the individual appellee-defendants in their official capacities. By failing to raise this issue on appeal, COL Bryant has waived his right with respect to this claim. As such, the decision of the district court should be affirmed.

26

### A.  *The Military Whistleblower Protection Act*

The Military Whistleblower Protection Act, 10 U.S.C. § 1034, prevents any person from taking unfavorable personnel actions or withholding favorable personnel actions as a result of a member of the armed forces communicating with a member of Congress or the Inspector General.  However, it is obvious from the clear language of the statute that it does not provide for a private cause of action for alleged violations of the Act.  Furthermore, subsequent judicial interpretation of the Act has confirmed the lack of a private cause of action.[6]

Pursuant to its Order on August 26, 2005, the district court, relying on the clear language of the statute in addition to well-reasoned case law interpreting the same, correctly held in favor of defendant Military Department of Mississippi that any claims for violation of the Military Whistleblower Protection Act should be dismissed because the Act, as a matter of law, does not afford a plaintiff a private cause of action.  (R. at 522).  The district court, by utilizing the same well-established authority, further stated that "plaintiff has no viable claim in this court against any defendant for any alleged violation of § 1034."  (R. at 523).

---

[6] See Acquisto v. U.S., 70 F.3d 1010, 1011 (8th Cir. 1995) (concluding that "§ 1034 does not provide [a service member] with any private cause of action, express or implied"); Soeken v. U.S., 47 Fed. Cl. 430, 433 (Fed. Cl. 2000) ("[T]he Military Whistleblower Protection Act provides solely an administrative process for handling complaints of improper retaliatory personnel actions" and does not provide a private cause of action).

In keeping with the logic of this holding, the district court likewise held in its July 17, 2007 Order, that any claims against the individual appellee-defendants in their individual capacities that arise from an alleged violation of the Military Whistleblower Protection Act should also be summarily dismissed.  (R. at 2283-84).[7]

In accordance with the well-reasoned opinion of the district court with regards to the interpretation of the Military Whistleblower Protection Act, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants.

### B.  *The Mississippi Whistleblower Protection Statute*

The Mississippi Whistleblower Protection Statute (MWPS) prohibits an agency from dismissing or otherwise adversely affecting the compensation or employment status of any public employee because the public employee testified or provided information to a state investigative body.  Miss. Code Ann. § 25-9-173 (2009).  As correctly stated by the district court, COL Bryant's claims against the individual appellee-defendants in their individual capacities must fail for three reasons.

---

[7] In addition, the individual appellee-defendants hereby join into the brief filed on behalf of defendant Military Department of Mississippi with respect to all arguments relating to the Military Whistleblower Protection Act.

First, any actions of individual co-workers (such as the defendants here) are not covered by the statute. The statute applies to actions by "state agencies," the agency's governing board or authority, and the executive director. Miss. Code Ann. § 25-9-175 (2009). The district court correctly determined that none of the individual appellee-defendants fall into these categories.

Second, even if the individual appellee-defendants were covered by the statute, COL Bryant's claims against them under the MWPS must fail for another reason as the district court correctly noted. That is, COL Bryant did not allege or prove that his compensation or employment status was adversely affected by any of the actions of the individual appellee-defendants. Hence, COL Bryant suffered no damages. COL Bryant made only one allegation that the individual appellee-defendants took any action against him while he was a member of the National Guard. That is, Chalk, Knight and Temple gave "assistance and input" to a potentially career-damaging report composed by Brigadier General Cross in an "effort to adversely affect his military record." (R. at 601-02). Even assuming that allegation is true, COL Bryant only alleges "an effort" to hurt his record. The clear language of the statute requires an actual adverse impact on a person's "compensation or employment status." Miss. Code Ann. § 25-9-173 (2009). Attempts are simply not actionable.

Finally, the statute only provides protection to "public employee[s]."  Miss. Code Ann. § 25-9-173 (2009).  Therefore, COL Bryant cannot claim protection under the statute for any alleged actions taken after his discharge from the Mississippi National Guard in April 2000.

In its July 17, 2007 Order, the district court correctly held that "[d]efendants argument on these points appear meritorious, and COL Bryant has not contended otherwise in response to defendants' motion.  Accordingly, summary judgment will be granted on this claim."  (R. at 2284-85).

In accordance with the well-reasoned opinion of the district court with regards to the interpretation of the Mississippi Whistleblower Protection Statute, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants.

### C. 42 U.S.C. § 1983

COL Bryant lists both a First Amendment claim and a 42 U.S.C. § 1983 claim in his Amended Complaint.  Regardless of COL Bryant's efforts to create one, there is simply no direct action through the First Amendment for the violation of a constitutional right.  Such a claim would only be actionable as a § 1983 suit. As a result, this section will only address the insufficiency of COL Bryant's § 1983 claims against the individual appellee-defendants.

The text of 42 U.S.C. § 1983 states that

30

> [e]very person who, *under color of any statute, ordinance, regulation, custom, or usage,* of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...."

42 U.S.C. § 1983 (2009) (emphasis added).  It is hornbook law that in order to state a claim under § 1983, state action is required.  Therefore, a plaintiff must allege and present evidence showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States.[8]  In granting summary judgment in favor of the individual appellee-defendants, the district court relied on the United State Supreme Court definition of actions performed "under color of law."

> Misuse of power, possessed by virtue of state law and made possible only because the wrong doer is clothed with the authority of state law, is action taken "under color of" state law.

(R. at 2286); United States v. Classic, 313 U.S. 299, 326 (1982).  Citing case law from other jurisdictions, the district court further clarified that

> Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office.

Id. ; Waters v. City of Morristown, Tenn., 242 F.3d 353, 359 (6th Cir. 2001).

In addition,

---

[8] See Ellison v. De La Rosa, 685 F. 2d 959, 960 (5th Cir. 1982).

> a defendant's private conduct, outside the course or scope of his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.

Id. ; Harmon v. Grizzel, 2005 WL 1106975, at 5 (S.D. Ohio 2005). And finally,

> Evaluation of whether particular conduct constitutes action taken under the color of state law must focus on the *actual nature and character of that action*.

Id. ; Schultz v. Wellman, 717 F.2d 301, 304 (6th Cir. 1983) (emphasis added).

COL Bryant alleges that the defendants committed numerous acts of vandalism, (R. at 659-61), but he failed to show how they acted under the color of state law. In addition, even if COL Bryant could show state action or actions committed "under color of state law," COL Bryant still has no objective evidence that any of the individual appellee-defendants committed any of alleged acts. This Court, as well as all other courts in considering summary judgment motions, has clearly held that unsubstantiated assertions, improbable inferences, and unsupported speculation are simply not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

In fact, COL Bryant contended in an earlier pleading that the alleged acts were personal in nature and allegedly committed by defendants in their individual capacities. (R. at 530). In its opinion dismissing defendant Military Department of

Mississippi, the district court quoted extensively from COL Bryant's brief in which he acknowledged that the individual appellee-defendants were acting in their individual capacities with no connection to their military duties. Id. The district court quoted from COL Bryant's brief as follows:

> [This suit] is rather brought in order to have this Court address the above violence and continuing acts of threats and intimidation against the plaintiff by individuals, who just so happen to also be in the military *but who act for no military purpose or reason; rather, they act for their own hatred against the plaintiff. Their actions occur off base, have no justifiable military purpose, are perpetrated strictly for personal reasons. ...*

> Id. (emphasis added). The district court noted that alleged "actions taken by

individuals who 'just so happen to be in the military' but who have acted 'off base' solely for their own personal reasons and with no military purpose or reason could not reasonably be found to have been taken 'under color of state law.'" (R. at 2287). Moreover, the district court found that the specific alleged acts of which COL Bryant complains

> were not made possible by the defendants' military position and did not occur in the course of defendants' performing any of their military duties. Their alleged conduct was private conduct, 'outside the course and scope of [their] duties and unaided by any indicia of actual or ostensible state authority. Plaintiff cannot succeed on any claim under § 1983.

> (R. at 2288) (internal citations omitted).

33

In accordance with the well-reasoned opinion of the district court with regards to COL Bryant's claims under 42 U.S.C. § 1983, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants.

### D. 42 U.S.C. § 1985

COL Bryant has also alleged a conspiracy to violate his civil rights under §§ 1985(1), (2), and (3) and 1986. Sections 1985 and 1986 are interrelated. Section 1985 provides a federal remedy for damages when two or more people conspire to deprive a person or class of persons of the equal protection of the laws or equal privileges.[9] Section 1986 provides that a person who knows about such a conspiracy is also liable if they do not prevent the commission of the conspiracy. Therefore, if a claim fails to meet the requirements of § 1985, then any claim made pursuant to § 1986 must also fail. COL Bryant fails to meet the statutory requirements of all three clauses of § 1985.

Section 1985(1) prohibits conspiracies to interfere with a federal officer in the performance of his duties or to injure him in his person or property on account of the lawful discharge of the duties of his office, or while engaged in the lawful

---

[9] Like § 1983, this statute creates no substantive rights. Rather, it provides a remedy for violation of the rights it designates. Great American Fed. Savings & Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979). Unlike § 1983, there is no requirement of state action. This statute can cover private conduct. Griffin v. Breckenridge, 403 U.S. 88, 101 (1971). Private conspiracies to deprive people of constitutional rights *(such as the right to engage in interstate travel or the right to be free of the badges of slavery)* are actionable without regard to any state involvement. Novotny, 442 U.S. at 380 (Stevens, J. concurring). Other privileges and immunities of citizenship require state action. Carpenters Local 610 v. Scott, 463 U.S. 825 (1983).

discharge thereof.  COL Bryant has submitted that it was his affirmative duty as a member of the Air Force to bring misconduct to the attention of the Inspector General and that because of his efforts, the individual appellee-defendants took certain alleged retaliatory actions against him.[10]  However, COL Bryant has not come forth with any direct evidence which connects any of the individual appellee-defendants to these acts.  In fact, COL Bryant has admitted under oath that he does not know who committed these acts.  In his deposition, COL Bryant stated

> [i]n other words, as I am whistleblower – at least I believe I am – and as a result of my activities I have created some discontent with my actions and, therefore, I feel there has been retaliation against me by the same parties – the same parties under investigation are the persons who have sued me.  Then I have unexplained – and there are multiple lawsuits.  Then there's unexplained multiple activities that have occurred *by I don't know who*, but none of it ever occurred before all of the Guard stuff and *I personally feel* its Guard related.

(R. at 1353, 2293-94) (emphasis added).  As a matter of law, raw speculation which is unsupported by any actual facts is insufficient to withstand summary judgment.[11]  COL Bryant references certain things as "fact" throughout his brief.  However, the only references to these "facts" as to the individual appellee-

---

[10] COL Bryant has alleged that one or more of the individual appellee-defendants cut the tires on his personal airplane, shot the window of his motor home, fired shots around his home, scratched his son's car, made harassing phone calls to his home, and mailed harassing cards to his home. (R. at 659-61).

[11] See Ward v. N.L.R.B., 462 F.2d 8, 13 (5th Cir. 1972) (stating that "[o]bviously conjecture and speculation cannot substitute for proof."); See also Forsyth, 19 F.3d at 1533 (holding that unsubstantiated assertions, improbable inferences, and unsupported speculation are simply not competent summary judgment evidence)

defendants involved in this appeal (i.e. not Malta and Pierce) is only his own deposition testimony.  There is no objective proof that any of the individual appellee-defendants were in any way connected to the alleged acts of retaliation.  As a matter of fact, there were countless other people in the Meridian area who strongly disliked COL Bryant and the continuing negative publicity that his campaign generated.[12]  (R. at 1394-95).  Hence, there were numerous others who likewise had a motive for retaliation against COL Bryant.  In its opinion, the district court addressed this issue directly, stating that while the court acknowledged that a plaintiff could create a triable issue by relying on circumstantial evidence to establish involvement in the alleged acts, there was simply no evidence whatsoever that the individual appellee-defendants (other than Malta and Pierce) were in any way connected with any of the alleged acts of retaliation.  (R. at 2294).  COL Bryant only presented raw unsupported speculation and allegations.  Id.  The court opined that since the individual appellee-defendants submitted evidence in support of their motion that many other people also had a strong motive for retaliation against COL Bryant, the plaintiff's evidence was simply insufficient to withstand summary judgment.  Id.  As a result, COL Bryant

---

[12] Many people in the Meridian area believe that COL Bryant's activity led to the Department of Defense's decision in 2005 to transfer the unit's planes to another state in 2008.  With the loss of its planes and a flying mission, the future of the unit was in peril.

36

has no viable claim under § 1985(1) and the district court did not err by granting summary judgment.

Secondly, COL Bryant's claims fail to meet the statutory requirements of § 1985(2). The first clause of subsection 2 prohibits a conspiracy to deter a party or witness in a federal court from attending or testifying in court, punishing parties or witnesses for having attended or testified in federal court or influencing or punishing federal jurors. As acknowledged by the district court, this clause simply has no applicability here. (R. at 2289). The second clause of § 1985(2) creates a cause of action against two or more persons who "conspire for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws…." Under this clause, a plaintiff must demonstrate that there was "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."[13] COL Bryant alleges that the individual appellee-defendants targeted him because of his whistleblowing. This Court, in Garrie v. James L. Gray, Inc., 921 F.2d 808, 813 (5th Cir. 1990), rejected the argument that whistleblowers are a protected class for the purposes of a § 1985 argument and dismissed the plaintiff's claim for failure to show racial or

---

[13] Dallas v. Holmes, 137 Fed. Appx. 746, 753 (6th Cir. 2005) (quoting Kush v. Rutledge, 460 U.S. 719, 726 (1983) (filing no valid claim under § 1985(2) where plaintiff did not allege membership in a protected class and discrimination based on such membership)).

otherwise class-based, invidiously discriminatory animus.  Thus, as held by the district court, COL Bryant has no viable claim under § 1985(2) and summary judgment is proper.

Finally, § 1985(3) also requires proof of a conspiracy that is motivated by racial or some other type of class-based animus.   As noted by the district court, COL Bryant "implicitly acknowledges this…." (R. at 2289).  For the reasons stated above, COL Bryant's claims also fail to meet the requirements of § 1985(3) and the district court did not err in granting summary judgment.

In accordance with the well-reasoned opinion of the district court with regards to COL Bryant's claims under 42 U.S.C. §§ 1985 and 1986, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants.

### E. Assault and Battery

COL Bryant alleges that defendants Wilkes and Temple retaliated against him by assaulting him at the Moose Lodge on September 3, 2003.

Wilkes and Temple admitted to a verbal exchange with COL Bryant.  (R. at 1440-41, 1427-30).  Following the altercation, COL Bryant filed criminal assault charges against both.  Those charges were dismissed by the Lauderdale County Court.  (R. at 1440-41, 1427-30).  After the charges were dismissed, Temple and

Wilkes filed civil suits in Lauderdale County for malicious prosecution. (R. at 1440-41, 1427-30).

Assuming that COL Bryant's allegation regarding the date of the Moose Lodge incident is true, the district court correctly held that Temple and Wilkes were entitled to summary judgment because the one-year statute of limitations had run when this suit was filed on March 17, 2005. (R. at 2298-99). "All actions for… assault and battery … shall be commenced within one (1) year next after the cause of such action accrued, and not after." Miss. Code Ann. § 15-1-35 (2009). The one-year statute ran in 2004, one year after Moose Lodge incident. In addition, the intentional torts of assault and battery are not among the type of torts that could be classified as "continuing" or "latent" because COL Bryant only alleged one incident (thus the tort is not "continuing" in nature) and no injuries were alleged to be "latent." Since the statute had clearly run at the time COL Bryant filed his Complaint, these defendants are entitled to summary judgment on this claim.

In accordance with the well-reasoned opinion of the district court with regards to COL Bryant's claims for assault and battery, this Court should affirm the award of summary judgment in favor of the individual appellee-defendants.

39

**III. Pursuant to its June 17, 2008 Order, the district court correctly applied the "objectively baseless" standard set forth in the Supreme Court decision of <u>BE & K Construction Co v. NLRB</u> and properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to the alleged retaliatory litigation.**

COL Bryant alleged that the individual appellee-defendants filed frivolous lawsuits against him to retaliate against him for his having filed charges with the Air Force IG. (R. at 607). There are four suits in question that pertain to the individual appellee-defendants.

1. <u>Chalk, et al v. Berthoff and Bryant</u> (slander, intentional infliction, trade libels)
2. <u>Tommy Temple v. Jody Bryant</u> (malicious prosecution)
3. <u>Leslie Wilkes v. Jody Bryant</u> (malicious prosecution)
4. <u>Robert Earl Pierce v. Jody Bryant</u> (invasion of privacy)

The focal point of this allegation has been <u>Chalk v. Berthoff</u>, the so-called radio talk show slander case that twelve of the defendants filed in Lauderdale County. The grounds for dismissing the slander suit apply equally to the other three lawsuits.

COL Bryant has undertaken to assert his claims pertaining to these allegedly retaliatory suits under the Military Whistleblower Protection Act, the Mississippi Whistleblower Protection Statute, 42 U.S.C. § 1983, 42 U.S.C. § 1985, and 42 U.S.C. § 1986. In its ruling, the district court correctly noted that

> [t]his court held in its opinion on defendants' prior summary judgment motion that as a matter of law, plaintiff's retaliation claim was only

40

cognizable, and then only if factually sustainable, under § 1986 and 1985(1)….”[14]

(R. at 2875).  Since §§ 1985 and 1986 are interrelated, the deficiencies of Bryant's § 1985 claim need only be discussed here.  As stated *supra*, § 1985(1) prohibits a conspiracy to injure a federal officer on account of the "lawful discharge of the duties of his office."  Even assuming that the individual appellee-defendants had a retaliatory motive for filing suit – which they vehemently deny –  summary judgment is still appropriate for two reasons: (1) Bryant's military assignments did not impose a *duty* on him to report perceived wrongdoing, and (2) the rights of the individual appellee-defendants to bring their suits are protected by the First Amendment because COL Bryant cannot show that the suits are objectively baseless.

### A. No Duty to Report Wrongdoing

COL Bryant failed to state a claim under § 1985(1) because his military position did not impose a duty upon him to report wrongdoing.  Section 1985(1) prohibits a conspiracy "to injure [any person holding any office, trust, or place of confidence under the United States,] in his person or property on account of his lawful discharge of the duties of his office."  42 U.S.C. § 1985(1).

---

[14] The filing of a lawsuit can be actionable retaliation in some contexts.  For example, filing a lawsuit can be an unlawful act of retaliation under Title VII of the 1964 Civil Rights Act.  See Harper v. Realmark Corp., 2004 WL 1795392 (S.D. Ind. 2004); and Ishkhanian v. Forrester Clinic S.C., 2003 WL 21479072 (N.D. Ind. 2003).

For purposes of this brief, the individual appellee-defendants admit that (1) COL Bryant was a member of the Reserve Components of the Department of Defense (initially as a member of the Air National Guard of the United States and later as a member of the Air Force Reserves), [15] and (2) as an officer in the Reserve Components, COL Bryant was a "federal officer" as that term is used in the statute.

Nevertheless, COL Bryant fails to state a claim because his military assignment did not impose a duty on him to report any perceived wrongdoing to the Inspector General or anybody else. [16]  Section 1985(1) protects only federal officers in the discharge of the *duties* of their office.  The statute does not extend to some self-imposed personal sense of duty or a perceived moral obligation "to do the right thing" or "to do what a good officer ought to do."  The statute repeatedly speaks in terms of the "lawful discharge of the duties of his office." [17]

---

[15] After COL Bryant was discharged from the Mississippi Air National Guard, he transferred to the Air Force Reserve.

[16]  All members of the military have a statutory *right* (not a duty) to report wrongdoing to the Inspector General under the Military Whistleblower Protection Act, 10 U.S.C. § 1034.  As the district court noted, that statute provides administrative remedies, but does not authorize a private cause of action.

[17]  Title 42 U. S. Code § 1985.  Conspiracy to Interfere with Civil Rights.  (1) Preventing officer from performing duties.  If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from ***discharging any duties thereof***; or to induce by like means any officer of the United States to leave any State, district, or place, where ***his duties as an officer are required to be performed***, or to injure him in his person or property on account of ***his lawful discharge of the duties of his office***, or while engaged in ***the lawful discharge thereof***, or to injure his property so as to molest, interrupt, hinder, or impede him in ***the discharge of his official duties***;  … (3) …

At the summary judgment stage, Rule 56 requires COL Bryant to come forth with some *evidence* (not beliefs, speculations or personal opinions) showing that his military assignments imposed a duty on him to report perceived wrongdoing to the IG. COL Bryant has come forward with no proof to support the existence of such a duty. Consequently, he has failed to meet his burden and summary judgment is appropriate as a matter of law.

Although argued to the district court, summary judgment was not granted in favor of the individual appellee-defendants as a result of this issue. Instead, the district court granted summary judgment based upon the First Amendment argument which will be discussed *infra*. Even so, should this Court determine that COL Bryant has failed to meet his legal burden in showing proof of a duty to report, the district court's award of summary judgment should be affirmed on other grounds.

### B. First Amendment Right of Access to the Courts

Secondly, even if COL Bryant stated a claim under § 1985(1), his claim is barred by the First Amendment. The First Amendment bars any retaliation claim based on a lawsuit that is not *objectively baseless*.

---

the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators. (emphasis added).

Although there does not appear to be any case law directly on point with regards to this precise fact pattern, the Court can look to an analogous situation under the National Labor Relations Act, 29 U.S.C. § 141 *et. seq.*, which specifically contains a retaliation provision.  Id. at 151(a)(1).

In Bill Johnson's v. N.L.R.B, 461 U.S. 731 (1983), a waitress picketed her employer's restaurant in an effort to organize a labor union.  The employer sued her for slander.  The waitress then filed an unfair labor practice charge with the National Labor Relations Board (NLRB) alleging that the employer's lawsuit was interfering with her statutory right to organize a labor union.  The NLRB sought to enjoin (with a cease and desist order) the employer from proceeding any further with its state court lawsuit.

On appeal, the Court used a three-step analytical framework.  In the first step, the NLRB could issue a "cease and desist" order to stop a pending lawsuit (alleged to be retaliatory) ***only if*** the suit was retaliatory and "lack[ed] a reasonable basis in fact or law."  Id. at 748.  If the suit was not enjoined, the matter proceeded to step two.  At step two, the NLRB had to wait on the outcome of the underlying suit before deciding whether filing the suit was an unfair labor practice.  After a decision on the merits by the state court, the analysis at step three was almost outcome determinative.  If the employer won the underlying lawsuit, then "the employer should also prevail before the Board, for the filing of a meritorious

44

lawsuit, even for a retaliatory motive, is not an unfair labor practice." Id. On the other hand, "[i]f the state proceedings result in a judgment adverse to the plaintiff, the Board may then consider the matter further and, if it is found that the lawsuit was filed with retaliatory intent, the Board may find a violation and order appropriate relief." Id. at 749. The Supreme Court did not say that the employer (who lost in state court) would automatically lose before the NLRB on the unfair labor practice charge. However, an unsuccessful suit in state court obviously did not bode well for the employer before the NLRB.

In Bill Johnson's, the Supreme Court held that an employer's filing of a meritorious libel suit in state court is not an unfair labor practice, even if the employer had a retaliatory motive. Id. The Court held that the employer's right to his day in court trumps any claim of retaliation.[18] Id.

The holding of Bill Johnson's has been extended further by the Supreme Court in BE&K Construction Co v. N.L.R.B., 536 U.S. 516 (2002). In BE & K, the Supreme Court significantly reduced the required burden of proof. Under Bill Johnson's, the individual appellee-defendants would have to show their lawsuits were *meritorious*. Under BE&K, the individual appellee-defendants only have to

---

[18] In the first motion for summary judgment filed by the individual appellee-defendants, the district court held that it could not "conclude as a matter of law that defendants' claim against Bryant for slander was meritorious or well-founded" under the Bill Johnson's rationale. (R. at 2297). Hence, summary judgment was denied. However, the district court did not hold or insinuate that the suits were not meritorious or not brought in good faith as COL Bryant repeatedly states in his brief.

show their lawsuit was not *objectively baseless* in order to be protected by the First Amendment.

Thus, the precarious position of the employer in <u>Bill Johnson's</u> was put on surer footing by the Supreme Court in <u>BE&K</u>.  <u>BE&K</u> held that even if a suit was filed for *retaliatory* purposes and even if it is ultimately *unsuccessful* on the merits, it still cannot be the basis of a finding of an unfair labor practice unless the suit was *objectively baseless*.

While the Supreme Court's holding was based on a statutory construction of the NLRA, all of the preliminary dicta in the opinion related to First Amendment protections for plaintiffs' filing suits generally.  The import of the dicta in <u>BE&K</u> is that the First Amendment precludes a finding of unlawful retaliation under any federal law **unless** the lawsuit was *objectively baseless*.  The effect of <u>BE&K</u> is that the First Amendment right to sue is not dependent on the outcome of a jury verdict.

Based on <u>BE&K</u>, the only issue on summary judgment is whether the individual appellee-defendants had any factual basis for their lawsuits.  Unlike the analysis in <u>Bill Johnson's</u>, there is no longer any need to wait on the outcome of the underlying suits.  In fact, this Court can assume that (1) the individual appellee-defendants had a retaliatory motive and (2) that all of the suits will be unsuccessful on the merits.  Therefore, the only issue is whether the suits were *objectively*

46

*baseless* at the outset.  If not, then the individual appellee-defendants' First Amendment right to file suit trumps any legal claims that COL Bryant might have for a retaliatory lawsuit.

### 1. The Factual Basis for the Radio Talk Show Slander Suit

The undisputed evidence shows a factual basis that prompted the individual appellee-defendants to file this suit.  The allegations in that suit were hardly made up.

As discussed *supra*, COL Bryant's campaign to cast himself as a self-righteous champion while casting negative aspersions on the senior leadership of the unit started when he leaked a copy of the IG report to the media. (R. at 1339).  A week before his appearance on the radio show, COL Bryant wrote a letter to Governor Musgrove saying that he was disgusted that some of the defendants had been promoted, naming several of them specifically.  (R. at 1345, 1381).  COL Bryant's comments on the radio talk on 5/27/03 show are a matter of record.  (R. at 1383-91).  He told that audience that the unit leadership was corrupt, had blood on their hands and ran the unit like the mafia.  Id.  COL Bryant said that the senior leadership should go.  Id.  He said that he would be relentless in his efforts to change the leadership.  Id.

Twelve of the defendants (all except Wilkes and Temple) filed a slander lawsuit against COL Bryant in June 2003.  COL Bryant alleges that they did so in

retaliation for his having filed complaints with the Air Force IG.  In actuality, the suit was based on the undisputed fact that COL Bryant had publicly made slanderous and disparaging statements against them as a group on a radio talk show as a part of his campaign to get them fired.  After all, they all held "leadership" positions in the 186th, COL Bryant had specifically slandered the "leadership" and he had named most of them in his letter to the governor.

In view of his comments, COL Bryant cannot allege that the suit was objectively baseless.  It was obvious that COL Bryant was on a campaign to get the defendants fired and was willing to make slanderous and outrageous statements in order to get that done.

While the issue of corruption is disputed, the facts giving rise to the lawsuit are not:  (1) COL Bryant publicity campaigned to get the "leadership" changed and they all held positions of "leadership," (2) he wrote letters to the governor implicitly seeking the dismissal of most of the individual appellee-defendants, and (3) he made statements on the radio talk show that the leadership (which included the individual appellee-defendants by inference) was corrupt.

Based on these undisputed facts, the district court correctly held that the slander suit was not objectively baseless.

## *2. Factual Basis for the Malicious Prosecution Suits*

Temple and Wilkes filed separate malicious prosecution lawsuits against COL Bryant arising out of the Moose Lodge incident.  Bryant, Wilkes and Temple exchanged words at the Moose Lodge in Meridian on September 3, 2003.  (R. at 1440-41, 1427-30.)  Bryant filed criminal assault charges against both.  <u>Id</u>.  The court dismissed the case without the defendants having to present any defense.  <u>Id.</u> Temple and Wilkes then filed civil suits in Lauderdale County for malicious prosecution in Lauderdale County Circuit Court.  <u>Id</u>.  Thereafter, Wilkes and Temple filed separate suits for malicious prosecution.

Based on these undisputed facts, the district court correctly held that the malicious prosecution suits were not objectively baseless.

## *3. Factual Basis for Pierce's Suit*

Pierce filed a separate invasion of privacy lawsuit in Newton County Court. <u>See Pierce v. Dep't. of the United States Air Force</u>, 512 F.3d 184 (2007).  After the second IG investigation, the Air Force IG sent COL Bryant a summary of its findings.  The letter to COL Bryant stated that it was protected by the Privacy Act and that COL Bryant should return the letter or destroy it.  COL Bryant did neither. Rather, he gave a copy to <u>The Meridian Star</u> and the <u>Clarion Ledger</u> which published the name of Pierce and other persons.  The stories publicly detailed the

allegations against Pierce. COL Pierce filed a suit for invasion of privacy in the Circuit Court of Newton County.

Based on these undisputed facts, the district court correctly held that Pierce's lawsuit was not objectively baseless.

In conclusion, in issuing its ruling the district court correctly found that

the 'objectively baseless' standard [under BE& K] is applicable; the court is further of the opinion that plaintiff has not shown (nor for that matter undertaken to show) that defendants' lawsuits were objectively baseless. Therefore, the court will vacate its earlier opinion on the issue and enter summary judgment for defendants.

(R. at 2877-78). Further, the district court correctly concluded that

[i]n his memoranda, plaintiff does refer generally to 'frivolous litigation' by defendants, and identifies the slander suit in particular as 'frivolous' and 'meritless.' Yet the principal focus of his argument and proof has been on defendants' subjective intent in bringing the lawsuits, not on whether they had a basis for bringing them. In fact, so far as the court can determine, plaintiff's only substantive argument, as contrasted with conclusory characterizations, relates to the slander suit, as to which he argues only that '[d]espite their purportedly being 'upset,' none of the Defendants were named on the subject radio program and none of them stated that they had experienced any damages proximately caused by the radio program.' However, that lawsuit cannot fairly be said to have been 'objectively baseless' solely because plaintiff did not identify any of the defendants by name in the radio talk show. Defendants could reasonably have taken the position that listeners would have known plaintiff's comments were directed at them notwithstanding that he did not use their names. Moreover, there is obviously no merit to plaintiff's suggestion that defendants' suit was 'objectively baseless' because defendants did not allege they had experienced any damages as a proximate result of plaintiff's comments. Plaintiff does not deny that his statements in the talk show were disparaging of the 'leadership' at the 186th, and he does not dispute defendants' assertion

50

that they considered that his statements slandered them.  In short, plaintiff has not shown that defendants' slander suit against him was 'objectively baseless."

(R. at 2881-82).

The district court correctly applied the "objectively baseless" standard set forth in the Supreme Court decision of BE & K Construction Co v. NLRB to the facts of this case and the same should be affirmed by this Court.  Additionally, because the undisputed evidence presented by the individual appellee-defendants to the district court demonstrated that none of the lawsuits against COL Bryant were "objectively baseless," the district court properly granted summary judgment in favor of all individual appellee-defendants with regards to all claims relating to the alleged retaliatory litigation.  For the foregoing reasons, this Court should affirm the district court's grant of summary judgment in favor of the individual appellee-defendants.

## IV. Pursuant to its June 17, 2008 Order, the district court properly granted summary judgment in favor of all individual appellees-defendants with regards to all claims relating to alleged acts of vandalism.

COL Bryant has made numerous raw, unsupported allegations against the individual appellee-defendants with respect to various acts of vandalism, including (1) his claim that the individual appellee-defendants orchestrated a break-in of his vehicle in Memphis which resulted in the theft of COL Bryant's laptop and other items, (2) his claim that the individual appellee-defendants cut the gasoline line on

51

his wife's vehicle, (3) his claim that the individual appellee-defendants pilfered his computer bag during a court hearing, and (4) his claim that the individual appellee-defendants broke into his vehicle in Meridian. The individual appellee-defendants have vigorously contended that these paranoid and delusional allegations have absolutely no basis in fact. After an evidentiary hearing before the district court with respect to COL Bryant's claim that the individual appellee-defendants were involved in the Memphis break-in[19], the district court entered an order stating that it was "simply not persuaded that Bryant has proven that defendants were responsible for the break-in of his truck and theft of his laptop and box of documents." (R. at 2885). Bryant has come forward with no objective proof connecting the individual appellee-defendants to any of these allegations.

As a result, as to each and every alleged vandalism claim asserted by COL Bryant, the district court correctly found that the individual appellee-defendants were entitled to summary judgment due to COL Bryant's failure to prove by a preponderance of the evidence that any of the individual appellee-defendants were involved. This Court, as well as all other courts in considering summary judgment motions, has clearly held that unsubstantiated assertions, improbable inferences, and unsupported speculation are simply not competent summary judgment evidence. Forsyth v. Barr, 19 F.3d 1527, 1533 (5th Cir. 1994).

---

[19] The security video tape shows two black males breaking into COL Bryant's vehicle. (R. at 2795). The individual appellee defendants are all white males.

As a result, this Court should affirm the district court's decision granting summary judgment in favor of the individual appellee-defendants with regard to all claims of alleged vandalism.

CONCLUSION

For the foregoing reasons, the Appellees respectfully request that this Court affirm the decisions of the district court.

Respectfully submitted, this the 12th day of June, 2009.

> Franklin E. Chalk, Frederick D. Feinstein, Roy A. Graham, Billy Joe Gressett, Donald E. Jones, Langford L. Knight, William F. Parten, Robert E. Pierce, Roger E. Shirley, Charles F. Speed, Aaron K. Wilson, Thomas Temple, and Leslie Wilkes, Appellees

By: _____

Attorney for the Appellees

## CERTIFICATE OF SERVICE

I, Lindsay G. Watts, certify that on June 12, 2009, a paper copy of the brief

for the Appellees, a paper copy of the Appellee's record excerpts, and an electronic

copy (compact disk) of the same were mailed via first class mail to the following

counsel:

Emerson Barney Robinson, Esq.
Butler, Snow, O'Mara, Stevens, and Cannada, PLLC
P. O. Box 22567
Jackson, Mississippi 39225-2567

Paul A. Koerber, Esq
P. O. Box 12805
Jackson, Mississippi 39236-2805

Wayne E. Ferrell, Esq.
P. O. Box 24448
Jackson, Mississippi 39225-4448

M. Mark Majors, Esq.
Joint Staff Judge Advocate
Mississippi National Guard
P. O. Box 5027
Jackson, Mississippi 39296-5027

LTC F. Gregory Malta
919 Prairie Street
Houston, TX 77002

_____
Attorney for the Appellees

## CERTIFICATE OF COMPLIANCE

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains 11,620 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman font in the text and 12 point Times New Roman font in the footnotes.

Respectfully submitted, this the 12th day of June, 2009.

_____
Attorney for the Appellees